UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD WALKER, Individually, and On Behalf of All Others Similarly Situated<br>82 Meadowview Avenue<br>Thornhill, Ontario, Canada<br><br>Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY GROUP, INCORPORATED<br>**Serve on**:<br>The Corporation Trust Incorporated<br>351 West Camden St.<br>Baltimore, MD 21201<br><br>MAYO A. SHATTUCK III, YVES C. DE BALMANN, ANN C. BERZIN, JAMES T. BRADY, JAMES R. CURTIS, FREEMAN A. HRABOWSKI III, NANCY LAMPTON, ROBERT J. LAWLESS, JOHN L. SKOLDS, and MICHAEL D. SULLIVAN<br><br>c/o Constellation Energy Group, Inc.<br>The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, Maryland 21201<br><br>EXELON CORPORATION<br>**Serve on**:<br>John W. Rowe<br>Chairman and CEO<br>10 S. Dearborn Street, 48th Floor<br>Chicago, Illinois 60603<br><br>And<br><br>BOLT ACQUISITION CORPORATION<br>351 West Camden Street<br>Baltimore, Maryland 21201<br>**Serve on**:<br>The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, Maryland 21201<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.:_____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CIVIL COMPLAINT**

Plaintiff, by his attorneys, alleges upon information and belief, except for Plaintiff's own acts, which are alleged on knowledge and belief, as follows:

1.      Plaintiff brings this action individually against Defendants for their violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and as a class action on behalf of the public stockholders[1] of Constellation Energy Group, Inc. ("Constellation Energy" or "Company") against Constellation Energy's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to Exelon Corporation ("Exelon") by means of an unfair process, for an unfair price and pursuant to a materially misleading registration statement.

2.      Constellation Energy is a leading competitive supplier of power, natural gas and energy products and services for homes and businesses across the continental United States. It owns a diversified fleet of generating units, totaling approximately 12,000 megawatts of generating capacity, and is a leading advocate for clean, environmentally sustainable energy sources, such as solar power and nuclear energy.

3.      On April 28, 2011, Exelon and the Company announced a definitive agreement under which Exelon will acquire all of the outstanding shares of Constellation Energy in an all-stock transaction (the "Proposed Transaction"). Under the terms of the Proposed Transaction, Constellation Energy's shareholders will receive 0.930 shares of Exelon common stock in exchange for each share of Constellation Energy common stock. The implied consideration per share based on the closing price of Exelon's common stock on the day the deal was announced was $38.70. The Proposed Transaction is valued at approximately $7.9 billion in total equity

---

[1] "Public stockholders" or similar references shall, throughout this complaint, be deemed to include Plaintiff.

#1558560v.1

value. The Board has breached their fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. As described in more detail below, given Constellation Energy's future growth prospects and the small premium received by Constellation Energy shareholders in the Proposed Transaction, the consideration shareholders are to receive is inadequate.

4.      Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company.  Specifically, pursuant to the merger agreement dated April 28, 2011 (the "Merger Agreement"), defendants agreed to:  (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirors or even in continuing discussions and negotiations with potential acquirors; (ii) a provision that provides Exelon with five business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Exelon a termination fee of $200,000,000 in order to enter into a transaction with a superior bidder.  These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Constellation Energy.

5.      In connection with the Proposed Transaction, on June 27, 2011, the Company filed a joint proxy statement/prospectus on Form S-4 with the United States Securities and Exchange Commission ("SEC") (the "Registration Statement"). The Registration Statement fails to provide the Company's shareholders with material information thereby rendering the shareholders unable to make an informed decision regarding whether to vote in support of the Proposed Transaction.  Defendants have violated Sections 14(a) of the Exchange Act, by omitting material facts necessary to render the Registration Statement non-misleading.

Defendants have also breached their fiduciary duty of candor by failing to disclose material information to the Constellation Energy shareholders necessary for them to determine whether to tender their shares in support of the Proposed Transaction.

6.      The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the class the Plaintiff seeks to represent.  Without this information, Plaintiff and the other Constellation Energy shareholders will be deprived of their entitlement to make an informed decision on the Proposed Transaction should these misrepresentations and omissions not be cured prior to a shareholder vote.

7.      The Individual Defendants have breached their fiduciary duties owed to Plaintiff and the class he seeks to represent, and Constellation Energy and Exelon have aided and abetted such breaches by Constellation Energy's officers and directors.  Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Constellation Energy.

9.      Constellation Energy is a corporation organized and existing under the laws of the State of Maryland. It maintains its principal corporate offices at 100 Constellation Way, Baltimore, MD 21202.

10.     Defendant Mayo A. Shattuck III is Chairman, President and CEO of Constellation.  Defendant Shattuck has served as a director of Constellation since 1999, as the Constellation Energy's Chairman of the Board since 2002, and as its President and CEO since 2001. Upon completion of the Proposed Transaction, Defendant Shattuck will become Executive Chairman of the Board of Exelon.  As stated in Constellation Energy's Annual Proxy Statement

4

filed with the SEC on Form DEF 14A on April 15, 2011 (the "2011 Proxy"), Defendant Shattuck is Chair of the Company's Executive Committee.

11.     Defendant Yves C. de Balmann has served as a director of Constellation Energy since 2003 and, as stated in the 2011 Proxy, Defendant de Balmann is a member of Constellation Energy's Compensation Committee and the Nominating and Corporate Governance Committee.

12.     Defendant Ann C. Berzin has served as a director of Constellation Energy since 2008 and, as stated in the 2011 Proxy, Defendant Berzin is a member of Constellation Energy's Audit Committee.  Defendant Berzin is a non-management member of Kindred's board of directors.

13.     Defendant James T. Brady has served as a director of Constellation Energy since 1999 and, as stated in the 2011 Proxy, Defendant Brady is Chair of Constellation Energy's Audit Committee and is a member of the Executive Committee.

