**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RONALD WALKER, On Behalf of Himself And All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CONSTELLATION ENERGY GROUP, INCORPORATED, MAYO A. SHATTUCK, III, YVES C. DE BALMANN, ANN C. BERZIN, JAMES T. BRADY, JAMES R. CURTIS, FREEMAN A. HRABOWSKI III, NANCY LAMPTON, ROBERT J. LAWLESS, JOHN L. SKOLDS, MICHAEL D. SULLIVAN, EXELON CORPORATION, and BOLT ACQUISITION CORPORATION,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:11-cv-02165-WDQ |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
EXPEDITED DISCOVERY AND MOTION TO SHORTEN TIME TO RESPOND
<u>TO MOTION FOR EXPEDITED DISCOVERY</u>**

## PRELIMINARY STATEMENT

Ronald Walker ("Plaintiff"), individually and on behalf of all others similarly situated, by his undersigned attorneys, respectfully submits this Memorandum of Law in support of the Motion for Expedited Discovery and Motion to Shorten Time to Respond to Motion for Expedited Discovery ("Motion"), filed concurrently herewith.  As Plaintiff is challenging a corporate transaction for which the shareholder vote is likely to occur in October 2011,[1] Plaintiff requests by this motion that Defendants produce the limited documents requested herein, no later that 10 days from the date this Court rules on the Motion for Expedited Discovery.

As explained in detail below, this action arises from the proposed sale of Constellation Energy to Exelon, whereby Exelon will acquire all of the outstanding shares of Constellation Energy in an all-stock transaction ("Proposed Transaction").  Specifically, in approving the Proposed Transaction, Plaintiff alleges that Defendants violated §14(a) of the Securities Exchange Act of 1934 ("Exchange Act") by filing a false and materially misleading joint proxy statement prospectus on Form S-4 with the United States Securities and Exchange Commission ("Registration Statement") in connection with the Proposed Transaction.  Plaintiff also brings claims individually and on behalf of the public stockholders of Constellation Energy against Constellation Energy's Board of Directors ("Board" or "Individual Defendants"[2]) for their

---

[1] According to the press release that Constellation Energy and Exelon issued on April 28, 2011, the Proposed Transaction is due to close by early 2012.

[2] The Individual Defendants are all directors of Constellation Energy: include Mayo A. Shattuck, III, Yves C. De Balmann, Ann C. Berzin, James T. Brady, James R. Curtis, Freeman A. Hrabowski III, Nancy Lampton, Robert J. Lawless, John L. Skolds, and Michael D. Sullivan.

breaches of fiduciary duties arising out of their attempt to sell the Company by means of an unfair process, for an unfair price and pursuant to a materially misleading Registration Statement.

Unless the Court grants expedited discovery relating to the Proposed Transaction, any injunctive relief to which Plaintiff might be entitled will be moot since the shareholder vote is due to be held in October 2011. Plaintiff is likely to suffer material, irreparable harm, because the vote on the Proposed Transaction will have taken place before Plaintiff has a meaningful opportunity to seek preliminary injunctive relief. Thus, and for the reasons for fully set forth below, the Court should grant the Motion and enter an Order: 1) directing Defendants to produce the requested discovery within 10 days and to present the requested witnesses for deposition within a reasonable period of time thereafter; and 2) setting a briefing schedule and a date and time for a hearing on Plaintiff's anticipated motion for a preliminary injunction.

## SUMMARY OF THE CASE

On April 28, 2011 Constellation Energy and Exelon jointly announced that they had entered into a definitive agreement under which Exelon will acquire all of the outstanding shares of Constellation Energy in an all-stock transaction ("Merger Agreement"). ¶ 3.[3] Under the terms of the Proposed Transaction, which is valued at approximately $7.9 billion, the shareholders of Constellation Energy will receive 0.930 shares of Exelon common stock in exchange for each share of Constellation Energy common stock. ¶ 3. Based on Exelon's closing price share on April 27, 2011, the day before the Proposed Transaction was announced,

---

[3] Citations in the form "¶ __" are to plaintiff's Class Action Complaint, dated August 4, 2011.

