**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| **RONALD WALKER**<br><br>        **Plaintiff**<br><br>**v.**<br><br>**CONSTELLATION ENERGY GROUP, INC.,**<br>**et al.**<br><br>        **Defendants** | **CASE NO. 1:11-CV-02165-WDQ** |

**MEMORANDUM IN SUPPORT OF CONSTELLATION**
**DEFENDANTS' MOTION TO STAY PENDING RESOLUTION**
**OF PRIOR-FILED STATE COURT ACTIONS**

# TABLE OF CONTENTS

**Page**

BACKGROUND ..............................................................................................................4

      A.     The Parties .................................................................................................4

      B.     Constellation-Exelon Merger...................................................................4

      C.     The State Merger Cases ............................................................................5

      D.     The Federal Actions ..................................................................................7

LEGAL STANDARD....................................................................................................12

  I.     The Court Should Exercise Its Discretion To Stay This Action
         Temporarily..............................................................................................14

      A.     This Court Should Stay this Proceeding to Avoid Duplicative and
              Wasteful Litigation ..................................................................................14

      B.     Policy Considerations Underlying The PSLRA Favor A Stay .................17

  II.    *Colorado River* Also Warrants A Stay ................................................................20

      A.     This Case and The State Merger Cases Are Parallel ................................21

      B.     The *Colorado River* Factors Heavily Favor A Stay..................................25

CONCLUSION..............................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amdur v. Lizars,*
   372 F.2d 103 (4th Cir. 1967).................................................................. 12, 14, 15, 22

*Arrow Concrete Co. v. Ohio Farmers Ins. Co.,*
   981 F. Supp. 443 (S.D. W.Va. 1997) ........................................................... 24

*Avmed, Inc. v. Sheridan Healthcorp, Inc.,*
   No. 09-23851-Civ, 2010 WL 3008811 (S.D. Fla. July 28, 2010)............................ 24

*Beck v. CKD Praha Holding, A.S.,*
   999 F.Supp. 652, 656 (D. Md.1998) ....................................................... 22, 25

*Beck v. Dobrowski,*
   559 F.3d 680 (7th Cir. 2009)...................................................................... 22

*Calif. Public Employees' Retirement System v. Chubb Corp.,*
   127 F. Supp. 2d 572 (D.N.J. 2001) ............................................................. 19

*Chase Brexton Health Servs., Inc. v. Maryland,*
   411 F.3d 457 (4th Cir. 2005)...................................................................... 21

*Cohen v. Hillman, et al.,*
   No. 1:10cv237 (E.D. Va. Apr. 30, 2010) .................................................... 16

*Colorado River Water Conservation District v. United States,*
   424 U.S. 800 (1976) ....................................................................... passim

*Cort v. Ash,*
   422 U.S. 66 (1975) ................................................................................. 27

*Covance Labs., Inc. v. Orantes,*
   338 F. Supp. 2d 613 (D. Md. 2004) ............................................................ 22

*Ellicott Mach. Corp. v. Modern Welding Co., Inc.,*
   502 F.2d 178 (4th Cir. 1974)................................................................ 17, 26

*Gabelli v. Sikes Corp.,*
   No 90 Civ. 4904, 1990 WL 213119 (S.D.N.Y. Dec. 14, 1990) ............................. 24

*Gannett Co. v. Clark Constr. Group, Inc.,*
   286 F.3d 737 (4th Cir.2002)................................................................. 21, 25

*Hickey v. Baxter,*
   No. 87-2028, 1987 WL 39020 (4th Cir. Nov. 19, 1987)....................................... 12

*In re Allion Healthcare Inc. S'holder Litig.*,
   No. Civ. A. 5022-CC, 2011 WL 1135016 (Del. Ch. Mar. 29, 2011) .................................. 15, 16

*In re Carnegie Int'l Corp. Sec. Litig.*,
   107 F. Supp. 2d 676 (D. Md. 2000) ............................................................... 18

*In re Cyberonics Inc. Sec. Litig.*,
   468 F. Supp. 2d 936 (S.D. Tex. 2006) ............................................................ 19

*In re DPL, Inc. Sec. Litig.*,
   247 F. Supp. 2d 946 (S.D. Ohio 2003) ........................................................... 18

*In re Nationwide Health Props., Inc. S'holder Litig.*,
   No. 24-C-11-001476 (Balt. City Cir. Ct. May 27, 2011) ................................... 24, 27

*In re Trump Hotel S'holder Derivative Litig.*,
   No. 96 Civ. 7820, 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997) ........................... 17, 18

*Int'l Jensen, Inc. v. Emerson Radio Corp.*,
   No. 96 C 2816, 1996 WL 494273 (N.D. Ill. Aug. 27, 1996) ......................... 24, 27, 28

*Int'l Nickel Co. v. Martin J. Barry, Inc.*,
   204 F.2d 583 (4th Cir. 1953) ..................................................................... 12

*Klein v. Walston & Co.*,
   432 F.2d 936 (2d Cir. 1970) ...................................................................... 24

*Kreditverein Der Bank Austria Credianstalt Fur
   Niederosterreich Und Bergenland v. Nejezchleba*,
   477 F.3d 942 (8th Cir. 2007) ...................................................................... 13

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ....................................................................... 3, 12, 21

*Lorentzen v. Levolor Corp.*,
   754 F. Supp. 987 (S.D.N.Y. 1990) ........................................................... 24, 25

*McCreary v. Celera Corporation*,
   No. 11-1618-SC, 2011 WL 1399263 (N.D. Cal. Apr. 13, 2011) ............................. 23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................... 13, 23, 25, 26

*Mottolese v. Kaufman*,
   176 F.2d 301 (2d Cir. 1949) ................................................................. 15, 27

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*,
   946 F.2d 1072 (4th Cir. 1991) .................................................................... 22

iii

*Seneca One Finance, Inc. v. Structured Asset Funding*, LLC,
  No. DKC 10-1704, 2010 WL 4449444 (D. Md. Nov. 4, 2010) ................................................ 22

*SG Cowen Sec. Corp. v. U.S. Dist. Court*,
  189 F.3d 909 (9th Cir. 1999) ................................................................................ 17

*Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*,
  123 F. Supp. 2d 514 (D.S.D. 2000) ................................................................ 17, 26

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ........................................................................................ 24, 27

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................................ 19

*Wood v. Walton*,
  No. WDQ-09-33982011, 2011 WL 3439308 (D. Md. 2011) .............................. 12

*Yesteryears, Inc. v. Waldorf Restaurant, Inc.*,
  730 F. Supp. 1341 (D. Md. 1989) .................................................................. 15, 27

## Statutes

15 U.S.C. § 78u-4(a)(3) ........................................................................................ 3

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................ 17

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................ 17

15 U.S.C. § 78u-4(b)(3)(B) ............................................................................ 3, 16

15 U.S.C. § 78u-4(u)(3) ...................................................................................... 11

28 U.S.C. § 2201 .................................................................................................. 8

## Other Authorities

7C Wright, Miller & Kane,
  Federal Practice and Procedure § 1838 (3d ed. 2007) ...................................... 13

H.R. Conf. Rep. 104-369 (Nov. 28, 1995) .......................................................... 18

