# Exhibit B

LON ENGEL, On Behalf
of Himself and All Others Similarly
Situated,

11 East Lexington Street
Baltimore, MD 21202

        Plaintiff,

    v.

CONSTELLATION ENERGY GROUP,
INCORPORATED

Serve on:

The Corporation Trust, Inc.
351 West Camden St.
Baltimore, MD 21201

MAYO A. SHATTUCK III, YVES C. DE
BALMANN, ANN C. BERZIN, JAMES T.
BRADY, JAMES R. CURTIS, FREEMAN
A. HRABOWSKI III, NANCY
LAMPTON, ROBERT J. LAWLESS,
JOHN L. SKOLDS, and MICHAEL D.
SULLIVAN

c/o Constellation Energy Group Inc.
The Corporation Trust, Inc.
351 West Camden St.
Baltimore, MD 21201

EXELON CORPORATION

Serve on:

John W. Rowe
Chairman and CEO
10 S. Dearborn Street, 48th Floor
Chicago, IL 60603

        Defendants.

§ § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § §

IN THE CIRCUIT COURT

FOR

BALTIMORE CITY

**Case No.:**

**JURY TRIAL DEMANDED**



## CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all other similarly situated public shareholders of Constellation Energy Group, Inc. ("Constellation Energy" or "Company"), brings the following Class Action Complaint against the members of the board of directors of Constellation ("Board") for breaching their fiduciary duties, and against Exelon Corporation ("Exelon") and Constellation for aiding and abetting the same. These allegations are based on the knowledge of the plaintiff as to himself, and on information and belief, including the investigation of counsel and publicly available information, as to all other matters.

## INTRODUCTION

1.      On April 28, 2011, Constellation and Exelon jointly announced that they signed a definitive agreement pursuant to which Exelon would acquire Constellation for about $7.7 billion in stock ("Proposed Transaction"). Under the terms of the Proposed Transaction, Constellation shareholders would receive 0.93 of a newly issued Exelon share for each Constellation share that they own.

2.      Based on Constellation's April 27, 2011 closing price, Constellation shareholders will only receive a 18.1 percent premium for their shares in the Proposed Transaction. As set forth below, instead of working to maximize shareholder value as required, the Board agreed to hand over Constellation to Exelon for an unfair price.

## JURISDICTION AND VENUE

3.      The damages suffered and sought to be recovered by plaintiff and the Class are in excess of the jurisdictional minimum of this Court. The exact amount of damages suffered by plaintiff and the Class cannot be precisely determined at this point.

4.      This Court has jurisdiction over defendants because each defendant is either a

corporation that conducts business in and maintains operations in this County, or has sufficient minimum contacts with Maryland so as to render the exercise of jurisdiction by the Maryland courts permissible under traditional notions of fair play and substantial justice.

5.      Venue is proper in this Court because Constellation resides, carries on a regular business, is employed, has its principal office, or habitually engages in a vocation in Baltimore, Maryland (which is also the venue where Constellation's resident agent is located).

## PARTIES

6.      Plaintiff Lon Engel is, and at all relevant times was, a continuous stockholder of defendant Constellation.

7.      Defendant Mayo A. Shattuck III is Chairman, President and CEO of Constellation. Defendant Shattuck has served as a director of Constellation since 1999.

8.      Defendant Yves C. de Balmann has served as a director of Constellation since 2003.

9.      Defendant Ann C. Berzin has served as a director of Constellation since 2008.

10.     Defendant James T. Brady has served as a director of Constellation since 1999.

11.     Defendant James R. Curtiss has served as a director of Constellation since 1994.

12.     Defendant Freeman A. Hrabowski III has served as a director of Constellation since 1994.

13.     Defendant Nancy Lampton has served as a director of Constellation since 1994.

14.     Defendant Robert J. Lawless has served a director of Constellation since 2002.

15.     Defendant John L. Skolds has served as a director of Constellation since 2007.

16.     Defendant Michael D. Sullivan has served as a director of Constellation since 1992.

3

17.     Collectively, defendants Shattuck, Balmann, Berzin, Brady, Curtiss, Hrabowski, Lampton, Lawless, Sullivan and Skolds are the "Individual Defendants."