14.     Defendant James R. Curtiss has served as a director of Constellation Energy since 1994 and, as stated in the 2011 Proxy, Defendant Curtiss is Chair of Constellation Energy's Committee on Nuclear Power and is a member of the Executive Committee.  Additionally, according to the 2011 Proxy, Constellation Energy and its nuclear joint-venture made payments of $35.3 million, $16.4 million, and $15.6 million in 2008, 2009, and 2010, respectively, to Cameco Corporation ("Cameco") for the purchase of uranium.  Defendant Curtiss is a non-management member of Cameco's board of directors.  Also, in 2008 Constellation Energy paid approximately $116,000 to the law firm of Winston & Strawn LLP, at which Defendant Curtiss was a partner until April 2008.

15.     Defendant Freeman A. Hrabowski III has served as a director of Constellation Energy since 1994 and prior thereto, served as a director of Baltimore gas & Electric Company

(BGE).  As stated in the 2011 Proxy, Defendant Hrabowski is Chair of Constellation Energy's Nominating and Corporate Governance Committee and is a member of the Executive Committee and the Compensation Committee.

16.      Defendant Nancy Lampton has served as a director of Constellation Energy since 1994 and, as stated in the 2011 Proxy, Defendant Lampton is a member of Constellation Energy's Committee on Nuclear Power.

17.      Defendant Robert J. Lawless has served a director of Constellation Energy since 2002 and, as stated in the 2011 Proxy, Defendant Lawless is Chair of Constellation Energy's Compensation Committee and is a member of the Executive Committee and the Nominating and Corporate Governance Committee.

18.      Defendant John L. Skolds has served as a director of Constellation Energy since 2007.  Also, Defendant Skolds served as Executive Vice President of Exelon and President of Exelon Energy Delivery from 2003 until his retirement in 2007, served as President of Exelon Generation from 2005 through 2007, and  served as Senior Vice President of Exelon and President and Chief Nuclear Officer of Exelon Nuclear from 2002 through 2003. And, according to the 2011 Proxy, Defendant Skolds is a member of Constellation Energy's Audit Committee and the Committee on Nuclear Power.

19.      Defendant Michael D. Sullivan has served as a director of Constellation Energy since 1999, after having served as a BGE director from 1992 through April 1999.  Also, according to the 2011 Proxy, Defendant Sullivan is a member of Constellation Energy's Audit Committee.

20.      Defendants referenced in ¶¶ 10 through 19 are collectively referred to as Individual Defendants and/or the Board. The Individual Defendants as directors and/or officers of Constellation Energy, have a fiduciary relationship with the Company as well as with Plaintiff

and the other public shareholders of Constellation Energy and owe them the highest obligations of good faith, fair dealing, loyalty, candor, and due care.

21.     Defendant Exelon is a Pennsylvania corporation with headquarters located at 10 S. Dearborn Street, 48th Floor, Chicago, IL 60603. Exelon is one of the nation's largest electric utilities with more than $18 billion in annual revenues. Exelon has one of the industry's largest portfolios of electricity generation capacity, with a nationwide reach and strong positions in the Midwest and Mid-Atlantic. Exelon distributes electricity to approximately 5.4 million customers in northern Illinois and southeastern Pennsylvania and natural gas to approximately 490,000 customers in the Philadelphia area.

22.     Defendant Bolt Acquisition Corporation ("Merger Sub") is a direct wholly-owned subsidiary of Exelon that was formed for the sole purpose of effecting the merger of Merger Sub with and into Constellation Energy. Merger Sub has engaged in no business activities to date and it has no material assets or liabilities of any kind, other than those incident to its formation and those incurred in connection with the merger.

## JURISDICTION AND VENUE

23.     The claims asserted herein arise under section 14(a) of the Exchange Act [15 U.S.C. § 78n] and Maryland common law. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331. This court has jurisdiction over the state law claim pursuant to 28 U.S.C. §1367.

24.     Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination of the materially misleading statements and omissions alleged herein. Defendant Constellation Energy is headquartered in this District.

#1558560v.1

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action on his own behalf (and not also on behalf of a class) with respect to claims arising under Section 14(a) of the Exchange Act and as a class action on his own behalf and on behalf of all owners of Constellation Energy common stock and their successors in interest (the "Class") with respect to the other claims. Excluded from the Class are defendants herein and their affiliates, officers and directors of Constellation Energy, at all relevant times,   members of their immediate family and their legal representatives, heirs, successors, or assigns, and any entity in which any of defendants have or have had a controlling interest.

26.     As to Counts II through IV only, this action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable. As of April 28, 2011, Constellation Energy has approximately 199.81 million shares outstanding.

(b)     questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Have the Individual Defendants breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(ii)     Have the defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

8

(iii)   Have the defendants breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iv)   Have the defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(v)   Have the Individual Defendants breached their fiduciary duty of candor in connection with issuing a Registration Statement that omits material information;

(vi)   Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

(vii)   Have Constellation Energy and Exelon aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(viii)   Is the Class entitled to injunctive relief and/or damages as a result of defendants' wrongful conduct.

(c)   Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)   Plaintiff's claims are typical of those of the other members of the Class.

(e)   Plaintiff has no interests that are adverse to the Class.

#1558560v.1

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### The Companies

27.     Constellation Energy is a leading competitive supplier of power, natural gas and energy products and services for homes and businesses across the continental United States.  The Company owns a diversified fleet of generating units, totaling approximately 12,000 megawatts of generating capacity, and is a leading advocate for clean, environmentally sustainable energy sources, such as solar power and nuclear energy.  The Company delivers electricity and natural gas through the Baltimore Gas and Electric Company (BGE), its regulated utility in Central Maryland.  A FORTUNE 500 company headquartered in Baltimore, Constellation Energy had revenues of $14.3 billion in 2010.

28.     Exelon is a Pennsylvania distributes electricity to approximately 5.4 million customers in northern Illinois and southeastern Pennsylvania and natural gas to approximately 490,000 customers in the Philadelphia area. Exelon's operations include energy generation, power marketing and energy delivery. Exelon has one of the industry's largest portfolios of electricity generation capacity, with a nationwide reach and strong positions in the Midwest and

Mid-Atlantic. Exelon touts itself as a leading advocate for clean, environmentally sustainable energy sources, such as wind, solar power and nuclear energy, and operates the largest nuclear fleet in the United States. Exelon trades on the NYSE under the ticker "EXC."