Constellation Energy shareholders would receive a value of $38.59 per share, which only represents a small premium of just 12.5 percent based upon the $34.30 closing price of Constellation Energy stock on April 27, 2011.  ¶ 37.

The Board has breached its fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. ¶ 3.   In light of the successful initiatives that the Company instituted in 2010 that have positioned Constellation Energy for significant growth, the consideration shareholders are to receive is inadequate and significantly undervalues the Company. ¶ 37.  The inadequacy of the consideration offered is also highlighted by the financial analysis performed by Morgan Stanley & Co. LLC ("Morgan Stanley"), one of Constellation Energy's financial advisors, which yielded a value for the Company as high as $45.50 per share. ¶ 38.[4]

Defendants have also breached their fiduciary duties by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company.  ¶ 4.   Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirors or even in continuing discussions and negotiations with potential acquirors; (ii) a provision that provides Exelon with five business days to match any competing proposal in the event that one is made; and (iii) a provision that requires the Company

---

[4] The *Comparable Public Companies Analysis* conducted by Morgan Stanley yielded a value for Constellation Energy as high as $45.50 per share, and the *Sum-of-the-Parts Discounted Cash Flow Analyses of Constellation Energy* yielded a value for the Company as high as $38.59 per share.  ¶ 38.

to pay Exelon a termination fee of $200 million in order to enter into a transaction with a superior bidder.  ¶ 4.

Furthermore, the Company's executive officers and Board have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of the Company's public shareholders. ¶45. The Registration Statement specifically states that "Constellation's stockholders should be aware of the benefits available to the executive officers and directors of Constellation in connection with the merger. These individuals have certain interests in the merger that may be different from, or in addition to the interests of Constellation's stockholders generally." ¶45. Upon completion of the Proposed Transaction, Defendant Shattuck, Constellation Energy's CEO, will become executive chairman of the combined company, and upon completion of the merger, Defendant Shattuck and three independent directors of Constellation will be added to Exelon's current 15-member board of directors. ¶ 31. Moreover, Defendant Shattuck stands to gain a considerable sum upon consummation of the merger. ¶46. He is expected to receive total compensation in the amount of approximately $12.4 million. ¶49. For example, Defendant Shattuck is expected to receive a total of $3,125,000 representing "double trigger" benefits, including the estimated value of cash severance payments under the Severance Plan, as well as the estimated pro rata, lump sum annual incentive payment under the Executive Annual Incentive Plan. ¶47.

Defendants have further breached their fiduciary duties and have violated Section 14(a) of the Exchange Act in connection with the Proposed Transaction by failing to provide the Company's shareholders with material information in the Registration Statement that was filed

4

with the SEC on June 27, 2011, thereby rendering the shareholders unable to make an informed decision regarding whether to vote in support of the Proposed Transaction. For example, the Registration Statement fails to disclose:

- The factors that prompted Defendant Shattuck to commence discussions with Morgan Stanley regarding a potential transaction with Exelon a mere two weeks after he first discussed the possibility with Exelon management (¶ 57);

- When Constellation Energy first contacted Morgan Stanley to request it act as an advisor for a potential transaction with Exelon (¶ 57);

- When Defendant Shattuck's discussions with Mr. Rowe on November 30, 2010 pertaining to management's role in a potential combined company entailed (¶ 57);

- The considerations reflected in Constellation Energy's decision to discuss and evaluate the required regulatory approvals with Exelon before addressing other topics of a possible transaction, such as consideration (¶ 57);

- What the strategic plan was that Constellation Energy provided to Exelon on January 13, 2011 (¶ 57);

- How the subgroup of Constellation Energy directors, Robert J. Lawless, Ann C. Berzin, James T. Bray and Yves C. De Balmann, was selected by the Board to review details of a possible transaction with Exelon (¶ 57);