S. Rep. No. 104-98 (June 19, 1995) ..................................................................... 18

As a matter of judicial efficiency and to avoid duplicative or inconsistent proceedings, this Court should exercise its broad discretion to stay the action filed in this Court in favor of the twelve class actions that were filed earlier and consolidated in the Circuit Court for Baltimore City, *In re Constellation Energy Group, Incorporated Shareholder Litigation*, Case No. 24-C-11-003015 (Md. Cir. Ct., filed April 28, 2011) (the "State Merger Cases"). The State Merger Cases and this case are all putative stockholder class actions arising out of the same proposed merger, asserting duplicative state claims, and seeking essentially the same relief. All of the cases are based on the same allegations that the directors of Constellation Energy Group, Inc. ("Constellation") somehow breached their fiduciary duties by approving a pending merger between Constellation and Exelon Corporation ("Exelon") — a transaction Constellation's Board approved after several months of review and analysis, which offers Constellation's shareholders a 24 percent premium over the unaffected share price of Constellation's stock, and which will not occur unless the owners of a majority of Constellation's shares vote in favor of it.

Beginning on April 28, 2011, the day that Constellation and Exelon announced the proposed merger, many law firms — including Brower Piven, a Professional Corporation; Levi & Korsinsky LLP; and Tydings & Rosenberg LLP (collectively, the "Brower Piven Group"), Plaintiff's counsel in this action — filed reflexive complaints in Maryland state court asserting familiar, generic allegations of "unfair price" and "unfair process" couched as legal conclusions of breaches of fiduciary duties. Within two weeks, a total of twelve substantially identical suits had been filed. The State Merger Cases were consolidated on May 18, 2011 and assigned to the Circuit Court's Business & Technology Case Management Program (the "B&T Program") and specially assigned to Judge Audrey J.S. Carrion as the presiding judge. On June 1, 2011, Judge Carrion resolved competing motions for appointment of Lead Plaintiffs' counsel. In doing so,

she denied the Brower Piven Group's motion and granted that of other capable counsel.  Judge Carrion underscored that ruling on June 22, 2011 by denying the Brower Piven Group's motion to reconsider.   Remarkably, neither the Complaint filed here nor Mr. Walker's Motion to Expedite Discovery even mentions the existence of the State Merger Cases or the Brower Piven Group's role in those cases.

This action represents a third bite at the apple for the Brower Piven Group.  Having twice lost its bid for appointment as lead counsel in the State Merger Cases, the Brower Piven Group's latest complaint tacks on a claim under Section 14(a) of the 1934 Exchange Act that merely repackages the same allegations of material omissions from the proxy statement that underlie the state fiduciary duty claims in the State Merger Cases (and, for that matter, Plaintiff's own fiduciary duty claims in this case).   The addition of a federal securities claim (purportedly brought individually, not as a class claim like plaintiff's fiduciary duty claims in this same case) is a lawyer-driven attempt to differentiate this suit from the pending State Merger Cases, gain entry to federal court as a means to evade adverse rulings on appointment of lead counsel, and justify prosecution of this case separate and apart from the pending Maryland litigation.   But there is no justification to require Defendants simultaneously to defend duplicative allegations in two separate forum or to require this Court to expend its time and resources on a matter involving core issues of Maryland corporate governance law already being addressed by the Circuit Court for Baltimore County, with its experience in matters of Maryland corporate law. Indeed, on May 27, 2011, the Circuit Court issued a 45-page opinion in *In re Nationwide Health Properties, Inc. Shareholder Litigation*, Case No. 24-C-11-001476, addressing the same issues of Maryland law presented by Mr. Walker's complaint here. (Exhibit K.)

Thus, under the Supreme Court's seminal decision in *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936) (Cardozo, J.), and its progeny, this Court should exercise its discretionary "inherent power" to stay this case.  *See infra* Section I.A.

What is more, because Plaintiff elected to add a Section 14(a) claim, the Court should give weight to the policies underlying the Private Securities Litigation Reform Act ("PSLRA"), which heavily favor a stay of this case.  *First*, the PSLRA mandates a stay of all discovery pending resolution of motions to dismiss that Defendants intend to file.  15 U.S.C. § 78u-4(b)(3)(B).  Defendants will file a motion for protective order to stay discovery pursuant to the PSLRA on September 8, 2011.  *Second*, the Brower Piven Group's decision to plead Plaintiff's Section 14(a) claim solely in his individual capacity (and not on behalf of a class) is a thinly veiled artifice designed to avoid the mandatory stay associated with the PSLRA's Lead Plaintiff appointment process for putative class claims.  *See* 15 U.S.C. § 78u-4(a)(3).  *See infra* Section I.B.

Lastly, even if the Court analyzes the issue under the abstention standard set out in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976) — which Defendants submit is not necessary here — the Court nevertheless should stay this case because it is parallel to the State Merger Cases and the pragmatic considerations relevant to such analysis favor a stay.  *See infra* Section II.

Under any standard, it is clear that this lawsuit is simply designed to circumvent the authority of Judge Carrion and the Circuit Court for Baltimore City, and a paradigmatic example of after-the-fact forum shopping.  For these reasons, the Court should stay this suit in favor of the first-filed State Merger Cases.

# BACKGROUND[1]

## A.    The Parties

Constellation is a Maryland corporation and leading competitive supplier of power, natural gas, and energy products and services for homes and businesses across the continental United States.  Exelon is a utility services holding company located in Chicago that engages in the generation, transmission, distribution, and sale of electricity to residential, commercial, industrial, and wholesale customers in northern Illinois.  Exelon also sells electricity and natural gas on a retail basis to customers in southeastern Pennsylvania.  Plaintiff Ronald Walker alleges that he "is, and has been at all relevant times," a shareholder of Constellation common stock. (Compl. ¶ 8.)  Tellingly, Mr. Walker did not allege how many Constellation shares he owns.

## B.    Constellation-Exelon Merger

Beginning in October 2010, Constellation and Exelon began discussions of a potential merger.  Discussions and analysis continued throughout April 2011, with both Constellation and Exelon receiving multiple fairness opinions from their respective financial advisors.  Following negotiations over deal terms and presentations from its advisors, including discussion of opportunities for alternative strategic transactions, Constellation's Board concluded that the terms of the proposed transaction presented a strong value proposition to Constellation stockholders and approved the proposed merger on April 27, 2011.  The proposed merger with Exelon is Constellation's third major strategic transaction over the past six years.

Upon completion of the merger, each outstanding share of Constellation common stock will be converted into the right to receive 0.930 shares of Exelon common stock.  The exchange

---

[1]    The factual background is based on allegations in the Complaint, as well as Constellation's and Exelon's June 27, 2011 Joint Registration Statement, filed on Form S-4 (the "Joint Proxy Statement") with the Securities and Exchange Commission.  (Exhibit A.)  Plaintiff's Complaint cites to and relies on the Joint Proxy Statement and therefore that document is incorporated by reference into Plaintiff's pleading. *See* Fed. R. Civ. P. 10(c).

ratio represents a 24.6% premium over the 30-day average closing price of Constellation common stock as of April 6, 2011, the last date prior to the first public reports of a possible transaction between Constellation and Exelon – *i.e.*, the unaffected stock price.