18.     Defendant Constellation, a Maryland corporation with headquarters located at 100 Constellation Way, Baltimore, MD 21202, is a publicly traded energy company

19.     Defendant Exelon, a Pennsylvania corporation with headquarters located at 10 S. Dearborn Street, 48th Floor, Chicago, IL 60603, is a publicly traded company.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

20.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with plaintiff and the other shareholders of Constellation and owe plaintiff and the other members of the Class (defined herein) the duties of good faith, fair dealing, loyalty and full and candid disclosure.

21.     By virtue of their positions as directors and/or officers of Constellation, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Constellation to engage in the practices complained of herein.

22.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person. In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

a.    adversely affects the value provided to the corporation's shareholders;

b.    contractually prohibits them from complying with or carrying out their fiduciary duties;

c.    discourages or inhibits alternative offers to purchase control of the corporation or its assets;

d.    will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

e.    will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

23.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to plaintiff and the other shareholders of Constellation, including their duties of loyalty, good faith and independence, insofar as they, among other things, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by plaintiff or the other shareholders of Constellation's common stock.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action on their own behalf and as a class action pursuant to Rule 2-231 of the Maryland Rules, on behalf of all holders of Constellation common stock who are being and will be harmed by defendants' actions described below ("Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants.

25.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As

of January 31, 2011, there were 199,850,572 shares of Constellation's common stock issued and outstanding. The actual number of public shareholders of Constellation will be ascertained through discovery;

b.      There are questions of law and fact which are common to the Class, including, among other things, the following:

i.      whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii.     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Transaction; and

iii.    whether plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the

party opposing the Class; and

        f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

26.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### I.    Background

27.     Defendant Constellation is a leading energy manager and competitive supplier, generating and delivering power and natural gas to customers.

28.     Defendant Exelon is one of the nation's largest energy companies with $18 billion in annual revenues. Defendant Exelon's family of companies includes energy generation, power marketing, transmission, and energy delivery.

### II.    The Proposed Transaction

29.     Under the terms of the Proposed Transaction, shareholders of Constellation will receive 0.93 of share of Exelon for each share of Constellation that they exchange. The companies announced:

> CHICAGO AND BALTIMORE (April 28, 2011) – The boards of directors of Exelon Corporation (NYSE: EXC) and Constellation Energy (NYSE: CEG) announced today that they have signed a definitive agreement to combine the two companies in a stock-for-stock transaction. The agreement brings together Exelon's large, environmentally-advantaged generation fleet and Constellation's industry-leading customer-facing businesses, creating a platform for growth and delivering stakeholder benefits.
> The resulting company will retain the Exelon name and be headquartered in Chicago. Exelon's power marketing business (Power Team) and Constellation's retail and wholesale business will be consolidated under the Constellation brand

and be headquartered in Baltimore. Both companies' renewable energy businesses will also be headquartered in Baltimore, and the three utilities within the new Exelon – BGE, ComEd and PECO – will remain standalone organizations.

Exelon Chairman and CEO John W. Rowe said, "This merger creates the number one competitive energy provider with one of the industry's cleanest and lowest-cost power generation fleets and one of the largest commercial, industrial and residential customer bases in the United States. Both Exelon and Constellation have demonstrated their commitment to sustainability and competitive markets, helping drive innovation, efficiency, customer choice and better rates. Together, we will be an even stronger advocate for achieving these ideals."