***The Proposed Transaction***

29.     In a press release dated April 28, 2011, the Company announced that it had entered into a merger agreement with Exelon pursuant to which Exelon will acquire all of the outstanding shares of the Company in a stock for stock transaction.

30.     In the Proposed Transaction, each outstanding share of Constellation common stock (other than shares owned by Constellation, Exelon or Merger Sub, which shares will be cancelled) will be converted into the right to receive shares of Exelon common stock, with cash to be paid in lieu of fractional shares. The merger agreement provides for an exchange ratio of 0.930 shares of Exelon common stock for each share of Constellation common stock. Exelon shareholders will continue to own their existing shares of Exelon common stock.

31.     Upon completion of the Proposed Transaction, Defendant Shattuck, Constellation Energy's C.E.O., will become executive chairman of the combined company. Exelon president and chief operating officer Christopher M. Crane will become president and chief executive officer of the combined company. Upon completion of the merger, Exelon will add to its current 15-member board of directors Defendant Shattuck and three independent directors of Constellation designated by the board of directors of Constellation. By the end of 2012, the board of directors will consist of 16 members, including 12 members who will be designated from the board of directors of Exelon prior to the merger and four from the board of directors of Constellation who will be added to the board of directors of Exelon at the closing of the merger.

11

32.     Following consummation of the Proposed Transaction, the resulting company will retain the Exelon name and be headquartered in Chicago. In addition to the corporate headquarters, Illinois will continue to be home to ComEd and Exelon Business Services Company (both in Chicago), as well as the Midwest regional headquarters for Exelon Nuclear (in Warrenville). Pennsylvania will continue to be home to headquarters for PECO (in Philadelphia) and Exelon Power (in Kennett Square). Exelon Nuclear's headquarters will also be located at Kennett Square. Exelon's and Constellation's commercial retail and wholesale businesses will be consolidated under the Constellation brand and headquartered in Baltimore. The combined company's renewables development headquarters will also be located in Baltimore. BGE will retain its Baltimore headquarters.

33.     Following completion of the Proposed Transaction, Exelon shareholders will own approximately 78 percent of the combined company and Constellation Energy shareholders approximately 22 percent on a fully diluted basis.

34.     The companies are targeting to complete the merger during the first quarter of 2012, subject to receipt of the necessary shareholder and regulatory approvals.

**The Consideration Offered Is Inadequate**

35.     Constellation is positioned for significant growth. In a February 4, 2011 press release, Defendant Shattuck commented on the Company's successful 2010 and expectations for future growth in the years to come. As stated by Defendant Shattuck:

> We ended 2010 having completed all of the strategic initiatives we announced at the start of the year, successfully putting our core businesses in a stronger position to operate more efficiently, strengthen existing customer relationships and win new business. We completed our goal of deploying more than $1 billion of cash to acquire strategically located generation assets, including the 2,950-megawatt Boston Generating fleet in New England and the 550-megawatt Colorado Bend Energy Center near Wharton, Texas. Through acquisitions and organic growth,

12

we significantly increased our generation capacity during the year, *laying the foundation for continued growth in our wholesale and retail energy supply businesses* in regions where our load obligations exceed our physical generating capacity.

Our NewEnergy segment maintained its focus on selling customers innovative products and services, such as on-site solar installations.   In September, we announced the acquisition of CPower, increasing our managed load response to approximately 1,500 megawatts and making us the second-largest load response provider in competitive commercial and industrial markets.   We also made a strategic decision to offer electricity to residential customers in Maryland and New Jersey, growing to more than 80,000 customers by year end.

Baltimore Gas and Electric Company (BGE), our regulated utility, exceeded its targets for safety, customer service and financial performance for the year.   In August, BGE received Maryland Public Service Commission (PSC) approval to deploy one of the most ambitious smart grid programs in the nation.   When fully implemented, this initiative will lead to improvements in service and reliability, and facilitate expected customer savings of more than $2.5 billion over the life of the program.   BGE also received a summary order from the PSC on its combined electric and gas rate filing — the first such filing in more than 17 years.   BGE is awaiting receipt of the PSC's comprehensive order detailing its findings.

*Looking ahead, we believe our investments in clean generation, efficiency and new products put us in strong position to benefit as the energy market recovers.*

36.     The Proposed Transaction consideration is inadequate.   Based on Exelon's closing share price on April 27, 2011, Constellation Energy shareholders would receive a value of $38.59 per share.

37.     The Proposed Transaction represents a small premium of just 12.5% based on the $34.30 closing price of Constellation Energy stock the day prior to the announcement of the Proposed Transaction.   In addition, the Proposed Transaction consideration fails to adequately compensate Constellation Energy for the successful initiatives the Company instituted in 2010 that have positioned the Company for significant growth.

13

38.     The inadequacy of the consideration offered is highlighted by the financial analyses performed by Morgan Stanley & Co. LLC ("Morgan Stanley"), Constellation Energy's financial advisor.  The *Comparable Public Companies Analysis* conducted by Morgan Stanley yielded a value for the Company as high as $45.50 per share.  The *Sum-of-the-Parts Discounted Cash Flow Analyses of Constellation Energy* yielded a value for the Company as high as $43.86 per share.  Compared with the $38.59 per share value of the consideration based on Exelon's closing share price on April 27, 2011, these analyses highlight the inadequacy of the consideration.

39.     Discussions between Defendant Shattuck and executives from Exelon further highlight the inadequacy of the consideration offered.  In November 2010, Exelon indicated that it would expect to issue shares of Exelon stock at an exchange ratio that would represent a premium of approximately 15% over the trading price of Constellation Energy's common stock. Defendant Shattuck indicated, at that time, that he thought any possible transaction would need to result in a premium in excess of 15%.  As discussed earlier, the Proposed Transaction represents a small premium of just 12.5% based on the $34.30 closing price of Constellation Energy stock the day prior to the announcement of the Proposed Transaction.  The closing price of Constellation Energy shares on November 2, 2010, was $30.20, and the closing price of Exelon on that date was $41.02.