- What were the results of the analyses of the opportunities presented by a possible transaction with Exelon that the Board discussed on February 11, 2011, as well as what was Constellation Energy's stand-alone business plan discussed on that date (¶ 57);

- What was Constellation Energy's management's assessment of the strategic effects of the possible transactions as well as the potential risks discussed at the Board dinner on February 24, 2011 (¶ 57);

- Whether on March 18, 2011 when an initial draft merger agreement had been exchanged between Constellation Energy's and Exelon's legal advisors an exchange ratio had been discussed (¶ 57);

- The factors considered in concluding that "it was appropriate to resolve all of the other terms of the possible transaction before further defining the exchange ratio of shares to be paid in the merger" (¶ 57);

- The consideration that prompted Constellation Energy to engage Credit Suisse Securities (USA) LLC to act as a financial advisor in mid-April 2011, what work they performed and how they were compensated (¶ 57);

- What opportunities for strategic alternatives were discussed by the senior management of Constellation Energy and Morgan Stanley at the April 18, 2011 Board meeting (¶ 57);

- Whether other potentially interested parties existed as of April 18, 2011 (¶ 57); and

- What the benefits of a possible transaction with Exelon were relative to alternative business combination transactions (¶ 57).

The Registration Statement also fails to disclose material information concerning the Constellation Energy and Exelon projections, as well as the adjusted Constellation Energy and Exelon projections, used by the five financial advisors evaluating the fairness of the Proposed Transaction.  ¶58.  Also omitted from the Registration Statement is information about the underlying methodologies, key inputs and multiples relied upon and observed by Morgan Stanley and Goldman, Sachs, & Co. ("Goldman Sachs"), the Company's financial advisors, so that shareholders can properly assess the credibility of the various analyses performed by Morgan Stanley and Goldman Sachs and relied upon by Constellation's Board in recommending the Proposed Transaction. ¶ 59.  Furthermore, the Registration Statement completely fails to disclose the underlying methodologies, key inputs and multiples relied upon and observed by Barclays Capital Inc. ("Barclays"), J.P. Morgan Securities, LLC ("J.P. Morgan"), and Evercore Group LLC ("Evercore"), Exelon's financial advisors, so that shareholders can properly assess the credibility of the various analyses performed by Barclays, J.P. Morgan and Evercore. ¶ 62.

These material omissions of fact render it impossible for Constellation shareholders to make an informed decision on whether or not to vote in favor of or against the Proposed Transaction.

## ARGUMENT

### I.     STANDARDS OF LAW

Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f). *Qwest Communications Int'l Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 419 (D.Colo. 2003); *Ayyash v. Bank Al-Madina et. al.,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005). Although under the Private Securities Litigation Act ("PSLRA") discovery will be stayed upon the filing of a motion to dismiss, no such motion has been filed in this action. Even if such a motion had already been filed, there are sufficient grounds to grant relief from that stay given the urgency of the situation and the necessity to prevent undue prejudice to the Plaintiff.[5] "However courts may expedite discovery before the Rule 26(f) conference upon a showing of good cause." *Qwest,* 213 F.R.D. at 419.  Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *St. Louis Group,*

---

[5] Under 15 U.S.C.A. § 78u-4(b)(3)(B) "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." This "undue prejudice" standard amounts to "'improper or unfair treatment' amounting to something less than irreparable harm." *Vacold LLC v. Cerami*, 2001 U.S. Dist. LEXIS 1589 at *22-23 (S.D.N.Y. Feb. 16, 2001) (citations omitted). Since unfair prejudice is "something *less* than irreparable harm," such undue prejudice must exist when a plaintiff stands to be irreparably harmed. *Id.* (emphasis added).