On June 27, 2011, Constellation and Exelon filed with the United States Securities and Exchange Commission a 198-page joint proxy and disclosure statement regarding the proposed merger (the "Joint Proxy Statement").[2] The document provides extensive disclosures concerning the background to the proposed transaction, the terms of the proposed transaction, and the analyses conducted by both companies' financial advisors. The 79-page Agreement and Plan of Merger ("Merger Agreement") and the actual fairness opinions of both companies' financial advisors are attached to the Joint Proxy Statement.

The proposed transaction will not take place unless it is approved by Constellation's stockholders. It currently is contemplated that the vote will take place in mid-October. During the time remaining before that vote, other potential merger partners are free to submit a superior proposal to Constellation's board of directors if they wish to do so.

## C.     The State Merger Cases

On April 28, 2011 — the same day the companies announced the merger — each of the three firms that comprise the Brower Piven Group rushed to file putative class action complaints against Constellation, its directors, and Exelon in the Circuit Court for Baltimore City on behalf of three different individuals. *Engel v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003015; *Heinmuller v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003016; *Estate of Loveman v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003058. (Exhibits B-D.)[3] All

---

[2]     Constellation and Exelon filed an amended joint proxy and disclosure statement concerning the proposed transaction on August 17, 2011.

[3]     The *Loveman* complaint, while dated April 28, 2011, was actually filed on April 29.

three complaints alleged Maryland state law fiduciary duty claims against the directors and aiding and abetting claims against Constellation and Exelon.  Nine substantially identical lawsuits followed.  When the dust finally settled, twelve putative class action complaints had been filed in the Circuit Court for Baltimore City within two weeks of the merger announcement against Constellation, its directors, Exelon, and, in some cases, Bolt Acquisition Corporation ("Bolt"), the Exelon subsidiary created for purposes of the proposed transaction.  Each case seeks to enjoin a shareholder vote and consummation of the merger.  Each complaint contains the same conclusory allegations and asserts the same breach of fiduciary duty and aiding and abetting claims.

Soon after filing their complaints, the Brower Piven Group filed a Motion for Consolidation and Appointment of Interim Lead Counsel.  On May 19, counsel in other cases, namely, *Argentino v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003211 and *Gordon v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003212 (collectively, "the Argentino/Gordon Group"), filed a competing motion for appointment of lead and liaison counsel.  The competing motions were fully briefed.

The State Merger Cases were consolidated on May 18, 2011 and assigned to Judge Carrion under the Circuit Court's B&T Program.  On June 1, 2011, Judge Carrion denied Brower Piven Group's motion and granted the motion by counsel for the Argentino/Gordon Group.  (Exhibit E.)  Judge Carrion underscored her ruling on June 22, 2011 by denying the Brower Piven Group's motion to reconsider the lead counsel question.  Notably, although the cases were consolidated, the Brower Piven Group still represents three clients in the State Merger Cases.

On July 14, 2011, after Constellation and Exelon submitted a preliminary version of the Joint Proxy Statement to the SEC, the plaintiffs in the State Merger Cases filed a consolidated

complaint in state court alleging that the Constellation Board breached its fiduciary duty by, among other things, failing to take steps to maximize the merger consideration, approving preclusive deal protections, securing benefits to existing directors of Constellation at the unfair expense of the public stockholders, and failing to disclose purportedly material information to stockholders in the Preliminary Proxy.  (Exhibit F.)  It further alleges that Constellation and Exelon aided and abetted the purported breaches of fiduciary duties.  The State Merger Cases complaint seeks to enjoin a shareholder vote and consummation of the merger or, in the event the merger is completed, rescind the merger and/or recover money damages on behalf of Constellation's stockholders.

With the filing of the consolidated complaint on July 14, Plaintiffs in the State Merger Cases also moved for expedited discovery concerning their disclosure claims, among other things.  On July 28, 2011, Defendants moved to dismiss the complaint with prejudice for failure to state a claim and also moved to stay discovery pending a ruling on Defendants' motions to dismiss.  On August 9, 2011, after a hearing, the court denied Plaintiffs' request for expedited discovery, concluding that they "have not sufficiently articulated a colorable claim showing that the extra details not contained in the proxy statement are necessary and material for the shareholders to make a fair and informed decision regarding the proposed merger transaction." (Exhibit G.)

Defendants' motion to dismiss the State Merger Cases is fully briefed and will be heard by Judge Carrion on September 9, 2011.

### D.   The Federal Actions

On August 4, 2011 — more than three months after the original complaints were filed and six days after Defendants moved to dismiss the State Merger Cases — plaintiff Ronald Walker filed this case.  Mr. Walker is represented by the Brower Piven Group, the same counsel

group that was twice denied lead counsel status in the State Merger Cases.  Completely absent from the Brower Piven Group's complaint in this action and related motion papers is any reference whatsoever to the existence of the State Merger Cases, the twelve separate complaints consolidated in state court, or the fact that the Brower Piven Group continues to represent three clients in those cases.

And yet the allegations in this action are substantially identical to those in the State Merger Cases.  Like the State Merger Cases, the Brower Piven Group claims in this action that the process Constellation undertook in connection with the proposed transaction was inadequate; that the exchange ratio undervalues Constellation's shares; that Constellation directors unfairly secured benefits for themselves at the expense of shareholders; that the standard deal protections in the merger agreement are unfairly preclusive; and that the disclosures in Constellation's Preliminary Proxy are inadequate.  The Brower Piven Group asserts claims for breach of fiduciary duties and aiding and abetting such breaches, and also seeks to represent a class of Constellation stockholders on all of the state law claims.  The complaint in this action also seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, in the form of a declaration that Defendants have committed the underlying violations alleged, that a shareholder vote should be enjoined, and that any merger activity already consummated should be rescinded.  As a matter of substance, the inclusion of a separate declaratory judgment claim adds nothing new to the federal complaint.

The only other difference between this action and the State Merger Cases is that the Brower Piven Group has added a claim under Section 14(a) of the 1934 Exchange Act, on the theory that the Joint Proxy Statement — which has not yet gone effective and has not been mailed to stockholders — is materially misleading because it omits material facts necessary for

Plaintiff Walker to make a fully informed decision in voting his shares. Although this claim is essentially identical to the state law claim alleging inadequate proxy disclosures, and although this claim equally affects all shareholders, the Brower Piven Group asserts this Section 14(a) claim solely on behalf of Plaintiff Walker in his individual capacity and not on behalf of a putative class.