The new company will bring clean power and competitive prices to millions of customers. It will be:

• The number one competitive energy products and services supplier by load (about 165 terawatt-hours) and customers (about 35,000 commercial and industrial and millions of households through retail and wholesale sales) across 38 states, the District of Columbia, and the Canadian provinces of Alberta and Ontario;

• The number two residential electricity and gas distribution company, serving 6.6 million customers in Maryland, Illinois and Pennsylvania;

• The number one competitive power generator (more than 34 gigawatts of power generation and 226 terawatt-hours of expected output), including the nation's largest nuclear fleet (nearly 19,000 megawatts); and

• One of the nation's cleanest power generation fleets (about 55 percent nuclear, 24 percent natural gas and 8 percent renewable/hydro) and a leadership position in commercial solar energy development, energy efficiency and demand response services.

A Sustainable Strategic Fit

Constellation Chairman, President and CEO Mayo A. Shattuck III said, "The combination of these two companies will drive innovation and value for customers by combining Exelon's abundant clean energy supply and Constellation's leading customer-facing sales and marketing platform. This enterprise will have the scale and financial strength to drive expansion in competitive energy markets as well as new investment in the next wave of clean generation and sustainable products and services. It represents a unique and exciting opportunity for the customers and communities we serve nationwide and in Maryland."

Exelon President and COO Christopher M. Crane said, "This transaction offers clear financial upside for both Exelon and Constellation shareholders. The combination will optimize the value of our respective generation and customer-facing businesses and enhance our platform for growth. The new company will be well-positioned to benefit from a changing industry environment while managing risk and positioning ourselves to benefit from power market recovery."

Terms of the Transaction

The market capitalization of the combined company will be $34 billion with an enterprise value of $52 billion. Under the merger agreement, Constellation's shareholders will receive 0.930 shares of Exelon common stock in exchange for

each share of Constellation common stock. Based on Exelon's closing share price on April 27, 2011, Constellation shareholders would receive a value of $38.59 per share, or $7.9 billion in total equity value.

The exchange ratio represents an 18.1 percent premium to the 30-day average closing stock prices of Exelon and Constellation as of April 27, 2011.

Following completion of the merger, Exelon shareholders will own approximately 78 percent of the combined company and Constellation shareholders approximately 22 percent on a fully diluted basis.

The combination is anticipated to be break-even to Exelon's adjusted earnings in 2012; in 2013, it is expected to be accretive to earnings by more than 5 percent

Based on Exelon's current annual cash dividend rate of $2.10 per common share, Constellation shareholders would receive an approximate 103 percent dividend increase, or $0.99 per Constellation share over the current Constellation annual dividend.

Leadership, Board Structure and Headquarters

Shattuck will become executive chairman of the combined company. Crane will become president and CEO. Under the agreement, Rowe will retire upon closing of the transaction.

Both Crane and Shattuck will serve on the 16-member board of directors of the combined company, 12 members of which will be designated from Exelon's board of directors and four from Constellation's.

Following the merger, the resulting company will retain the Exelon name and be headquartered in Chicago. In addition to the corporate headquarters, Illinois will continue to be home to ComEd and Exelon Business Services Company (both in Chicago), as well as the Midwest regional headquarters for Exelon Nuclear (in Warrenville).

Pennsylvania will continue to be home to headquarters for PECO (in Philadelphia) and Exelon Power (in Kennett Square). Exelon Nuclear's headquarters will also be located at Kennett Square.

Exelon's and Constellation's commercial retail and wholesale businesses will be consolidated under the Constellation brand and headquartered in Baltimore. BGE will retain its Baltimore headquarters.

BGE, ComEd and PECO will remain headquartered in Baltimore, Chicago and Philadelphia, respectively, focused on safety, customer service, reliability and consistent infrastructure investment within their jurisdictions. However, the merger is expected to benefit customers as all three utilities work together to share best practices to continually improve performance.

Benefits for BGE Customers, Investment in Maryland's Economy and Energy Infrastructure, and a Platform for National Growth Headquartered in Baltimore

The transaction will benefit the State of Maryland, the City of Baltimore and BGE gas and electric customers specifically. The public interest is strongly served and the State of Maryland will be advantaged by the companies' intention and commitment to proceed with the plan described below.