***Defendant Shattuck Led a Process that Favored Exelon***

40.     The Background of the Merger, as detailed in the Registration Statement, clearly details a process led by an executive director with much to gain from a transaction with Exelon.

41.     Indeed, the facts reveal that the Board largely abdicated its duties to the shareholders and instead allowed Defendant Shattuck to spearhead the process leading up to the

#1558560v.1

Merger Agreement.  Through a series of dinner meetings and encounters at industry gatherings, Defendant Shattuck along with Exelon's President and Chief Operating Officer ("COO"), Christopher M. Crane and Exelon's CEO, John W. Rowe had "informal conversations regarding a possible transaction between Constellation and Exelon" that eventually led to the Merger Agreement.  *See* Registration Statement at 47.

42.   From early October 2010 through mid-December 2010, it appears that Defendant Shattuck served as the sole point of contact for Exelon regarding a potential transaction with Constellation Energy.  And as early as November 30, 2010, Defendant Shattuck had discussions with Mr. Rowe regarding his expectations for management roles in the combined company.

43.   It appears that no discussion regarding valuation, transaction structure or governance matters was had until February 12, 2011, almost four months after discussions of a potential transaction began and well after Defendant Shattuck had commenced discussions relating to his position in the combined company.

44.   The Registration Statement also shows that Constellation Energy negotiated exclusively with Exelon from October 2010 until the signing of the Merger Agreement and did not even attempt to reach out on its own, or through its financial advisors to determine if other parties had interest in a transaction.  As such, the Board has no way of knowing or concluding that other potential buyers would not have been willing to provide substantially superior consideration compared to that being offered by Exelon, and no valid basis to recommend it.

***Defendant Shattuck Has Material Conflicts***

45.   The Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of the Company's public shareholders.  The Registration Statement specifically states

#1558560v.1

that "Constellation's stockholders should be aware of the benefits available to the executive officers and directors of Constellation in connection with the merger. These individuals have certain interests in the merger that may be different from, or in addition to the interests of Constellation's stockholders generally." For example, Defendant Shattuck will become executive chairman of the combined company. Four members of the Constellation Board, including Shattuck, will serve on the Board of the combined company.

46.    In addition to negotiating the position of "executive chairman" of the combined company, Defendant Shattuck stands to gain a considerable sum upon consummation of the merger.

47.    First, Defendant Shattuck is expected to receive a total of $3,125,000 representing "double trigger" benefits, including the estimated value of cash severance payments under the Severance Plan, as well as the estimated pro rata, lump sum annual incentive payment under the Executive Annual Incentive Plan. Defendant Shattuck is expected to receive $1,825,000 for the estimated cash severance payable under the Severance Plan; and $1,300,000 for the estimated pro rata annual incentive payment under the Executive Annual Incentive Plan.

48.    Additionally, Defendant Shattuck is expected to receive $2,168,855 for the full accelerated vesting of unvested, "in-the-money" stock options; and $7,133,333 for the pro rata vesting and lump sum payment of unvested cash-based performance units.

49.    Thus, the total compensation to Defendant Shattuck is expected to be approximately $12.4 million.

50.    Based upon this, the Proposed Transaction is unfair to Constellation Energy's public shareholders and represents an effort by Defendant Shattuck to aggrandize his own financial position and interests at the expense of and to the detriment of Class members.

*The Preclusive Deal Protection Devices*

51.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

52.     By way of example, §6.04(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to  procure a price in excess of the amount offered by Exelon.  This section also demands that the Company terminate any and all prior or on-going discussions with other potential acquirors.

53.     Pursuant to §6.04 of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify Exelon of the bidder's identity and the terms of the bidder's offer.  Thereafter, should the Board determine that the unsolicited offer is superior, before the Company can terminate the Merger Agreement with Exelon in order to enter into the competing proposal, it must grant Exelon five business days in which the Company must negotiate in good faith with Exelon (if Exelon so desires) and allow Exelon to amend the terms of the Merger Agreement to make a counter-offer so that the competing bid ceases to constitute a superior proposal.  In other words, the Merger Agreement gives Exelon access to any rival bidder's information and allows Exelon a free right to top any superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Exelon and piggy-back upon the due diligence of the foreclosed second bidder.

54.     In addition, the Merger Agreement provides that a termination fee of $200,000,000 must be paid to Exelon by Constellation Energy if the Company decides to cancel the Proposed Transaction and pursue a competing offer, thereby essentially requiring that the

17

competing bidder agree to pay a massive naked premium for the right to provide the shareholders with a superior offer.

55.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

***The Materially Misleading and Incomplete Registration Statement***

56.     On June 27, 2011, the Company filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement fails to provide the Company's shareholders with material information and/or misrepresents material information thereby rendering the shareholders unable to make an informed decision regarding how to vote on the Proposed Transaction.

57.     The Registration Statement fails to disclose material information concerning the process conducted by the Board in conducting merger negotiations, including information pertaining to the Company's engagement of financial advisors and discussions and negotiations with Exelon.  This information is clearly material to shareholders who need to assess the robustness and credibility of the process engaged in by the Board.  In particular, the Registration Statement fails to disclose:

> (a)     The factors that prompted Defendant Shattuck to commence discussions with Morgan Stanley & Co. LLC ("Morgan Stanley") regarding a potential transaction with Exelon a mere two weeks after he first discussed the possibility with Exelon management;

18

(b)     When Constellation Energy first contacted Morgan Stanley to request it act as an advisor for a potential transaction with Exelon;

(c)     What Defendant Shattuck's discussions with Mr. Rowe on November 30, 2010 pertaining to management's role in a potential combined company entailed;

(d)     The considerations reflected in Constellation Energy's decision to discuss and evaluate the required regulatory approvals with Exelon before addressing other topics of a possible transaction, such as consideration;

(e)     What the strategic plan was that Constellation Energy provided to Exelon on January 13, 2011;

(f)     How the subgroup of Constellation Energy directors, Robert J. Lawless, Ann C. Berzin, James T. Bray and Yves C. de Balmann, was selected by the Board to review details of a possible transaction with Exelon;