*Inc. v. Metals & Additives Corp., Inc.,* C.A. No. L-11-22, 2011 WL 1833460, at *2 (S.D. Texas April 26, 2011) *citing Energy Prod. Corp. v. Northfield Ins. Co.*, C.A. No. 10-0933, 2010 WL 3184232 (E.D. La. Aug. 6, 2010) (quoting *Semitool Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002), (internal quotations omitted).  The good cause standard may be satisfied where a party seeks a preliminary injunction.  *Qwest,* 213 F.R.D. at 419; *see also El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,* 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004) ("Expedited discovery [is] appropriate in cases involving preliminary injunctions or challenges to personal jurisdiction"); Advisory Committee Notes to 1993 amendments to Rule 26(d) (discovery before 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction").

## II.    GOOD CAUSE FOR EXPEDITED DISCOVERY EXISTS

It is well-settled that expedited discovery is reasonable and good cause is shown in cases where, absent an order granting expedited discovery, stockholders will make an uninformed or misinformed decision or where the acquisition will close before the Plaintiff is entitled to discovery.  *See also City Partnership Co. v. Atl. Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) (allowing expedited discovery based on the limited duration of the tender offer); *Moravek v. FNB Bancorp, Inc.*, 1986 U.S. Dist. LEXIS 23188, at *12-13 (N.D. Ill. 1986) (determining that plaintiff must be allowed discovery prior to their preliminary injunction hearing and, given the short period of time during which the current tender offer will be open, such discovery needs to be expedited); *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1555 (3d Cir. 1994) (expedited discovery used in suit concerning allegations that the defendants

breached their fiduciary duties in approving a merger); *FTC v. Univ. Health, Inc.,* 938 F.2d 1206, 1210 (11th Cir. 1991) (granting expedited discovery where FTC sought to enjoin asset acquisition); *Ronson Corp. v. Liquifin Aktiengesellschaft*, 483 F.2d 846, 848 (3d Cir. 1973) (directing expedited discovery in a case involving allegations that defendants made misrepresentations and omissions in connection with a tender offer). To that end, Plaintiff respectfully requests that the Court grant the motion for expedited discovery so that the record can be developed, and the Court can hear a motion for a preliminary injunction at the earliest possible time.

When a party seeks expedited discovery in order to prepare for a preliminary injunction hearing, the request should be examined based on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances. *See Merrill Lynch, Pierce, Fenner and Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000). Here, shareholder vote on the Proposed Transaction is likely going to take place in October 2011, with the expectation that the deal can be closed no later than early 2012. Therefore, expedited discovery is necessary because discovery in the usual course may not commence until after the vote takes place, and the discovery requested is of vital importance to the injunctive relief Plaintiff intends to seek.

In addition, the Delaware Court of Chancery, which regularly deals with issues regarding corporate transactions, routinely permits expedited discovery in actions such as this one. *See In re Int'l Jensen S'holders Litig.*, C.A. No. 14992, 1996 WL 42235, at *1 (Del. Ch. July 13, 1996) ("A party's request to schedule an application for a preliminary injunction and to expedite the

discovery related thereto is normally routinely granted.  Exceptions to that norm are rare."); *See Allen v. News Corp.,* C.A. No. 979, 2005 WL 415095 (Del. Ch. Feb. 3, 2005) (granting motion to expedite and setting preliminary injunction hearing relating to disclosure claims); *Cf. In re HCA Inc. S'holders Litig.,* C.A. No. 2307, 2006 WL 3480273, at *2 (Del. Ch. Nov. 20, 2006) ("the optimal time to bring a disclosure claim in connection with a proposed merger, or in a like context where the company requests shareholder action or approval, is before the stockholder vote is taken and the deal closes.") (*citing In re SunGard Data Sys., Inc. S'holders Litig.,* C.A. No. 1221, 2005 WL 1653975 (Del. Ch. July 8, 2005)(emphasis added)); *See also Weinberger v. Amstar Corp.,* C.A. No. 7322, 1984 WL 19474, at *1 (Del. Ch. Jan. 16, 1984) ("To deny the plaintiffs the right to discovery at this time would be, in effect, to deny them their right to seek a preliminary injunction").