A review of the complaints in the State Merger Cases and in this action reveals that the State Merger Cases and the Brower Piven Group's federal action are duplicative. The following chart summarizes the salient features of each suit, and makes plain that the two suits involve the same parties, make the same allegations, and seek the same relief.

| State Consolidated Amended Complaint | Walker Federal Complaint |
| --- | --- |
| Named Defendants: | Named Defendants: |
| <ul><li>Corporate Defendants: Constellation Energy Group, Exelon Corporation, Bolt Acquisition Corporation</li><li>Individual Defendants: Yves C. de Balmann, Ann C. Berzin, James T. Brady, James R. Curtiss, Freeman A. Hrabowski, III, Nancy Lampton, Robert J. Lawless, Mayo A. Shattuck, III, John L. Sko1ds, Michael D. Sullivan</li></ul> | <ul><li>Corporate Defendants: Constellation Energy Group, Exelon Corporation, Bolt Acquisition Corporation</li><li>Individual Defendants: Yves C. de Balmann, Ann C. Berzin, James T. Brady, James R. Curtiss, Freeman A. Hrabowski, III, Nancy Lampton, Robert J. Lawless, Mayo A. Shattuck, III, John L. Sko1ds, Michael D. Sullivan</li></ul> |

Allegations concerning the process leading to the transaction:

- The Board conducted a flawed and coercive process that failed to maximize value for Constellation's shareholders. (*Id.* ¶ 84.)

- The Board failed to inform itself of Constellation's value. (*Id.* ¶ 87.)

- Discussions regarding valuation did not occur until four months into negotiations. (*Id.* ¶ 43.)

- Constellation negotiated exclusively with Exelon and did not attempt to engage strategic bidders. (*Id.* ¶ 44.)

Allegations concerning the Joint Proxy Statement:

The Joint Proxy Statement is materially misleading and incomplete with respect to:

- The process conducted by the Board in conducting merger negotiations (*id.* ¶ 57);

- Financial projections used by both companies' financial advisors evaluating the fairness of the transaction (*id.* ¶ 58);

- The underlying methodologies, key inputs and multiples relied upon and observed by Constellation's and Exelon's financial advisors (*id.* ¶¶ 59-66).

Allegations concerning the Merger Agreement:

- The "no solicitation" provision bars Constellation from soliciting interest from other potential acquirers. (*Id.* ¶ 52.)

- The matching rights provision gives Exelon access to rival bidder's information and allows Exelon a free right to top any superior offer simply by matching it. (*Id.* ¶ 53.)

- The termination fee requires any competing bidder to agree to pay a $200

Allegations concerning the process leading to the transaction:

- The Board initiated a process to sell Constellation that undervalues the company. (*Id.* ¶ 139.)

- The Board failed to sufficiently inform themselves of Constellation's value. (*Id.*)

- Discussions regarding an exchange ratio did not begin until five months into strategic discussions. (*Id.* ¶ 65.)

- Constellation negotiated exclusively with Exelon and never attempted to contact other potential bidders. (*Id.* ¶ 3.)

Allegations concerning the Joint Proxy Statement:

The Joint Proxy Statement is materially misleading and incomplete with respect to:

- The sales process leading to the proposed acquisition (*id.* ¶ 88-89);

- Financial projections of Constellation's and Exelon's management (*id.* ¶ 90);

- The key inputs and assumptions underlying the fairness opinions provided by Constellations' and Exelon's financial advisors (*id.* ¶ 91-129).

Allegations concerning the Merger Agreement:

- The "no solicitation" clause prohibits the defendants from soliciting alternative proposals and constrains their ability to communicate and negotiate with potential buyers. (*Id.* ¶ 76.)

- The "matching rights" clause serves to dissuade any competing bidders from emerging. (*Id.* ¶ 82.)

- The $200 termination fee deters and prevents submissions of higher proposals

10

million premium for the right to provide shareholders with a superior offer.  (*Id.* ¶ 54.)

and adds an additional cost of any competing bid.  (*Id.* ¶ 75.)

Common Causes of Action:

- Breach of fiduciary duty (against the individual defendants).  (*Id.* ¶¶ 80-92.)
- Aiding and abetting breach of fiduciary duty (against Constellation, Exelon and Bolt).  (*Id.* ¶¶ 93-99.)

Common Causes of Action:

- Breach of fiduciary duty (against the individual defendants).  (*Id.* ¶¶ 136-140 (direct claim), 145-149 (derivative claim.)
- Aiding and abetting breach of fiduciary duty (against Constellation, Exelon and Bolt).  (*Id.* ¶¶ 141-144.)

Common Relief sought:

- Declaring that the transaction is in breach of defendants' fiduciary duties and was therefore unlawful and unenforceable.  (*Id.* at p. 34)
- Enjoining the shareholder vote and the transaction.  (*Id.*)
- Rescinding the transaction, to the extent implemented, or awarding rescissory damages.  (*Id.*)
- Directing defendants to account to the Company, plaintiffs and class for their damages, and awarding compensatory damages.  (*Id.* at p. 35.)
- Awarding costs and disbursements, including attorneys' fees and experts' fees.  (*Id.*)
- Such further relief as the Court may deem appropriate.  (*Id.*)

Common Relief sought:

- Granting appropriate equitable relief to remedy defendants' breaches of fiduciary duties.  (*Id.* at p. 51.)
- Enjoining the transaction.  (*Id.*)
- Rescinding the transaction, to the extent consummated, or awarding rescissory damages.  (*Id.*)
- Directing defendants to account to plaintiff and class for damages suffered.  (*Id.* at p. 52.)
- Awarding costs and disbursements, including attorneys' fees and experts' fees .  (*Id.*)
- Such other and further equitable relief as the Court may deem just and proper.  (*Id.*)

In addition to this action, on August 30, 2011, a related action challenging the Constellation-Exelon merger was filed in this Court — *W.C. Smith v. Constellation Energy Group, Inc., et al.* (Exhibit H.)  Unlike Mr. Walker's Section 14(a) claim, which the Brower Piven Group purports to assert on behalf of Mr. Walker alone, the Section 14(a) claim in the *Smith* action is brought on behalf of the same class as the state law claims.  Accordingly, on

11

September 1, 2011, Mr. Smith filed notice of his lawsuit and the PSLRA Lead Plaintiff process. (Exhibit I.)  As a result, the *Smith* action undeniably will be subject to the PSLRA Lead Plaintiff process, which includes a stay of proceeds until this Court selects a Lead Plaintiff and Lead Counsel.  15 U.S.C. § 78u-4(u)(3).  Lastly, yesterday, September 6, 2011, the Smith plaintiffs filed a motion to consolidate the *Smith* and *Walker* actions and to have Mr. Smith appointed lead Plaintiff and his counsel, Robbins Umeda, appointed lead counsel.[4]

## LEGAL STANDARD

 "A district court's authority to stay an action 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Wood v. Walton*, No. WDQ-09-33982011, 2011 WL 3439308, at *3 (D. Md. Aug. 4, 2011) (Quarles, J.) (*quoting Int'l Nickel Co. v. Martin J. Barry, Inc.,* 204 F.2d 583, 586 (4th Cir. 1953) (*quoting Landis,* 299 U.S. at 254–55)).  In considering whether to exercise its discretionary inherent power to stay, a Court need not employ a formula dictating its analysis.  Rather, whether to stay temporarily a proceeding "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Hickey v. Baxter*, No. 87-2028, 1987 WL 39020, at *1 (4th Cir. Nov. 19, 1987) (*quoting Landis*, 299 U.S. at 254) (affirming stay in exercise of court's inherent powers while awaiting guidance from higher court in a case that could decide relevant issues).  Ultimately, "[t]he decision to stay depends on the facts and circumstances in each particular case, and is committed to the Court's discretion."  *Wood*, 2011 WL 3439308, at *5 (exercising inherent stay powers to stay declaratory judgment action that "require[d] resolution of the same issue" as prior-filed tort action "to prevent such inconsistencies"); *see also Amdur v. Lizars*, 372 F.2d 103, 105 (4th Cir. 1967)

---

[4]        Until recently, Mr. Smith was also a plaintiff in the State Merger Cases.  On September 2, 2011, Mr. Smith filed a notice of voluntary dismissal of his state complaint.