The growth engine of the combined corporation will be headquartered in Baltimore. Exelon's Power Team will be combined with Constellation's wholesale and retail business under the Constellation brand.

Both companies' renewable energy businesses will also be headquartered in Baltimore, and build on their growing success with utility-scale renewable energy generation, solar and other renewable generation on-site at customer facilities, and a vibrant business providing customers with renewable energy credits, Green-e certificates, and other green electricity products.

To house the expanded Baltimore commercial and renewable energy headquarters, the new company intends to build or substantially renovate a state-of-the-art Leadership in Energy and Environmental Design (LEED) office center in Baltimore. Additionally:

• $4 million will be provided to support the objectives of the EmPower Maryland Energy Efficiency Act;

• $10 million will be provided to help spur development of electric vehicle infrastructure in Maryland; and

• More than $50 million will be invested to develop 25 megawatts of renewable energy in Maryland.

BGE customers will receive the following direct benefits:

• A $100 credit will be given to each BGE residential customer within 90 days after closing;

• $5 million will be provided for the State of Maryland's Electric Universal Service Program (EUSP);

• BGE's electric and gas operations will continue to be managed from the BGE headquarters in Baltimore;

• BGE jobs will not be affected by the merger for at least two years after the transaction closes; and

• BGE customers will benefit from the sharing of best practices with Exelon's utilities PECO and ComEd in the areas of safety, reliability, efficiency and customer service

In addition, the companies have agreed that charitable giving of about $10 million annually by the Baltimore-based businesses would be maintained for at least 10 years following the merger.

The total value of direct investment in Maryland will be more than $250 million.

Approvals and Timing

The transaction must be approved by the stockholders of both Exelon and Constellation. Completion of the merger is also conditioned upon approval by the Federal Energy Regulatory Commission (FERC), Nuclear Regulatory Commission (NRC), Maryland Public Service Commission, the New York Public Service Commission, the Public Utility Commission of Texas, and other state and federal regulatory bodies. The companies are committed to mitigating any competitive issues including divesting three Constellation generating stations located in PJM, which is the only market where there is a material overlap of generation owned by both companies. These stations, Brandon Shores and H.A.Wagner in Anne Arundel County, Md., and C.P. Crane in Baltimore County, Md., include baseload coal-fired generation units plus associated gas/oil units located at the same sites, and total 2,648 MW of generation capacity. The transaction is also subject to the notification and reporting requirements under the Hart-Scott-Rodino Act and other customary closing conditions.

The companies anticipate closing in early 2012.
Advisors
Barclays Capital, J.P. Morgan Securities, Evercore Partners and Loop Capital
Markets are serving as financial advisors and Skadden, Arps, Slate, Meagher &
Flom LLP is serving as legal counsel to Exelon. Morgan Stanley & Co.
Incorporated, Goldman, Sachs & Co. and Credit Suisse Securities (USA) LLC are
serving as financial advisors and Kirkland & Ellis LLP is serving as legal counsel
to Constellation.

30.     As set forth above – using the closing value of Exelon on April 27, 2011 and the

closing value of Constellation on April, 27, 2011, the day before the Proposed Transaction was

announced – Constellation shareholders will only receive an 18% premium if the Proposed

Transaction closes.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duties
### (Against the Individual Defendants)

31.     Plaintiff repeats and realleges each allegation set forth herein.

32.     The Individual Defendants have violated fiduciary duties owed to public

shareholders of Constellation, including but not limited to their common law fiduciary duties

and/or their fiduciary duties of care, loyalty, good faith, and/or independence owed by each of

the Individual Defendants to plaintiff and each of the other public shareholders of Constellation.

33.     By the acts, transactions and courses of conduct alleged herein, the Individual

Defendants have failed to maximize value for Constellation's public shareholders.

34.     As demonstrated by the allegations above, the Individual Defendants breached

their fiduciary duties owed to the shareholders of Constellation because, among other reasons,

they failed to take steps to maximize the value of Constellation to its public shareholders in a

change of control transaction.