(g)     What were the results of the analyses of the opportunities presented by a possible transaction with Exelon that the Board discussed on February 11, 2011, as well as what was Constellation Energy's stand-alone business plan discussed on that date;

(h)     What was Constellation Energy's management's assessment of the strategic effects of the possible transactions as well as the potential risks discussed at the Board dinner on February 24, 2011;

(i)     Whether on March 18, 2011 when an initial draft merger agreement had been exchanged between Constellation Energy's and Exelon's legal advisors an exchange ratio had been discussed;

(j)     The factors considered in concluding that "it was appropriate to resolve all of the  other terms of the possible transaction before further defining the exchange ratio of shares to be paid in the merger;"

(k)     The considerations that prompted Constellation Energy to engage Credit Suisse Securities (USA) LLC to act as a financial advisor in mid-April 2011, what work they performed and how they were compensated;

(l)     What opportunities for strategic alternatives were discussed by the senior management of Constellation Energy and Morgan Stanley at the April 18, 2011 Board meeting;

(m)     Whether other potentially interested parties existed as of April 18, 2011; and

(n)     What the benefits of a possible transaction with Exelon were relative to alternative business combination transactions.

This information would be important to shareholders so, among other things, they can (a) determine whether they wish to give up their ownership and control of Constellation and instead have a smaller ownership interest in Exelon, (b) determine whether the value they would be receiving is the best that could be obtained, (c) determine whether the Board was fully informed about available options, (d) determine whether the Proposed Transaction was truly arms-length, and (e) determine how to vote on the Proposed Transaction.

58.     The Registration Statement fails to disclose material information concerning the Constellation Energy projections, Exelon projections, adjusted Constellation Energy projections, and adjusted Exelon projections used by the five financial advisors evaluating the fairness of the Proposed Transaction.  In particular, the Registration Statement should disclose:

(a)     The free cash flow projections for years 2011 through 2015, as well as disclosure of forecasts for all line items necessary to calculate the free cash flows; and

(b)     With respect to the adjusted Exelon projections, Constellation's "revised view of the relevant commodity curves" that caused Constellation to revise the projections, and Constellations "assumptions" that were considered in making adjustments to Exelon's capital expenditure plans.

This information would be important to shareholders so, among other things, they can understand the manner in which the projections were created, determine whether they were correctly performed, and use, or reject, the projections in making an informed decision as to how to vote on the Proposed Transaction.

59.     The Registration Statement completely fails to disclose the underlying methodologies, key inputs and multiples relied upon and observed by Morgan Stanley and Goldman, Sachs, & Co. ("Goldman Sachs"), the Company's financial advisors, so that

20

shareholders can properly assess the credibility of the various analyses performed by Morgan Stanley and Goldman Sachs and relied upon by the Board in recommending the Proposed Transaction.   This information is material to shareholders' assessment of the credibility of Goldman Sachs' and Morgan Stanley's fairness opinions.   Shareholders are being asked to vote their shares in the Proposed Transaction based in part on Goldman Sach's and Morgan Stanley's recommendation regarding the Company's valuation without facts and assumptions underlying the banker's opinion, and thus should be provided with the necessary information to make an independent judgment regarding the adequacy of the consideration.

60.    With respect to the financial analysis performed by Morgan Stanley, the Registration Statement fails to disclose the following:

(a)    Regarding the *Equity Research Analysts' Price Targets*, the number of research analysts' per-share price targets reviewed and observed for each of Constellation Energy and Exelon;

(b)    The criteria used to select the companies used in the *Comparable Public Companies Analysis*; the multiples observed for each company in the analysis and the criteria used to select the representative range of multiples that was selected by Morgan Stanley; the key inputs and assumptions used by Morgan Stanley in the analysis; and the reasons Morgan Stanley used Wall Street consensus estimates for Exelon and Constellation Energy, rather than using each companies' respective financial forecasts.

(c)    With respect to the *Sum-of-the-Parts Discounted Cash Flow Analyses of Constellation Energy*, the S-4 should disclose: the cash flow projections for years 2011 through 2015 for each business unit; the criteria used to select the terminal value multiples that were used for each business unit; the discount rate used for each business unit, as well as the key inputs and assumptions used to calculate each business unit's weighted average cost of capital; and the implied per share value range calculated for each business unit.

(d)    With respect to the *Sum-of-the-Parts Discounted Cash Flow Analyses of Exelon*, the S-4 should disclose: the cash flow projections for years 2011 through 2015 for each business unit, as well as which set of Exelon projections were used in the analysis; the criteria used to select the terminal value multiples that were used for each business unit; the

#1558560v.1

discount rate used for each business unit, as well as the key inputs and assumptions used to calculate each business unit's weighted average cost of capital; and the implied per share value range calculated for each business unit.

(e)     The transactions used, and the date of each transaction used, in the *Analysis of Selected Precedent Transactions*; the financial and market statistics observed for each transaction; the key inputs and assumptions used in the analysis; and the criteria used to select the 10% to 20% premium range and the 12.0x to 15.0x earnings range.

(f)     The amount of accretion and dilution observed in the *Pro Forma Transaction Analysis,* the amount of accretion observed in the *Pro Forma Trading Analysis*; and the key inputs and assumptions used for each analysis.

Also, the Registration Statement fails to disclose the amount of compensation received by Morgan Stanley for its services.  All of this information would be important to shareholders so they can, among other things, understand the manner in which the analyses were performed, determine whether they were correctly performed, and use, or reject, the analyses in making an informed decision as to how to vote on the Proposed Transaction.

61.     With respect to the financial analysis performed by Goldman Sachs, the Registration Statement fails to disclose the following:

(a)     The criteria used to select the companies used in the *Selected Companies Analysis*; the multiples observed for each of the companies; the key inputs and assumptions used by Goldman Sachs in the analysis, and the conclusions drawn by Goldman Sachs from the analysis.