### A.      Plaintiff Is Threatened With Irreparable Injury

Plaintiff and the public stockholders of Constellation Energy are clearly threatened with irreparable injury if the Proposed Transaction is consummated without his intended motion for a preliminary injunction being heard.  Irreparable harm generally exists where the injury cannot be compensated adequately in damages.  *Alpha Builders, Inc. v. Sullivan*, C.A. No. 698, 2004 Wl 2694917, at *5 (Del. Ch. Nov. 5, 2004).  Irreparable harm is typically found where stockholders are forced to make an important decision, such as the decision as to whether or not to vote in favor of a merger, with inadequate disclosures.  *See In re Netsmart Techs., Inc. S'holders Litig.,* 924 A.2d 171, 207-08 (Del. Ch. 2007); *LA. Mun. Police Employees' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1192 (Del. Ch. 2007) ("[s]hareholders would suffer irreparable harm [if they] were . .

. forced to vote without knowledge of the material facts"); *In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 452 (Del. Ch. 2002) (making a decision regarding a tender offer "on the basis of materially misleading or inadequate information" constitutes irreparable harm); *Gilmartin v. Adobe Res. Corp.*, C.A. No. 12467, 1992 WL 71510, at *274-78 (Del. Ch. Apr. 6, 1992); *State of Wis. Inv. Bd. v. Bartlett*, C.A. No. 17727, 2000 WL 238026, at *3   (Del. Ch. Feb. 9, 2000) ("[S]hareholders will suffer irreparable harm as a matter of law if they must vote for or against the merger [on the planned date] given [] findings that they will not have adequate time to receive, absorb and consider the supplement material."); *Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.*, 532 A.2d 1324, 1340 (Del. Ch. 1987) (where stockholders have not received sufficient information to make an informed decision, "the inability to make that choice constitutes irreparable harm"); *In re The MONY Group Inc. S'holder Litig.*, 852 A.2d 9, 32 (Del. Ch. 2004).

To prevent such harm, Plaintiff seeks expedited discovery to enable him to have a meaningful opportunity to seek injunctive relief.  Plaintiff will be unable to do so without expedited discovery because almost all of the relevant documents are in the possession of the Defendants, and Plaintiff needs to evaluate further, *inter alia*: (1) the strength of his argument concerning the terms of the Proposed Transaction; (2) the extent of the Defendants' (including the Individual Defendants) breaches of fiduciary duties; (3) Constellation Energy's current alternatives; and (4) Constellation Energy's true financial performance.  Plaintiff seeks to develop the factual record so that he may determine whether it is necessary to proceed with his anticipated preliminary injunction motion.  If expedited discovery is granted, the Court will have the benefit of a full record in ruling on the preliminary injunction motion, and Plaintiff will not

be deprived of a meaningful opportunity to protect his rights and the rights of the class of shareholders he seeks to represent.

As the shareholder vote on the Proposed Transaction is likely going to take place in October 2011, Plaintiff must move quickly to further develop and present the evidentiary basis and to determine whether a preliminary injunction is necessary.  If the Proposed Transaction proceeds as scheduled and Plaintiff is precluded from supplementing the evidentiary record, Plaintiff will be unable to determine the necessity of a preliminary injunction and to supplement the record upon which Plaintiff would rely for a preliminary injunction.  Accordingly, expedited discovery is warranted.