(affirming stay of federal shareholder action pursuant to inherent powers, pending resolution of prior-filed and further-advanced similar state proceeding that threatened defendants with same injuries).

Although *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976) is invoked at times to analyze stay motions pending resolution of a parallel proceeding, the Court need not reach it here.  *Colorado River* should apply only where a stay constitutes a final, appealable order.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983); *Kreditverein Der Bank Austria Credianstalt Fur Niederosterreich Und Bergenland v. Nejezchleba*, 477 F.3d 942, 946 (8th Cir. 2007).  In analyzing the distinction between a stay under *Colorado River* and a stay pursuant to the court's inherent powers, the Eighth Circuit recently explained that "[t]he only time that an order granting a stay will be considered a final order is if [the stay] is tantamount to dismissal and [the stay] effectively ends the litigation." *Kreditverein*, 477 F.3d at 946 (holding *Colorado River* did not apply because a stay of a federal action pending resolution of a state action was not a final, appealable order; regardless of the outcome of the state case, there would be issues left for resolution in the federal action).

Defendants here do not seek dismissal or a final, appealable order.  Rather, they seek only a temporary stay to allow the prior-filed State Merger Cases to run their course in the interest of judicial economy and because issues decided in that case bear upon those to be decided here. Regardless of the outcome of the State Merger Cases and the impact such outcomes may have on duplicative claims in this action, Plaintiff's Exchange Act claim necessarily will require

continued adjudication in this Court.[5]  Thus, granting a stay here would not "effectively end[] the litigation."  *See id.*  Although Defendants do not believe that *Colorado River* should apply here, an analysis under *Colorado River* nevertheless supports a stay.  *See* Argument, Section II.

## I.   THE COURT SHOULD EXERCISE ITS DISCRETION TO STAY THIS ACTION TEMPORARILY

### A.   This Court Should Stay this Proceeding to Avoid Duplicative and Wasteful Litigation

A stay of a federal shareholder suit is appropriate where, as here, there is concurrent state litigation that is "substantially identical."  *Amdur*, 372 F.2d at 105; *see generally* 7C Wright, Miller & Kane, Federal Practice and Procedure § 1838 (3d ed. 2007).  The Court should exercise its discretion to stay this action pending resolution of the first-filed State Merger Cases in the interest of judicial economy and avoidance of duplicative litigation.  The claims asserted here are the subject of the actions consolidated in the State Merger Cases.  Both litigations arise out of the same transaction and seek to adjudicate the same fundamental questions on behalf of the same constituency — Constellation stockholders.  The defendants in both litigations are identical.  The claims are virtually identical and arise out of a common nucleus of operative facts: the proposer merger and Constellation's actions leading up to it.  The federal complaint was brought by a group of plaintiffs' counsel (specifically, the Brower Piven Group) that first participated in the State Merger Cases and filed here only after meeting with disappointment in the state court.[6]  Both litigations primarily involve issues of state law and corporate governance, which are uniquely within the province of state courts.  *See Yesteryears, Inc. v. Waldorf Restaurant, Inc.*,

---

[5]        That is not to say, however, that the Circuit Court's adjudication of the state disclosure claim in the State Merger Cases will have no impact on Mr. Walker's federal disclosure claim here.  For example, as explained below in Argument, Section II, the materiality standards under Maryland and federal law are identical.

[6]        Similarly, the plaintiff in the *Smith* case – who is also a plaintiff in the State Merger Cases – is represented by Robbins Umeda LLP, which had moved to be appointed lead counsel of the State Merger Cases before ultimately withdrawing its motion and throwing its support to the Argentino/Gordon Group.

730 F. Supp. 1341, 1346 (D. Md. 1989).[7]   Both litigations seek the same essential relief: an injunction against a shareholder vote and consummation of the merger, rescission of any merger-related actions purportedly taken in violation of fiduciary duties, and enhanced disclosures.

Given the substantial overlap between these two cases, resolution of the State Merger Cases plainly will be determinative of the state claims alleged in this action.   Requiring both cases to go forward simultaneously would be a waste of judicial resources, risk piecemeal litigation with inconsistent results, and impose costly burdens on Defendants to defend two parallel suits.   There simply is no good reason for both cases to proceed.   By contrast, there are many good reasons that both cases should not proceed simultaneously.   *See Mottolese v. Kaufman*, 176 F.2d 301, 301 (2d Cir. 1949) (staying federal shareholder suit where there was "already pending in the state court an action, consolidated out of nine separate actions, all upon the same claims and against substantially the same defendants, but brought by separate shareholders"); *Amdur*, 372 F.2d at 107 (applying the *Mottolese* rule in the Fourth Circuit).

As recently retired Chancellor William Chandler of the Delaware Court of Chancery recognized earlier this year:   "[t]he potential problems" arising from multi-forum lawsuits challenging the same proposed merger "are numerous."   *See In re Allion Healthcare Inc. S'holder Litig.*, No. Civ. A. 5022-CC, 2011 WL 1135016, at *4-5 (Del. Ch. Mar. 29, 2011). "Defense counsel is forced to litigate the same case — often identical claims — in multiple courts."   *Id.*   "Judicial resources are wasted as judges in two or more jurisdictions review the same documents and at times are asked to decide the exact same motions."   *Id.*   Notably, Chancellor Chandler emphasized:   "Worse still, if a case does not settle or consolidate in one forum, there is the possibility that two judges would apply the law differently or otherwise reach

---

[7]     Although Plaintiff's section 14(a) claim is a federal claim, the materiality standard of such a claim is identical to the standard for the state law disclosure claims currently pending in the State Merger Cases. *See infra* at Section II.A.

different outcomes, which would then leave the law in a confused state and pose full faith and credit problems for all involved." *Id.* Each of these concerns is manifest here. If both cases are allowed to proceed, both the Circuit Court for Baltimore City and this Court will incur the burden of handling likely contentious litigation. And, of course, Defendants will be forced to litigate the same issues in two different courts. Finally, denying a stay would reward the Brower Piven Group for its forum shopping after experiencing disappointing results in state court.