35.     As a result of the actions of defendants, plaintiff and the Class will suffer

11

irreparable injury in that they have not and will not receive the highest available value for their equity interest in Constellation. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

36. The Individual Defendants should take whatever action is necessary to cause Constellation to make the appropriate disclosures and halt the shareholder vote on the Proposed Transaction.

37. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury, which the Individual Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### For Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty (Against Constellation and Exelon)

38. Plaintiff repeats and realleges each allegation set forth herein.

39. Constellation and Exelon have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to the Company's public shareholders, and have participated in such breaches of fiduciary duties.

40. Constellation and Exelon knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Constellation and Exelon rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties. Constellation and Exelon should take whatever action is necessary to make the appropriate disclosures and halt the shareholder vote on the

Proposed Transaction.

41.     Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

**For Declaratory Relief Pursuant to Courts and Judicial Proceedings Article of the**
**Annotated Code of Maryland § 3-401, et seq.**
**(Against All Defendants)**

42.     Plaintiff repeats and realleges each allegation set forth herein.

43.     Defendants breached their fiduciary duties in connection with the Proposed Transaction, and/or aided and abetted such breaches, and are liable therefore.

44.     As a result of defendants' conduct as herein alleged, plaintiff and the other members of the Class have suffered and/or will, in the future, suffer damages and harm, including harm for which they have no adequate remedy at law.

45.     Pursuant to Courts and Judicial Proceedings Article of the Annotated Code of Maryland §3-412, plaintiff demands a declaration that: (a) shareholders should not be asked to vote on the Proposed Transaction, and that such vote should be enjoined, until such time as plaintiff and the Class are adequately informed, as set forth herein; (b) defendants and each of them have committed a gross abuse of trust and have breached their fiduciary duties owed to plaintiff and the Class and/or have aided and abetted such breaches; (c) the Proposed Transaction was entered into in breach of defendants' fiduciary duties and was therefore unlawful and unenforceable, and that the Proposed Transaction or other agreements that defendants entered into in connection with, or in furtherance of, the Proposed Transaction should be rescinded and invalidated; and (d) the Proposed Transaction, the Merger Agreement and/or the transactions contemplated thereby, should be rescinded and the parties restored to their original position.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands relief in his favor and in favor of the Class and against defendants as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying plaintiff as Class representatives;

B.      Declaring that shareholders should not be asked to vote on the Proposed Transaction, and that such vote should be enjoined, until such time as plaintiff and the Class are adequately informed;

C.      Declaring that defendants and each of them have committed a gross abuse of trust and have breached their fiduciary duties owed to plaintiff and the Class and/or have aided and abetted such breaches;

D.      Declaring that the Proposed Transaction was entered into in breach of defendants' fiduciary duties and was therefore unlawful and unenforceable, and that the Proposed Transaction or other agreements that defendants entered into in connection with, or in furtherance of, the Proposed Transaction should be rescinded and invalidated;

E.      Declaring that the Proposed Transaction, the Merger Agreement and/or the transactions contemplated thereby, should be rescinded and the parties restored to their original position;

F.      Imposing a constructive trust, in favor of plaintiff and the Class, upon any benefits, property or value improperly received by defendants and/or traceable thereto and/or in the possession of any of the defendants as a result of their wrongful conduct;

G.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company

14

adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

H.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting plaintiff and the Class rescissory damages;

I.      Directing the Individual Defendants to account to plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

J.      Awarding compensatory damages in favor of plaintiff against all defendants for all losses and damages suffered as a result of defendants' wrongdoing alleged herein, in an amount to be determined at trial, together with interest thereon;

K.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

L.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff and the Class demand a trial by jury as to all issues so triable.

Dated: April 28, 2011

BROWER PIVEN
A Professional Corporation

Charles J. Piven
Yelena Trepetin
1925 Old Valley Road
Stevenson, MD 21153
Tel.: (410) 332-0030
Fax: (410) 685-1300

*Counsel for Plaintiff*