(b)     The free cash flow projections for years 2011 through 2015 for Constellation (excluding the New Energy line of business) and of the New Energy line of business used in the *Illustrative Discounted Cash Flow Sum-of-the-Parts Analysis of Constellation*; the key inputs and assumptions used to calculate the weighted average cost of capital for Constellation (excluding the New Energy line of business) and of the New Energy line of business; the criteria used to select the terminal value multiples used in the analysis; "the revenues associated with servicing interest and amortization related to the RSB BondCo LLC rate stabilization bonds" and the reasons such revenues were excluded from the

22

analysis; and the implied per share value range calculated for the New Energy line of business alone.

(c)    The free cash flow projections of Exelon for years 2011 through 2015 used in the *Illustrative Discounted Cash Flow Analysis of Exelon*; the criteria used to select the terminal value multiple range of 6.75x to 8.75x; and the key inputs and assumptions used to calculated Exelon's weighted average cost of capital;

(d)    The expected synergies and the proposed benefits package estimates used in the *Illustrative Pro Forma Discounted Cash Flow Analysis;* the free cash flow estimates for years 2011 through 2015 for the pro form combined company used in the analysis; and the key inputs and assumptions used to calculate the pro form combined company's weighted average cost of capital.

(e)    The key inputs and assumptions used in the *Illustrative Present Value of Future Share Price Analysis of Constellation.*

(f)    The key inputs and assumptions used in the *Illustrative Present Value of Future Share Price Analysis of Exelon.*

(g)    The key inputs and assumptions used in the *Contribution Analysis.*

(h)    The key inputs and assumptions used in the *Illustrative Pro Forma Present Value of Future Value Analysis.*

Also, the Registration Statement fails to disclose the specific services provided by Goldman Sachs and the amount of compensation received for those services. All of this information would be important to shareholders so they can, among other things, understand the manner in which the analyses were performed, determine whether they were correctly performed, and use, or reject, the analyses in making an informed decision as to how to vote on the Proposed Transaction.

62.    The Registration Statement completely fails to disclose the underlying methodologies, key inputs and multiples relied upon and observed by Barclays Capital Inc. ("Barclays Capital"), J.P. Morgan Securities, LLC ("J.P. Morgan"), and Evercore Group L.L.C. ("Evercore"), Exelon's financial advisors, so that shareholders can properly assess the credibility

23

of the various analyses performed by Barclays Capital, J.P. Morgan, and Evercore.   This information is material to shareholders' assessment of the credibility of Barclays Capital's, J.P. Morgan's, and Evercore's fairness opinions.   Shareholders are being asked to vote their shares in the Proposed Transaction based in part on Barclays Capital's, J.P. Morgan's, and Evercore's assessment of the Company's valuation without facts and assumptions underlying the banker's opinion, and thus should be provided with the necessary information to make an independent judgment regarding the adequacy of the consideration.

63.   With respect to the financial analysis performed by Barclays, the Registration Statement fails to disclose the following:

(a)   The criteria used to select the companies used in the *Selected Comparable Company Analysis*, the multiples observed for each company in the analysis; the key inputs and assumptions used by Barclays in its analysis, and the conclusions drawn by Barclays from the analysis.

(b)   The free cash flow projections for years 2011 through 2015 for Exelon and Constellation calculated by Barclays in the *Consolidated Discounted Cash Flow Analysis*, and the weighted average cost of capital of the comparable companies used by Barclays in the analysis to select the appropriate discount rates, and the key inputs and assumptions used by Barclays in the analysis.

(c)   The amount of dilution and the amount of increases in EPS that were calculated by Barclays in the *Pro Forma Merger Analysis*, and the key inputs and assumptions used by Barclays in the analysis.

(d)   The key inputs and assumptions used by Barclays in the *Consolidated Trading Analysis*.

(e)   The key inputs and assumptions used by Barclays in the *Sum-of-the-Parts Trading Analysis*.

(f)   The key inputs and assumptions used by Barclays in the *Sum-of-the-Parts Discounted Cash Flow Analysis*.

(g)   The key inputs and assumptions used by Barclays in the *Contribution Analysis*.

Also, the Registration Statement fails to disclose the specific services provided by Barclays and the amount of compensation received for those services. All of this information would be important to shareholders so they can, among other things, understand the manner in which the analyses were performed, determine whether they were correctly performed, and use, or reject, the analyses in making an informed decision as to how to vote on the Proposed Transaction.

64.     Additionally, with respect to Barclays Capital's analysis, the Registration Statement needs to clarify, on Page 77, in the *Consolidated Trading Analysis* pertaining to Constellation Energy "based on the Exelon projections" whether the Exelon adjusted projections for Constellation Energy were used. This information would be important to shareholders so they can, among other things, understand the manner in which the analyses were performed, determine whether they were correctly performed, and use, or reject, the analyses in making an informed decision as to how to vote on the Proposed Transaction.

65.     With respect to the financial analysis performed by J.P. Morgan, the Registration Statement fails to disclose the following:

(a)     The criteria, key inputs, and assumptions used to select the discount rates, perpetuity growth rates, and terminal value multiples used for each business unit in the *Sum-of-the-Parts Discounted Cash Flow Analyses* of Constellation and Exelon; and the implied per share value of each business unit of Constellation and Exelon calculated by J.P. Morgan in the analysis;

(b)     The multiples, observed for each company in the *Consolidated Trading Comparable Analyses,* and the criteria, key inputs, and assumptions used to select the 6.0x to 7.0x multiple range for Constellation and the 7.0x to 8.0x multiple range for Exelon.

(c)     Constellation and Exelon's relative contributions to estimated leverage-adjusted EBITDA and net income for calendar years 2011 through 2015 that were observed in the *Contribution Analysis.*

(d)     The expected synergies used by J.P. Morgan in the *Relative Potential Pro Forma Value Creation from Expected Synergies Analysis.*

25

      (e)     The comparables and multiples used by J.P. Morgan in its *Sum-of-the-Parts Trading Comparable Analyses.*

Also, the Registration Statement fails to disclose the specific services provided by J.P. Morgan and the amount of compensation received for those services. All of this information would be important to shareholders so they can, among other things, understand the manner in which the analyses were performed, determine whether they were correctly performed, and use, or reject, the analyses in making an informed decision as to how to vote on the Proposed Transaction.