**B.     The Registration Statement Omits Material Information**

Further, here, the Registration Statement omits material information necessary for shareholders to make an informed decision as to whether or not to vote in favor of the Proposed Transaction – including key projections, criteria and analytical variables that provided the foundation for Morgan Stanley and Goldman Sachs' fairness opinions.  Those disclosures are clearly material.  For example, in *Netsmart*, the court held that the disclosures were materially incomplete where they failed to disclose the projections used to perform the discounted cash flow analysis.  *In re Netsmart*, 924 A.2d at 200-203.  The court stated:

> Once a board broaches a topic in its disclosures, a duty attaches to provide information that is "materially complete and unbiased by the omission of material facts." For this reason, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion **as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.**  Only providing some of that information is insufficient to fulfill the duty of

> providing a "fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the board as to how to vote . . . rely."

*Id.* (emphasis added).

Courts have repeatedly emphasized the important role that financial projections prepared by management play in a shareholder's decision regarding a proposed merger. *See, e.g., In re PNB Holding Co. S'holders Litig.*, C.A. No. 28, 2006 WL 2403999, at *15 (Del. Ch. Aug. 18, 2006) ("[R]eliable management projections of the company's future prospects are of obvious materiality to the electorate. After all, the key issue for the stockholders is whether accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company."); *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 958 n.44 (Del. Ch. 2001) ("the projections are the information that most stockholders would find the most useful to them.").

## III.   THE LIMITED DISCOVERY SOUGHT WILL NOT BURDEN DEFENDANTS

The benefit of allowing the Company's stockholders a meaningful opportunity to protect their rights as stockholders of the Company far outweighs the minimal burden placed on Defendants in producing documents on an expedited basis. Moreover, Plaintiff has sought to limit any burden or hardship on Defendants by requesting discovery that is narrowly tailored to obtain the information necessary to evaluate the Proposed Transaction and to show that the disclosures made in the Registration Statement are materially deficient. Notably, Defendants and their advisors are solely in possession of the analyses concerning the Proposed Transaction and all such other documents relevant thereto. Thus, these documents are readily available to

Defendants to produce to Plaintiff.  As such, the burden on Defendants in producing such documents on an expedited basis will be minimal.

Plaintiff's discovery requests are limited in scope and are not disruptive or burdensome. For example, Plaintiff essentially seeks the following documents from Defendants:

- meeting minutes of Constellation Energy's Board relating to the Proposed Transaction or other strategic transaction;

- materials exchanged between Constellation Energy and its financial advisor(s) relating to the Proposed Transaction or other strategic transaction and all documents regarding any presentations by any advisors to the Board in connection with the Proposed Transaction or other strategic transaction;

- materials regarding Constellation Energy's financial performance (more importantly forward looking), valuation of the Company's assets and all management forecasts or projections regarding the same;

- documents regarding current and anticipated affiliations and arrangements between Constellation Energy, the Individual Defendants, and Exelon;

- documents regarding other possible strategic transactions;

- documents regarding the fairness opinions prepared by Morgan Stanley, Goldman Sachs,  Barclays, J.P. Morgan), and Evercore; and

- documents regarding the due diligence files provided to Exelon by Constellation.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter the accompanying order to allow expedited discovery, as well as any other remedy the Court deems appropriate.

Dated: August 26, 2011                                  Respectfully Submitted,


                                                          _____/s/_____

Donald J. Enright, Bar No. 013551
LEVI & KORSINSKY LLP
1101 30th Street, NW, Suite 115
Washington, DC  20007
Tel:  (202) 524-4292
Fax:  (202) 333-2121
Email: denright@zlk.com

John B. Isbister, Bar No. 00639
Daniel S. Katz, Bar No. 01148
TYDINGS & ROSENBERG LLP
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
Tel.: (410) 752-9700
Fax: (410) 727-5460
Email: jisbister@tydingslaw.com
        dkatz@tydingslaw.com


Charles J. Piven, Bar No. 00967
Yelena Trepetin, Bar No. 28706
BROWER PIVEN
  A Professional   Corporation
1925 Old Valley Road
Stevenson, MD  21153
Tel:  (410) 332-0030
Fax:  (410) 685-1300
Email: piven@browerpiven.com
        trepetin@browerpiven.com

***Counsel for Plaintiff***