Further, even with a temporary stay, Plaintiff Walker will not be denied a federal forum to pursue his federal claims. Because his Section 14(a) claim is subject to exclusive federal jurisdiction, resolution of the state claims in the State Merger Cases will not extinguish his right to prosecute that claim before this Court at the appropriate time. In a recent notable example of this precise posture, Judge Brinkema stayed an action pending in the Eastern District of Virginia that alleged claims under Section 14(a) (as well as breach of fiduciary duty claims), when a parallel action in the Delaware Court of Chancery was challenging the same potential merger solely on state law grounds. *See Cohen v. Hillman, et al.*, No. 1:10cv237, Order & Hr'g Tr. at 14-15 (E.D. Va. Apr. 30, 2010) (Exhibit J). In granting the stay, the court explained that although "[t]here may be a few extra . . . federal claims in this case, [] the heart and soul of both pieces of litigation is the same." (*Id.* at 14:3-5.) Judge Brinkema noted that "staying the case makes absolutely good sense" in the interest of being "conservative when it comes to using judicial resources when there's parallel litigation going on." (*Id.* at 15:8-11.) The court further explained that the prior-filed state case was "ahead of this case, does address the core issues that are at issue in this case, and that case ought to be allowed to go forward." (*Id.* at 15:12-14.)

The order in which the courts obtained jurisdiction and the progress achieved in each action also favors a stay. Under the "first-filed" rule, the court first to obtain jurisdiction

generally "should have priority."  *See Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974).  In such circumstances, the subsequently filed case should be stayed pending resolution of the first-filed litigation.  *See Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*, 123 F. Supp. 2d 514, 519 (D.S.D. 2000) (staying later-filed federal action in favor of first action filed in Delaware Court of Chancery).  All of the State Merger Cases were filed before Plaintiff Walker filed his federal complaint.  The State Merger Cases also are further along.  Judge Carrion has already held two hearings and resolved five motions in the State Merger Cases and on September 9, 2011 will hear Defendants' motions to dismiss, which are fully briefed.  By contrast, in this case, initial responsive pleadings are not yet due.

### B.      Policy Considerations Underlying The PSLRA Favor A Stay

The presence of claims subject to the PSLRA also favors a stay.  The PSLRA expressly provides for a stay of discovery until motions to dismiss have been resolved.  In addition, the PSLRA was enacted to deter lawyer-driven litigation, and that policy further counsels for entry of a stay here.

### 1.      The PSLRA Mandates A Stay Of Discovery Until Motions to Dismiss Have Been Resolved

The PSLRA mandates a stay of discovery pending resolution of motions to dismiss securities claims.  *See* 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under [the 1934 Exchange Act], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . .").  This stay encompasses not only Plaintiff's Section 14(a) claim but also the related state claims.  *See SG Cowen Sec. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 913 n.1 (9th Cir. 1999); *In re Trump Hotel S'holder Derivative Litig.*, No. 96 Civ. 7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) (staying pendant state law claims because "[h]aving

17

chosen to invoke Section 14 of the Exchange Act, plaintiffs are necessarily subject to the PSLRA").  "Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims." *SG Cowen*, 189 F.3d at 913 n.1. (quotations omitted).

Contrary to established law, Plaintiff suggests in his Motion for Expedited Discovery that the PSLRA's mandatory discovery stay does not apply because Defendants have not moved to dismiss the complaint.   (Pl.'s Mot. for Expedited Disc. at 7.)   This contention is wrong. Defendants have every intention of moving to dismiss the complaint.  That is all that is required to trigger the PSLRA's discovery stay.  *See In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 683 (D. Md. 2000) (concluding that discovery stay applied when defendant "probably intends to file a Motion to Dismiss" to ensure that the court assessed the sufficiency of the complaint)*; see also In re DPL, Inc. Sec. Litig.*, 247 F. Supp. 2d 946, 947 n.4 (S.D. Ohio 2003) (PSLRA discovery stay applied where defendants "indicated that they anticipate moving to dismiss"); *In re Trump Hotel S'holder Derivative Litig.*, No. 96 Civ. 7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) (PSLRA discovery stay applied to claims under Section 14 of the 1934 Exchange Act and to state law claim, where defendants anticipated moving to dismiss). Defendants will address this point more fully in their opposition to Plaintiff's Motion for Expedited Discovery.

> **2.      The Policy Underlying the PSLRA's Lead Plaintiff Appointment Process Further Weighs In Favor Of A Stay**

The PSLRA sets out a process for appointment of Lead Plaintiff in putative securities class actions: the first plaintiff to file a securities class action must circulate a public notice of the complaint, any class member seeking Lead Plaintiff status must file a motion, and a court must

issue an order appointing Lead Plaintiff and lead class counsel within 90 days of the notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B).  This process applies to class actions involving Section 14(a) claims, *see Calif. Public Employees' Retirement System v. Chubb Corp.*, 127 F. Supp. 2d 572, 576 (D.N.J. 2001), *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001), and courts stay proceedings until the Lead Plaintiff process is completed, *see In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 940 (S.D. Tex. 2006) ("Until such time as the publication of notice and selection of lead plaintiff is made, the case will be stayed.").

The legislative history of the PLSRA demonstrates that one of the primary problems the Lead Plaintiff appointment process sought to address was the prevalence of counsel racing to the courthouse to file attorney-driven suits.  H.R. Conf. Rep. 104-369, at *27 (Nov. 28, 1995) ("House and Senate Committee hearings on securities litigation reform demonstrated the need to reform abuses involving the use of 'professional plaintiffs' and the race to the courthouse to file the complaint.")  Both the House and Senate identified a need for legislation that would ensure that securities plaintiffs — as opposed to counsel — would drive securities lawsuits.  *See* S. Rep. No. 104-98, at *9-10 (June 19, 1995) ("The Committee believes that the lead plaintiff — not the lawyers — should drive the litigation. . . .  This provision is intended to permit the plaintiff to choose the counsel rather than have counsel choose the plaintiff."); H.R. Conf. Rep. 104-369, at *29 (Nov. 28, 1995) ("[T]he Conference Committee expects that the plaintiff will choose counsel rather than, as is true today, counsel choosing the plaintiff.")  Judge Carrion underscored her ruling in selecting lead counsel in the State Merger Cases by reference to these policies.

The PSLRA's policy and process are relevant here because, as explained above, the Brower Piven Group aggressively sought to become lead counsel in the State Merger Cases and lost.  Invoking the policies underlying the PSLRA, Judge Carrion concluded that counsel other

than the Brower Piven Group was the most adequate counsel to represent the consolidated class. Disappointed with that ruling, the Brower Piven Group resurfaced with a new plaintiff in federal court with the same claims slightly repackaged.  In an effort to avoid losing another lead counsel contest, the Brower Piven Group attempts to evade the PSLRA Lead Plaintiff process here by pleading the lone federal claim on an individual basis.  With the convenient exception of the Section 14(a) claim, all other claims are putative class claims.  But by seeking to enjoin a shareholder vote "until such time as plaintiffs and the Class are adequately informed," (Compl. ¶ 103), the Section 14(a) claim in fact seeks class-wide relief.  What is more, the Brower Piven Group still pleads here the same state law claims on behalf of the same putative class in which it already represents clients in the State Court Merger cases.

To allow this artifice to succeed would make a mockery of the state court Lead Plaintiff process, as well as the PSLRA policy for selecting lead counsel.  It also would result, as a practical matter, in an inconsistent Lead Plaintiff selection result.  In sum, allowing the federal claim to proceed would reward the lawyer-driven litigation tactics that the PSLRA was designed to prevent.  There is thus good reason for the Court to exercise its inherent powers and stay this action pending resolution of the State Merger Cases.  This is all the more important now that the related *Smith* action — which is indisputably subject to the PSLRA Lead Plaintiff process — pends in this Court.