      66.     With respect to the financial analysis performed by Evercore, the Registration Statement fails to disclose the following:

      (a)     The key inputs and assumptions used to calculate the terminal value multiples and discount rate ranges used in the *Discounted Cash Flow Analysis.*

      (b)     The multiples observed for each company, and the key inputs and assumptions used, in the *Selected Peer Group Trading Analysis.*

      (c)     The premiums observed for each company in the *Premiums Paid Analysis.*

      (d)     The key inputs and assumptions used in the *Sum-of-the-Parts Analysis.*

Also, the Registration Statement fails to disclose the specific services provided by Evercore and the amount of compensation received for those services. All of this information would be important to shareholders so they can, among other things, understand the manner in which the analyses were performed, determine whether they were correctly performed, and use, or reject, the analyses in making an informed decision as to how to vote on the Proposed Transaction.

      67.     The facts that defendants failed to disclose are material to Plaintiff and the Class because the information (that was readily available to the Individual Defendants) bears on the value that they should receive for their Constellation Energy shares. Plaintiff is being forced to make a decision regarding how to vote his shares without adequate disclosure of material

#1558560v.1

information. The information that has not been disclosed is important for shareholders to properly assess and evaluate the Proposed Transaction and make an educated determination as to whether the Proposed Transaction has been properly valued. Accordingly, Plaintiff will be harmed and suffer losses absent further disclosures in the Registration Statement.

68.   Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## LOSS CAUSATION

69.   Defendants' material omissions in the Registration Statement have substantially contributed to the injury that Plaintiff has suffered in being asked to vote his shares in the Proposed Transaction without adequate information.

70.   Plaintiff is being asked to vote his shares pursuant to the Registration Statement. As detailed above, the Registration Statement fails to provide material information necessary for him to make an informed decision regarding how to vote his shares.

71.   It is pursuant to this Registration Statement that Plaintiff is being asked to determine whether the seemingly insufficient consideration of 0.930 shares of Exelon common stock in exchange for each share of Constellation Energy common stock is fair and adequate.

72.   The *Comparable Public Companies Analysis* conducted by Morgan Stanley yielded a value for the Company as high as $45.50 per share. The *Sum-of-the-Parts Discounted Cash Flow Analyses of Constellation Energy* yielded a value for the Company as high as $43.86 per share. Compared with the $38.59 per share value of the consideration based on Exelon's closing share price on April 27, 2011, these analyses highlight the inadequacy of the consideration.

73.   Thus, this Registration Statement, incomplete as it is, tends to indicate that the Board has accepted insufficient consideration and is recommending that Plaintiff do the same

27

while failing to provide him with all information necessary to make a decision regarding how to vote.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14 (a) of the Exchange Act

**(Brought by Plaintiff Individually Against Individual Defendants)**

74.     Plaintiff repeats all previous allegations as if set forth in full herein.

75.     Plaintiff brings this claim individually and not on behalf of the class.

76.     Defendants have caused the Registration Statement to be issued with material omissions and misleading statements, and with the intention of soliciting shareholder support of the Proposed Transaction.

77.     The Registration Statement is an essential link in the accomplishment of the Proposed Transaction.

78.     The Registration Statement violates Section 14(a) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

79.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

### COUNT II
### Breach of Fiduciary Duties Against the Individual Defendants

80.     Plaintiff repeats all previous allegations as if set forth in full herein.

81.     As alleged herein, the Individual Defendants have violated the fiduciary duties owed to the public shareholders of Constellation Energy, including Plaintiff, by each of the

28

Individual Defendants and have acted so as to place themselves in a position of conflict of interest with the interests of Constellation Energy's shareholders.

82.     By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value inherent in and arising from Constellation Energy.

83.     The Individual Defendants, having made a decision that Constellation Energy is for sale, assumed and owed fiduciary duties to Plaintiff and the other members of the Class.  In pursuing, negotiating the terms of, and making disclosures to Plaintiff and the other public shareholders of Constellation Energy regarding the Proposed Transaction, the Individual Defendants failed to act with the care an ordinarily prudent person in a like position (that of a director of a public company obligated under common law and otherwise to ensure that the shareholders (Plaintiff and the other members of the Class) receive maximized value for their property (their Constellation Energy shares)) would use under the same or similar circumstances.

84.     As alleged herein, having made the decision that Constellation Energy was for sale, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the proposed Class including, but not limited to, by pursuing the Proposed Transaction through a fatally flawed and coercive process that failed to maximize the value that Plaintiff and the other members of the Class will receive for their Constellation Energy shares through the Proposed Transaction.

85.     The Individual Defendants initiated a process to sell Constellation Energy that, in addition to failing to maximize shareholder value, vested one, some, or all of the Individual

Case 1:11-cv-02165-WDQ   Document 1   Filed 08/04/11   Page 30 of 36

Defendants with benefits that were not shared equally by Plaintiff and the other public shareholders of Constellation Energy.

86.     Instead of attempting to maximize shareholder value for Constellation Energy's shareholders, the Individual Defendants took actions to benefit Constellation Energy's insiders at the expense of Plaintiff and the Class.

87.     The Individual Defendants failed to sufficiently inform themselves of Constellation Energy's value and/or disregarded its true value in an effort to benefit themselves or otherwise.  Furthermore, any alternate acquirer, in addition to facing sever hurdles designed to discourage their pursuing the acquisition of Constellation Energy, was faced with engaging in discussions with a Board that was committed only to the Proposed Transaction.

88.     The Individual Defendants have violated their fiduciary duties by entering Constellation Energy into the Merger Agreement without regard to the effect of the Proposed Transaction on Constellation Energy's shareholders.

89.     In addition, the Individual Defendants owed to Plaintiff and the proposed Class members the duty of candor and were required to disclose to Plaintiff and the members of the proposed Class all information material to the decisions confronting Constellation Energy's shareholders.  They failed to fulfill their fiduciary duty to Plaintiff and other members of the proposed Class by having failed to disclose to all of them all material information necessary to allow Plaintiff and the other members of the proposed Class to make a fully informed decision.

90.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Constellation Energy, Plaintiff and the other members of the Class and have

#1558560v.1

failed to obtain for Constellation Energy the highest available value for Constellation Energy in the marketplace.