## II.     *COLORADO RIVER* ALSO WARRANTS A STAY

Although Defendants believe the Court need not reach the *Colorado River* standard in order to grant a temporary stay here because Defendants do not seek dismissal of Plaintiff's claims at this juncture (*see supra* Argument, Section I), an analysis under *Colorado River* nevertheless warrants a stay.

A federal court may abstain from exercising its jurisdiction in favor of concurrent and parallel state proceedings where doing so would serve the interests of ''wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'' *Colorado River*, 424 U.S. at 818.  The "threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits."  *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005).  If the suits are parallel, the court must balance a number of factors in considering whether the circumstances warrant a stay.  *See Gannett Co. v. Clark Constr. Group, Inc.,* 286 F.3d 737, 741 (4th Cir.2002).

Without establishing a rigid test, the Supreme Court has recognized several factors that are relevant in determining whether a particular case warrants a stay: (1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) whether the state court proceedings are adequate to protect the parties' rights.  *Chase Brexton*, 411 F.3d at 463-64.  Of the six factors, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."  *Colorado River*, 424 U.S. at 818-19 (citing *Landis*, 299 U.S. at 254-55).[8]

### A.      This Case and The State Merger Cases Are Parallel

As a threshold matter, the Court must determine if this later-filed federal action and the State Merger Cases are parallel, which means that "substantially the same parties [are] litigating

---

[8]        The first two *Colorado River* factors are inapplicable here.  No real property is involved in the dispute, and, as between this Court and the Circuit Court for Baltimore City, neither is more or less convenient.

substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).  A stay of this action would avoid the duplication of efforts that would necessarily result from allowing "substantially identical" actions to proceed on parallel tracks.  *Amdur*, 372 F.2d at 105; *see also Covance Labs., Inc. v. Orantes*, 338 F. Supp. 2d 613, 616–17 (D. Md. 2004) (staying case pursuant to *Colorado River* where state and federal claims were brought by substantially similar parties and "involve the same operative facts" and issues); *Seneca One Finance, Inc. v. Structured Asset Funding*, LLC, No. DKC 10-1704, 2010 WL 4449444, at *4 (D. Md. Nov. 4, 2010) (staying "unquestionably parallel" federal action where the "parties are identical, the cases involve the same operative facts, and substantially similar legal issues are presented")

Here — as explained in detail above in Background, Section D and Argument, Section I.A — the cases are indisputably parallel.  The same parties are litigating the same issues based on the same nucleus of operative facts, and plaintiffs in both cases seek the same relief.  *See Beck v. CKD Praha Holding, A.S.*, 999 F.Supp. 652, 656 (D. Md.1998) *Beck*, 999 F. Supp. at 656 (finding federal and state cases to be parallel where plaintiffs filing the two suits were different individual shareholders, because "the identity of interests between [the two plaintiffs was] virtually identical"); *see also Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009) (holding that it is "not critical" for plaintiffs in federal and state cases to be identical, "[f]or if it were [critical], different members of what should be a single class could file identical suits in federal and state courts to increase their chances of a favorable settlement").  The State Merger Cases, if successful, would afford Plaintiff (and the putative class) everything sought in the present lawsuit:  namely, an injunction blocking the shareholder vote and merger, or, if consummated, rescissory damages.

The presence of a claim under Section 14(a) of the 1934 Exchange Act does not undermine the parallel nature of the actions because the substance of that claim is materially similar to the inadequate state law proxy claims in both the State Merger Cases and Mr. Walker's own complaint.  The inclusion of a Section 14(a) claim is merely a defensive tactic to avoid a stay in favor of the earlier filed State Merger Cases — a tactic courts reject.  *See Moses H. Cone*, 460 U.S. at 17 n.20 (explaining that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*").

*McCreary v. Celera Corporation* is instructive in this regard.  *See* No. 11-1618-SC, 2011 WL 1399263 (N.D. Cal. Apr. 13, 2011).  Following Celera's announcement of a proposed merger, shareholders filed seven lawsuits in three jurisdictions seeking to enjoin the merger, all before McCreary filed his federal complaint.  Three of the actions were consolidated in the Delaware Court of Chancery, three were consolidated in California Superior Court, and one was filed in the Northern District for the District of California.  Plaintiff McCreary then filed his federal action.  All of the complaints alleged substantially identical claims that the defendant directors breached their fiduciary duties by approving a proposed merger and made false or misleading disclosures about the transaction.  "[T]he only difference between Plaintiff's action and the others is that Plaintiff has added individual claims under the Exchange Act based on the same allegedly misleading disclosures that form part of the basis for his fiduciary duty claims." *Id.* at *2.  Notwithstanding that plaintiff's Exchange Act claim was subject to exclusive federal jurisdiction, the court stayed the action because the cases were substantially identical and a stay would best serve the interests of judicial economy and comprehensive disposition of litigation. *Id.* at *4; *see also Int'l Jensen, Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273,

at *4-6 (N.D. Ill. Aug. 27, 1996) (staying later-filed federal action that included Section 14(a) claim that was mere repackaging of Delaware common law claims "based on material misstatements or omission in proxies."); *Lorentzen v. Levolor Corp.*, 754 F. Supp. 987, 993-94 (S.D.N.Y. 1990) (staying federal action that included Section 10(b) claim because "plaintiff's § 10(b) claim is premised on the exact same allegations of misconduct which underlie the claim of fraud" in state court proceeding).[9]

Here, Plaintiff attempts to repackage the inadequate disclosure allegations under Section 14(a) of the Exchange Act, but there is no daylight between the state and federal law claims. Notably, the standard for materiality of a fact omitted from a proxy statement is the same under both Section 14(a) and Maryland law.  *Compare TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (explaining that, under Section 14(a), "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available"), *with In re Nationwide Health Props., Inc. S'holder Litig.*, No. 24-C-11-001476, slip op. at 36 (Balt. City Cir. Ct. May 27, 2011) (quoting *TSC Industries* and explaining that in a Maryland proxy disclosure claim an omitted fact is only material if "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available").  Plaintiff essentially concedes that the same facts and law

---

[9]    *See also Avmed, Inc. v. Sheridan Healthcorp, Inc.*, No. 09-23851-Civ, 2010 WL 3008811, at *7 (S.D. Fla. July 28, 2010) (where "state law is substantially similar to and provides for the same relief as the federal law, federal courts have abstained in favor of a state proceeding"); *Arrow Concrete Co. v. Ohio Farmers Ins. Co.*, 981 F. Supp. 443 (S.D. W.Va. 1997) (staying federal case that included a claim under the Miller Act, over which federal courts have exclusive jurisdiction, in favor of previously filed state court case); *Gabelli v. Sikes Corp.*, No 90 Civ. 4904, 1990 WL 213119 (S.D.N.Y. Dec. 14, 1990) (staying federal action to pending state court resolution because the "only difference with respect to these actions is that the federal complaint is dressed up in the guise of a securities fraud claim, alleging that PMI's tender offer materials should have disclosed that the purchase price was unfair."); *Klein v. Walston & Co.*, 432 F.2d 936, 937 (2d Cir. 1970) (holding that stay of Security Exchange Act claim pending final determination of concurrent state action was appropriate).

are involved by claiming that the alleged material omissions serve as a basis for both his Section 14(a) claims (Compl. ¶¶ 76, 78-79) and his fiduciary duty claims (*id.* ¶¶ 89, 91).