91.     As a result of the Individual Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive the highest available value for their equity interest in Constellation Energy and/or will not receive disclosures such that Plaintiff and the proposed Class will possess sufficient information to make a fully informed decision whether or not to vote in favor of the Proposed Transaction.  Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Transaction terms and may consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

92.     Plaintiff and the members of the Class have no adequate full remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT III

### Aiding and Abetting
### (Against All Defendants)

93.     Plaintiff repeats all previous allegations as if set forth in full herein.

94.     Each defendant provided substantial assistance, aid and/or encouragement to each of the other defendants in their respective engagement in the tortious conduct in which they engaged as herein alleged and did so with actual knowledge that the conduct they assisted, aided and/or encouraged was wrongful and with actual knowledge that their respective assistance, aid and/or encouragement was in furtherance of such knowingly wrongful conduct.

#1558560v.1

95.     Constellation Energy, Exelon, and Merger Sub each had actual knowledge of the Individual Defendants' breaches of fiduciary duty as herein alleged and had actual knowledge that their conduct as herein alleged would further and enable such breaches of fiduciary duty by the Individual Defendants.

96.     Each of the Individual Defendants had actual knowledge of each of the breaches of fiduciary duty as herein alleged and had actual knowledge that their own conduct as herein alleged would further and enable such breaches of fiduciary duty by the other Individual Defendants.

97.     Constellation Energy, Exelon, and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants have acted in breach of their fiduciary duties to the Company's public shareholders, and have participated in such breaches of fiduciary duties.  In so doing, Constellation Energy, Exelon, and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

98.     The Individual Defendants' breaches of fiduciary duty as alleged above would not have occurred without the knowing assistance, aid and encouragement of Constellation Energy, Exelon, and Merger Sub and each of the Individual Defendants.

99.     Plaintiff has no adequate full remedy at law.

## COUNT IV

## For Declaratory Relief Pursuant to 28 U.S.C. §2201 (Against All Defendants)

100.     Plaintiff repeats and realleges each allegation set forth above as if set forth fully herein.

101.     Defendants breached their fiduciary duties in connection with the Proposed Transaction, and/or aided and abetted such breaches, and are liable therefor.

102.    As a result of Defendants' conduct as herein alleged, Plaintiff and the other members of the Class have suffered and/or will, in the future, suffer damages and harm, including harm for which they have no adequate remedy at law.

103.    Pursuant to 28 U.S.C. §2201, Plaintiff demands a declaration that: (a) shareholders should not be asked to vote on the Proposed Transaction, and that such vote should be enjoined, until such time as plaintiff and the Class are adequately informed, as set forth herein; (b) Defendants and each of them have committed a gross abuse of trust and have breached their fiduciary duties owed to plaintiff and the Class and/or have aided and abetted such breaches; (c) the Proposed Transaction was entered into in breach of Individual Defendants' fiduciary duties and was therefore unlawful and unenforceable, and that the Proposed Transaction or other agreements that Defendants entered into in connection with, or in furtherance of, the Proposed Transaction should be rescinded and invalidated; and (d) the Proposed Transaction, the Merger Agreement and/or the transactions contemplated thereby, should be rescinded and the parties restored to their original position before the Merger Agreement was entered into.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff[2] demands relief in his favor and in favor of the proposed Class and against each of the defendants, jointly and severally, as to all Counts, including, but not limited to, as follows:

A.    Declaring that Counts II, III, and IV of this action are properly maintainable as a class action and certifying plaintiff as Class representative;

---

[2] Each item of relief described below that awarded under Section 14(a) is as to Plaintiff only and not to the Class

#1558560v.1

B.      Declaring that shareholders should not be asked to vote on the Proposed Transaction, and that such vote should be enjoined, until such time as plaintiffs and the Class are adequately informed;

C.      Declaring that Individual Defendants and each of them have committed a gross abuse of trust and have breached their fiduciary duties owed to plaintiff and the Class and/or have aided and abetted such breaches;

D.      Declaring that the Proposed Transaction was entered into in breach of Individual Defendants' fiduciary duties and was therefore unlawful and unenforceable, and that the Proposed Transaction or other agreements that defendants entered into in connection with, or in furtherance of, the Proposed Transaction should be rescinded and invalidated;

E.      Declaring that the Proposed Transaction, the Merger Agreement and/or the transactions contemplated thereby, should be rescinded and the parties restored to their original position before the Merger Agreement was entered into;

F.      Imposing a constructive trust, in favor of Plaintiff and the Class, upon any benefits, property or value improperly received by Defendants and/or traceable thereto and/or in the possession of any of the Defendants as a result of their wrongful conduct as herein alleged or hereafter discovered;

G.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

H.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting plaintiff and the Class rescissory damages;

34

I. Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

J. Awarding compensatory damages in favor of Plaintiff against all Defendants for all losses and damages suffered as a result of Defendants' wrongdoing alleged herein, in an amount to be determined at trial, together with interest, both pre-judgment and post-judgment, thereon;

K. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

L. Granting such other and further equitable relief as this Court may deem just and proper.

#1558560v.1

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated: August 4, 2011

Respectfully Submitted,

John B. Isbister, Bar No. 00639
Daniel S. Katz, Bar No. 01148
TYDINGS & ROSENBERG LLP
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
Tel.: (410) 752-9700
Fax: (410) 727-5460
E-Mail: jisbister@tydingslaw.com
  dkatz@tydingslaw.com

Donald J. Enright, Bar No. 013551
LEVI & KORSINSKY LLP
1101 30th Street, NW, Suite 115
Washington, DC  20007
Tel: (202) 524-4292
Fax: (202) 333-2121
E-Mail: denright@zlk.com

Charles J. Piven, Bar No. 00967
Yelena Trepetin, Bar No. 28706
BROWER PIVEN, A PROFESSIONAL
  CORPORATION
1925 Old Valley Road
Stevenson, MD  21153
Tel: (410) 332-0030
Fax: (410) 685-1300
E-Mail: piven@browerpiven.com
  trepetin@browerpiven.com

*Counsel for Plaintiff*

36