This repackaging is simply an attempt by Plaintiff's counsel to forum shop after receiving unfavorable rulings in state court, and it should not be countenanced by this Court. *See Lorentzen*, 754 F. Supp. at 993 ("[W]e conclude that plaintiff's decision to raise his § 10(b) claim . . . only after the state court ruled adversely to his interests on two separate occasions[,] appears to be an attempt by plaintiff to change his original choice of forum in violation of the federal policy against plaintiff removal and forum-shopping.")  Accordingly, recasting a state-law disclosure claim as a federal securities claim should be seen for what it is and not affect a finding that the state and federal cases here are parallel.

**B.    The *Colorado River* Factors Heavily Favor A Stay**

The relevant pragmatic *Colorado River* factors weigh heavily in favor of a stay.

**1.    A Stay Avoids The Risk Of Piecemeal Litigation**

The avoidance of piecemeal litigation is "the most important factor" in the *Colorado River* doctrine and strongly favors a stay. *Moses H. Cone*, 460 U.S. at 16.  Piecemeal litigation "occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett*, 286 F.3d at 744.  If these federal proceedings continue alongside the State Merger Cases, the two tribunals could reach different results on identical issues, including whether Defendants' actions violated their fiduciary duties as defined by state law and whether injunctive relief is appropriate. *See Beck*, 999 F. Supp. at 657 (holding that concurrent shareholder suits in federal and state court "raise[ ] the certainty of piecemeal, duplicative, and wasteful litigation" including "severe *res judicata* problems" depending on which case ruled first).

Remarkably, plaintiffs in the state and federal cases identify this very risk in their respective complaints. Plaintiffs in the State Merger Cases said:

> The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(*State Merger Cases* Compl. ¶.)  Similarly, Plaintiff Walker likewise made the same allegations in this case:

> The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.
>
> Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(Compl. ¶ 26(f)-(g).)  Staying this action would avoid the risk of piecemeal and inconsistent rulings.

## 2.    The State Merger Cases Have Progressed Further

The order in which the courts obtained jurisdiction and the progress achieved in each action also favors a stay.  Under the "first-filed" rule, the court first to obtain jurisdiction generally "should have priority."  *See Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974).  As the Supreme Court put it:  "the vexatious or reactive nature of . . . the federal . . . litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*."  *Moses H. Cone*, 460 U.S. at 17 n.20.  In such circumstances, the subsequently filed case should be stayed pending resolution of the first-filed action.  *See Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*, 123 F. Supp. 2d

514, 519 (D.S.D. 2000) (staying later-filed federal action in favor of first action filed in Delaware Court of Chancery).  All of the State Merger Cases were filed before Plaintiff Walker filed his federal complaint.  As noted, Walker's counsel here filed three of those earlier complaints.  The State Merger Cases are also further along, with motion to dismiss briefing completed, and Judge Carrion's hearing on the motions scheduled for September 9, 2011.  In addition, Judge Carrion already has held two prior hearings and resolved five motions.  By contrast, in this case, initial responsive pleadings are not yet due.

### 3.    The Complaint Is Based Primarily on State Law Issues

A stay of this action is also supported by the fact that Plaintiff's claims are based primarily on Maryland state law.  As the Supreme Court has held, "[c]orporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation."  *Cort v. Ash*, 422 U.S. 66, 84 (1975).  Plaintiffs in each case allege that defendants breached their state law fiduciary duties.  "State courts are the preferred forum for resolution of state law issues."  *Yesteryears, Inc. v. Waldorf Restaurant, Inc.*, 730 F. Supp. 1341, 1346 (D. Md. 1989).  That is particularly true where, as here, "a critical issue in the federal action is the proper construction of a state constitution, or statute."  *Mottolese v. Kaufman*, 176 F.2d 301, 302 (2d Cir. 1949).  Although Plaintiff has added a federal securities claim, as explained above, the Section 14(a) and inadequate proxy claims are virtually indistinguishable, as is the relief sought on each, because the materiality standard for both claims is identical.  *Compare TSC Indus.*, 426 U.S. at 449 *with In re Nationwide Health Props.*, No. 24-C-11-001476; *see also Int'l Jensen*, 1996 WL 494273, at *5 ("the Delaware courts recognize the same standard of 'materiality' as the Supreme Court recognized for § 14(a) claims in *TSC Industries*").  And "there is no justification for two courts

27

considering the same claim under different dressings." *Int'l Jensen*, 1996 WL 494273, at *6.  In short, the gravamen of Plaintiff's complaint is a state law fiduciary duty action arising under Maryland law that is best resolved by the state court.

### 4.      The State Proceeding Is Adequate to Protect the Parties' Rights

Lastly, because these proceedings involve a Maryland corporation and the interpretation and application of Maryland corporate law, the State Merger Cases provide an adequate — and preferable — forum for protecting the parties' respective rights.  The primary remedies sought are an injunction against a shareholder vote and completion of the merger, a declaration that Defendants breached their fiduciary duties, and damages.  "Whether an injunction is granted or denied by this court or by [Maryland] is unimportant — the effect of preventing or allowing the proposed merger to proceed is the same no matter which court takes action." *Int'l Jensen*, 1996 WL 494273, at *5.  Plaintiff and the putative class in the federal action would reap the benefits of any such remedies granted in the State Merger Cases, regardless of whether they were named parties in the State Merger Cases.  Granting a stay in this action will in no way harm or prejudice the rights of the Plaintiff Walker or the putative federal class.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay this case pending disposition of *In re Constellation Energy Group, Inc. Shareholder Litigation*, Case No. 24-C-11-003015 (Md. Cir. Ct., filed April 28, 2011).


Date: September 7, 2011

                                    _/s/  Brant W. Bishop, P.C._____
                                    James D. Mathias (Bar No. 06311)
                                    David Clarke, Jr. (Bar No. 02177)
                                    DLA Piper LLP (US)
                                    6225 Smith Avenue

Baltimore, Maryland  21209-3600
(410) 580-4208  (Telephone No.)
(410) 580-3208  (Facsimile No.)
james.mathias@dlapiper.com
david.clarke@dlapiper.com

James P. Gillespie, P.C. (*pro hac vice* pending)
Brant W. Bishop, P.C. (Bar No. 24829)
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5190 (Telephone No.)
(202) 879-5200 (Facsimile No.)
james.gillespie@kirkland.com
brant.bishop@kirkland.com

*Attorneys for Defendants Constellation Energy Group, Inc., Mayo A. Shattuck, III, Yves C. de Balmann, Ann C. Berzin, James T. Brady, James R. Curtiss, Freeman A. Hrabowski, III, Nancy Lampton, Robert J. Lawless, John L. Skolds, and Michael D. Sullivan*