**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| **RONALD WALKER**<br><br>     **Plaintiff**<br><br>**v.**<br><br>**CONSTELLATION ENERGY GROUP, INC.,**<br>**et al.**<br><br>     **Defendants** | **CASE NO. 1:11-CV-02165-WDQ** |

**CONSTELLATION DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY AND**
**OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

James D. Mathias (Bar No. 06311)
David Clarke, Jr. (Bar No. 02177)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4000
(410) 580-3000 (facsimile)
james.mathias@dlapiper.com
david.clarke@dlapiper.com

James P. Gillespie *
Brant W. Bishop (Bar No. 24829)
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
(202) 879-5200 (facsimile)
james.gillespie@kirkland.com
brant.bishop@kirkland.com

*Counsel for Constellation Energy Group, Inc.*
*and the Individual Defendants*

* motion for admission *pro hac vice* pending

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................... iii

**PROCEDURAL HISTORY** .................................................................................................... 2

**ARGUMENT** .......................................................................................................................... 5

I.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE OF PLAINTIFF'S OWN
     UNREASONABLE DELAY ................................................................................................ 5

II.  THE PSLRA MANDATES A STAY OF DISCOVERY WHILE A MOTION TO DISMISS IS
     PENDING .......................................................................................................................... 7

   A.   *The PSLRA Automatic Stay of Discovery Applies Even Where a Motion to
     Dismiss Has Not Yet Been Filed* ................................................................................... 7

   B.   *Plaintiff Concedes That the PSLRA Automatic Stay of Discovery Applies
     To Plaintiff's Securities Act and State Law Claims* ...................................................... 8

   C.   *Plaintiff Has Not Demonstrated That Particularized Discovery Is Necessary To
     Preserve Evidence or To Prevent Undue Prejudice* ...................................................... 9

III. EVEN IF THE PSLRA AUTOMATIC STAY OF DISCOVERY DID NOT APPLY, EXPEDITED
     DISCOVERY IS NOT WARRANTED HERE BECAUSE PLAINTIFF HAS FAILED TO SHOW
     GOOD CAUSE ................................................................................................................... 10

   A.   *Plaintiff Has Failed To Articulate a Colorable Claim* ................................................ 11

      1.   The Individual Defendants Exercised Reasonable Business Judgment in
          Negotiating the Price of the Merger ...................................................................... 12

      2.   The Individual Defendants Exercised Reasonable Business Judgment in
          Agreeing to Deal Protection Terms ....................................................................... 14

         a.   The "No Solicitation" Provision Is Appropriate ............................................. 15

         b.   The "Matching Right" Provision Is Appropriate ............................................ 16

         c.   The Termination Fee Is Appropriate................................................................ 17

      3.   Plaintiff's Disclosure Claims Fail ......................................................................... 19

         a.   Plaintiff's Claims Regarding the Financial Advisors' Opinions Fail .............. 20

         b.   Plaintiff's Claims Relating to Financial Projections Fail................................. 23

         c.   The Joint Proxy Statement Sufficiently Discloses the Negotiation Process ..... 24

     B.    *Plaintiff Has Not Demonstrated that Irreparable Injury Would Occur Absent Expedited Discovery* ........................................................................ 26

**CONCLUSION** ............................................................................................................ **28**

# TABLE OF AUTHORITIES

## Cases

*Abbey v. E.W. Scripps Co.*,
  Civ. A. No. 13397, 1995 WL 478957 (Del. Ch. Aug. 9, 1995) .................................. 21

*Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063 (C.D. Cal. 2009) .................. 11

*Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994) ................... 14

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ....................................................... 20

*Beaumont v. American Can. Co.*, 797 F.2d 79 (2d Cir. 1986) .............................. 26

*Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*,
  C.A. No. 4066-VCN, 2008 WL 4824053 (Del. Ch. Oct. 28, 2008) ..................... 14

*Danielson v. Int'l Broth. of Elec. Workers*, 509 F.2d 1371 (2d Cir. 1975) .................. 6

*Davis v. Duncan Energy Partners L.P.*,
  --- F. Supp. 2d ----, 2011 WL 3518263 (S.D. Tex. Aug. 10, 2011) ................... 11

*Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528 (E.D.N.C. 2005) .......... 11

*E.E.O.C. v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213 (D. Md. 1989) .......... 5

*Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001) ................. 10

*General Elec. Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992) ............................... 19

*Giammargo v. Snapple Beverage Corp.*,
  Civ. A. No. 13845, 1994 WL 672698 (Del. Ch. Nov. 15, 1994) ......................... 11

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
  Civ. A. No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ............ 22, 25

*Golden Cycle, LLC v. Allan*,
  No. Civ. A. 16301, 1998 WL 892631 (Del. Ch. Dec. 10, 1998) ......................... 17

*Goodwin v. Live Entm't*, Civ. A. No. 15765, 1999 WL 64265 (Del. Ch. Jan. 25, 1999) .. 18

*Hayes v. Crown Cent. Petroleum Corp.*, 78 Fed. Appx. 857 (4th Cir. 2003) ............ 19, 20

*Hudson v. Prime Retail, Inc.*,
  2004 WL 1982383 (Md. Cir. Ct. Apr. 1, 2004) .............................. 19-20, 23, 25

*In re 3Com S'holders Litig.*,
  No. Civ. A. 5067-CC, 2009 WL 5173804 (Del. Ch. Dec. 18, 2009) ........... *passim*

*In re Answers Corp. S'holders Litig.*,
No. Civ. A. 6170-VCN, 2011 WL 1366780 (Del. Ch. April 11, 2011) ................... 18

*In re Carnegie International Corporation Securities Litigation*,
107 F. Supp. 2d 676 (D. Md. 2000) ............................................................. 8

*In re CheckFree Corp. S'holders Litig.*,
2007 WL 3262188 (Del. Ch. Nov. 1, 2007) ................................... 22, 24

*In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487 (Del. Ch. 2010) ................. 15, 16, 23, 25

*In re Countrywide Financial Corp. Derivative Litig.*,
542 F. Supp. 2d 1160 (C.D. Cal. 2008) ....................................................... 9

*In re DPL, Inc. Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003) ................... 8

*In re Firstenergy Corp. Secs. Litig.*, 229 F.R.D. 541 (N.D. Ohio 2004) ................. 8

*In re IXC Commc'ns, Inc. S'holders Litig.*,
Nos. Civ. A. 17324 & 17334, 1999 WL 1009174 (Del. Ch. Oct. 27, 1999) ............... 15

*In re JCC Holding Co.*, 843 A.2d 713 (Del. Ch. 2003) ................................... 26

*In re J.P. Stevens & Co., Inc. S'holders Litig.*, 542 A.2d 770 (Del. Ch. 1988) ........... 15, 17

*In re Lear Corp. S'holder Litig.*, 926 A.2d 94 (Del. Ch. 2007) ......................... 16

*In re Lukens Inc. S'holders Litig.*, 757 A.2d 720 (Del. Ch. 1999) ................... 15, 16

*In re Nationwide Health Properties, Inc. Shareholder Litigation*,
No. 24-C-11-001476 (Balt. City Cir. Ct. May 27, 2011) ................................. *passim*

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171 (Del. Ch. 2007) ............. 26

*In re Pennaco Energy, Inc.*, 787 A.2d 691 (Del. Ch. 2001) ....................... 16, 18

*In re Siliconix S'holders Litig.*,
No. Civ. A. 18700, 2001 WL 716787 (Del. Ch. June 21, 2001) ......................... 24

*In re Staples S'holders Litig.*, 792 A.2d 934 (Del. Ch. 2001) ....................... 21

*In re Terra Indus., Inc. S'holder Litig.*,
No. 24-C-10-001302, 2010 WL 5412283 (Md. Cir. Ct. July 14, 2010) ............... 17, 18

*In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975 (Del. Ch. 2005) ................. 15, 16

*In re Trump Hotel Shareholder Derivative Litig.*,
Case. No. 96-CIV-7820, 1997 WL 442135 (S.D.N.Y. 1997) ......................... 8, 9

*In re Vitalink Commc'n Corp. S'holders Litig.*,
   Civ. A. No. 12085, 1991 WL 238816 (Del. Ch. Nov. 8, 1991) ............................ 16

*Jasinover v. Rouse Co.*,
   No. 13-C-04-59594, 2004 WL 2747382 (Md. Cir. Ct. Oct. 25, 2004) ................. 27

*Jasinover v. Rouse Co.*,
   No. 13-C-04-59594, 2004 WL 3135516 (Md. Cir. Ct. Nov. 4, 2004) ...... 15, 18, 23, 24

*Kaufman v. Cooper Companies, Inc.*, 719 F. Supp. 174 (S.D.N.Y. 1989) ............... 25

*Kennecott Copper Corp. v. Curtiss-Wright Corp.* 584 F.2d 1195 (2d Cir. 1978) .......... 26

*Kramer v. Liberty Prop. Trust*, 408 Md. 1 (2009) ............................................ 19

*L'Occitane, Inc. v. Trans Source Logistics, Inc.*,
   No. WMN-09-CV-2499, 2009 WL 3746690 (D. Md. Nov. 2, 2009) .................. 11

*Lonergan v. EPE Holdings, LLC*, 5 A.3d 1008 (Del. Ch. 2010) ......................... 11

*La. Mun. Police Emps.' Ret. Sys. v. Crawford*, 918 A.2d 1172 (Del. Ch. 2007) ........... 26

*McCabe v. Foley*, 233 F.R.D. 683 (M.D. Fla. 2006) ...................................... 27

*McMillan v. Intercargo Corp.*, 768 A.2d 492 (Del. Ch. 2000) ........................ 15, 18

*McMullin v. Beran*, 765 A.2d 910 (Del. 2000) .............................................. 14

*Mendell v. Greenberg*, 612 F. Supp. 1543 (S.D.N.Y. 1985) ............................ 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
   194 F.R.D. 618 (N.D. Ill. 2000) ........................................................... 10

*N. River Ins. Co. v. Mayor & City Council of Balt.*, 343 Md. 34 (1996) ................. 27

*Repairman's Serv. Corp. v. Nat'l Intergroup, Inc.*,
   No. 7811, 1985 WL 11540 (Del. Ch. Mar. 15, 1985) .............................. 25

*Resnik v. Swartz*, 303 F.3d 147 (2d Cir. 2002) .......................................... 21

*Revlon v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986) .......... 12-13

*Rosenblatt v. Getty Oil Co.*, 493 A.2d 929 (Del. 1985) ................................. 19

*SG Cowen Secs. Corp.*, 189 F.3d 909 (9th Cir. 1999) .................................... 9

*Shenker v. Laureate Education, Inc.*, 411 Md. 317 (2009) ........................... 12, 13

*Silverman v. Local 3, Int'l Broth. of Elec. Workers, AFL-CIO*,
     634 F. Supp. 671 (S.D.N.Y. 1986) .................................................................... 5, 6, 27

*Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170 (Del. 2000) ........................................ 20, 21

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ............................................ 19

*Vornado, Inc. v. Interstate Props.*, 470 F. Supp. 714 (S.D.N.Y. 1979) ..................... 25

*Wittman v. Crooke*, 120 Md. App. 369 (1998) ....................................................... 11-12

## Statutes and Legislative Materials

Md. Code Ann., Corps. & Ass'ns § 2-405.1(e) ........................................................ 11

15 U.S.C. § 78-u4(b)(3)(B) ...................................................................................... 7, 8

H.R. Conf. Rep. 104-369, 1995 U.S.C.C.A.N. 730, *reprinted at* 1995 WL 709276 .......... 7

S. Rep. 104-98, 1995 U.S.C.C.A.N. 679, *reprinted at* 1995 WL 372783 .................. 7, 10

In both his complaint and his motion for expedited discovery, Plaintiff has neglected to apprise the Court of a critical fact – related litigation on the same issues has been pending in Maryland state court since April 2011, and it was ***Plaintiff's counsel*** who initiated those state court proceedings.  In *In re Constellation Energy Group, Inc. Shareholder Litigation*, Case No. 24-C-11-003015 in the Circuit Court for Baltimore City, Plaintiff's counsel here moved to be appointed lead counsel there and lost.  Since then, the state court has denied expedited discovery, and a motion to dismiss has been fully briefed and is awaiting a hearing on September 9, 2011.

More than two months after their defeat in state court, Plaintiff's counsel filed this action on August 4, 2011.  The better part of a month after that, Plaintiff's counsel filed a motion for expedited discovery on August 26, 2011.  That motion should be denied, and the Constellation Defendants should be granted a protective order staying discovery.  Yesterday, the Constellation Defendants filed a motion to stay this case while the state court action is pending and, at the appropriate time, intend to move to dismiss Plaintiff's Complaint.  Until Defendants' motions have been ruled upon, discovery (expedited or otherwise) would be an unnecessary burden on the Constellation Defendants.[1]

As explained more fully below, despite Plaintiff's protestations of an immediate need for discovery, Plaintiff unreasonably delayed in filing his Complaint, then waited another three and a half weeks to file his Motion for Expedited Discovery.  These self-created time pressures should not force this Court or the Constellation Defendants to jump at Plaintiff's whim.  In addition, this action is subject to an automatic stay of discovery pursuant to the Private Securities Litigation

---

[1] In addition, a second complaint on the same issues recently has been filed in this Court.  That action, styled *Smith v. Constellation Energy Group, Inc. et al.*, Case No. 1:11-cv-02437, was brought by a firm, Robbins Umeda, that is aligned with the firm that is lead counsel in the state court action.  The plaintiff in that case also recently filed a motion to consolidate both actions, and for the appointment of lead counsel.  If this action is not stayed pending resolution of the state court action, there likely will be a lead plaintiff dispute in this Court, which provides another reason why expedited discovery would be premature.

Reform Act, 15 U.S.C. § 78-u4 (the "PSLRA") until the Court has an opportunity to test the sufficiency of the Complaint. In any event, even if the PSLRA automatic stay does not apply, Plaintiff has failed to demonstrate good cause for expedited discovery.

## PROCEDURAL HISTORY

On April 28, 2011, mere hours after the announcement of the stock-for-stock merger transaction between Exelon Corporation ("Exelon") and Constellation (the "Merger"), Plaintiff's counsel filed two actions in the Circuit Court for Baltimore City – *Engel v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003015 (filed by Mr. Piven), and *Heinmuller v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003016 (filed by Messrs. Isbister and Katz). The next day, Plaintiff's counsel (Mr. Enright) filed a third action in the same court, *The Estate of Miriam Loveman v. Constellation Energy Group, Inc.*, Case No. 24-C-11-003058. All three state court complaints alleged claims virtually identical to those alleged in the Complaint here – breaches of fiduciary duty on the part of Constellation's directors in negotiating the Merger and aiding and abetting claims against Constellation and Exelon. A copy of the *Engel* complaint is attached for comparison purposes as Exhibit A. The complaints also mentioned disclosure claims in anticipation of the filing of a preliminary proxy statement. *See* Ex. A at ¶ 36.

These three state court complaints, together with nine others, were consolidated under the caption *In re Constellation Energy Group, Inc. Shareholder Litigation*, Case No. 24-C-11-003015, and specially assigned to Judge Audrey J. S. Carrion on the Business and Technology Court of the Circuit Court for Baltimore City.

On April 29, 2011, Plaintiffs' counsel moved for the appointment of Messrs. Piven, Isbister, and Katz (the "*Engel/Heinmuller* group") as Co-Lead Counsel for Plaintiffs, a motion with which Mr. Enright consented. Two other sets of plaintiffs, represented respectively by

2

Robbins Umeda LLP and Rigrodsky & Long, P.A., also moved to be appointed Lead Counsel.[2] The various plaintiffs' groups briefed the matter extensively.  The *Engel/Heinmuller* group even moved for leave to file a sur-reply.

On June 1, 2011, the state court denied the *Engel/Heinmuller* group's motion and appointed the group led by Rigrodsky & Long as Lead Counsel.  The court's Memorandum Opinion appointing lead counsel is attached as Exhibit B.  The court "f[ound] particularly persuasive the quality and completeness of the Complaints filed" by the Rigrodsky & Long group, commenting that these complaints "most fairly and adequately represent the possible causes of action available to the Plaintiffs herein."  In so ruling, the court found the lead plaintiff requirements of the PSLRA particularly instructive.

Plaintiff's counsel, on behalf of the *Engel/Heinmuller* group, filed a motion asking Judge Carrion to reconsider her decision on appointment of lead counsel.  That motion also was fully briefed.  The court ultimately denied the motion for reconsideration on June 22, 2011.

With its lead counsel fight apparently resolved, the consolidated state court action moved forward pursuant to a Scheduling Order established by Judge Carrion.  Plaintiff's counsel has remained in the consolidated state court action though not as lead counsel.  Constellation and Exelon filed a preliminary proxy statement (the "Joint Proxy Statement") with the SEC on June 27, 2011.  A copy of the Joint Proxy Statement is attached as Exhibit C.  On July 14, 2011, plaintiffs in the state court action filed a consolidated amended complaint containing disclosure claims largely identical to those that now have been included in Plaintiff's Complaint in this Court, and a motion to expedite discovery similar to the motion filed recently by Plaintiff's counsel here.  The discovery motion was fully briefed, and a hearing was held on August 8,

---

[2] Robbins Umeda LLP ultimately withdrew its motion and expressed its support for Rigrodsky & Long's motion.

2011.   At the hearing, the state-court plaintiffs put forth the same arguments as those in Plaintiff's discovery motion here – that good cause existed to expedite discovery because plaintiffs had alleged colorable claims against the defendants and irreparable harm would occur if expedited discovery did not take place.   The circuit court denied plaintiffs' discovery motion on August 9, 2011.   A copy of the state court's opinion denying expedited discovery is attached as Exhibit D.

In denying plaintiffs' motion for expedited discovery, the court held that "Plaintiffs have not sufficiently articulated a colorable claim showing that the extra details not contained in the proxy statement are necessary and material for the shareholders to make a fair and informed decision regarding the proposed merger transaction," and that "Plaintiffs have not sufficiently shown that they will suffer irreparable harm if discovery is conducted in the proper course."   Ex. D at 6-7.

Defendants in the state court action have filed motions to dismiss the consolidated class action complaint.   Those motions have been fully briefed, and a hearing is scheduled for September 9, 2011.   A copy of the Constellation Defendants' Motion to Dismiss is attached as Exhibit E.[3]

Rather than accept their defeat at the lead counsel phase of the state court litigation, Plaintiff's counsel belatedly chose instead to file the current action in this Court in an effort to negate the effect of the state court's decision to appoint different lead counsel.   They have restated the currently pending state court disclosure claim as a Section 14(a) claim – although as an individual, rather than class, claim – and otherwise duplicated the state law allegations raised and currently pending in the state court proceeding.   Although Plaintiff's counsel's motion to be

---

[3] As the Certificate of Service for the Constellation Defendants' Motion to Dismiss indicates, Plaintiff's counsel, Mr. Piven, has remained apprised of all filings in the state court action.

appointed lead counsel in the state court action was denied on June 1, 2011, and their motion for reconsideration was denied on June 22, 2011, Plaintiff's counsel waited until August 4, 2011 to file this action, and until August 26, 2011 to file their Motion for Expedited Discovery.

## ARGUMENT

Plaintiff's Motion for Expedited Discovery should be denied, and the Court should enter a Protective Order staying all discovery in this action.  Any assertion that Plaintiff needs immediate discovery is belied by the fact that he waited months even to file his Complaint, and then three and a half more weeks to file his Motion for Expedited Discovery.  Moreover, the PSLRA imposes an automatic stay of discovery in this action.  In any event, Plaintiff has not demonstrated good cause for expedited discovery.  Finally, this Court should not countenance Plaintiff's counsel's brazen attempt to do an end-run around Judge Carrion's decisions appointing lead counsel and denying expedited discovery in a state court action addressing these identical facts and applying the same legal standards.

## I.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE OF PLAINTIFF'S OWN UNREASONABLE DELAY

Plaintiff claims that expedited discovery is necessary because "Plaintiff is challenging a corporate transaction for which the shareholder vote is likely to occur in October 2011." Memorandum of Law in Support of Plaintiff's Motion for Expedited Discovery ("Pl's. Mem.") at 1.  This reasoning is unpersuasive because Plaintiff unreasonably delayed filing suit and filing his Motion for Expedited Discovery.  Accordingly, Plaintiff's motion should be denied under the doctrine of laches.  *See E.E.O.C. v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1220 (D. Md. 1989) ("Laches is an equitable doctrine which alleviates the unfairness to a defendant when a plaintiff unreasonably delays in filing suit."); *see also Silverman v. Local 3, Int'l Broth. of Elec. Workers, AFL-CIO*, 634 F. Supp. 671, 673 (S.D.N.Y. 1986) ("It is a fundamental

equitable principle that delay in seeking equitable relief presents grounds to deny such an application.").

In *Silverman*, for example, the court denied a preliminary injunction where plaintiff waited three months to seek equitable relief after learning of the conduct it sought to have enjoined.  634 F. Supp. at 673.  The court stated that it felt "justified" in taking the plaintiff's delay "as a recognition that there is no real danger of irreparable harm."  *Id.* (quoting *Danielson v. Int'l Broth. of Elec. Workers*, 509 F.2d 1371, 1375 (2d Cir. 1975)).  The same analysis applies here.

Plaintiff's counsel became aware of the Merger on April 28, 2011, the day they filed suit in state court.  Their motion for lead counsel was denied on June 1, 2011, and their motion for reconsideration on June 22, 2011.  Plaintiff's counsel had access to the Joint Proxy Statement when it was filed with the SEC on June 27, 2011.  But Plaintiff's counsel did not file suit in this Court in June, nor even in July.  Despite possessing all information necessary to file a complaint by (at the latest) June 27, 2011, Plaintiff's counsel did not file this action until August 4, 2011, over one month later.  And, despite now claiming to require expedited discovery because of a looming October 2001 shareholder vote, Plaintiff's counsel did not file their motion for expedited discovery until August 26, 2011, more than three weeks after filing their Complaint, nearly two months after the issuance of the Joint Proxy Statement, and nearly three months after Plaintiff's counsel lost its bid to be appointed lead counsel in the state court action.  Plaintiff's counsel has delayed unreasonably and without cause, and any time pressures now felt by Plaintiff are purely the result of Plaintiff's counsel's unreasonable delays.  The Constellation Defendants should not be saddled with the burden of providing expedited discovery on Plaintiff's (now) urgent schedule simply because Plaintiff's counsel could not be bothered to file

the Complaint or the Motion for Expedited Discovery at the appropriate time.  This is particularly so where, as here, the very same facts and legal issues are being addressed appropriately in state court, and a dispositive motion is set to be argued on September 9, 2011.

## II.    THE PSLRA MANDATES A STAY OF DISCOVERY WHILE A MOTION TO DISMISS IS PENDING

In 1995, Congress enacted the PSLRA to minimize "the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle," *see* H.R. Conf. Rep. 104-369, 1995 U.S.C.C.A.N. 730, *reprinted at* 1995 WL 709276, at *31, and to prevent plaintiffs from "fil[ing] frivolous lawsuits in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint," *see* S. Rep. 104-98, 1995 U.S.C.C.A.N. 679, *reprinted at* 1995 WL 372783.  The PSLRA requires:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78-u4(b)(3)(B).  Thus, where the PSLRA applies, no discovery, expedited or otherwise, may occur prior to the resolution of the motion to dismiss.  Plaintiff concedes that the PSLRA automatic stay of discovery applies here.  *See* Pl.'s Mem. at 7 (acknowledging that discovery will be stayed in this action upon the filing of a motion to dismiss).  Plaintiff has not satisfied his burden of demonstrating that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice."  15 U.S.C. § 78-u4(b)(3)(B).

### A.    The PSLRA Automatic Stay of Discovery Applies Even Where a Motion to Dismiss Has Not Yet Been Filed

Plaintiff first argues that because no motion to dismiss currently is pending, the PSLRA automatic stay of discovery does not apply.  Pl.'s Mem. at 7.  Plaintiff ignores, however, the well settled principle that discovery is inappropriate prior to the filing of a motion to dismiss where a

defendant intends to file such a motion.  As this Court has held, "[u]ntil the opportunity to test the sufficiency of the complaint has passed, the congressional intent is clear – no discovery should commence."  *In re Carnegie International Corporation Securities Litigation*, 107 F. Supp. 2d 676, 681 (D. Md. 2000) (refusing to lift automatic stay of discovery even where the defendant expressed only a "probable" intent to move to dismiss).  Permitting discovery to proceed after a complaint has been filed, but before motions to dismiss are due, "would render the stay provisions nugatory in the time between the filing of a complaint and filing of a motion to dismiss permit[ting] the plaintiffs to engage in discovery, without restriction, at any time before the filing of a motion to dismiss, subject only to the rigors and restrictions of Rule 26 of the Federal Rules of Civil Procedure.  Clearly, such a result would be completely inconsistent with Congressional intent in enacting the PSLRA."  *Id*. (alteration in original).  *See also, e.g., In re Trump Hotel Shareholder Derivative Litig.*, Case. No. 96-CIV-7820, 1997 WL 442135, at *2 (S.D.N.Y. 1997) (PSLRA automatic stay applies where motion to dismiss has not yet been filed); *In re Firstenergy Corp. Secs. Litig.*, 229 F.R.D. 541 (N.D. Ohio 2004) (same); *In re DPL, Inc. Sec. Litig.*, 247 F. Supp. 2d 946, 947 n.4 (S.D. Ohio 2003) (same).  Should this action remain pending in this Court, the Constellation Defendants intend to move to dismiss the Complaint for failure to state a cause of action.  As a result, the PSLRA's automatic stay of discovery applies.

**B.** **Plaintiff Concedes That the PSLRA Automatic Stay of Discovery Applies To Plaintiff's Securities Act and State Law Claims**

Plaintiff concedes that the PSLRA automatic stay of discovery applies to all claims in his Complaint.  Pl.'s Mem. at 7.  The PSLRA automatic stay of discovery, on its face, applies to Plaintiff's Section 14(a) claim.  *See* 15 U.S.C. § 78-u4(b)(3)(B).  *See also, e.g., In re Trump Hotel Shareholder Derivative Litig.*, 1997 WL 442135, at *1-2 (PSLRA automatic stay of

discovery applies to Section 14(a) claim brought by individuals); *In re Countrywide Financial Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179-1189 (C.D. Cal. 2008) (PSLRA stay of discovery is not limited to class actions and applies to derivative claims asserted under the 1934 Securities Exchange Act).   In addition, a discovery stay as to Plaintiff's state law claims is appropriate.  *See, e.g., SG Cowen Secs. Corp.*, 189 F.3d 909, 913 n.1 (9th Cir. 1999) (rejecting plaintiffs' argument that the district court should have permitted discovery because plaintiffs asserted state claims; "Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims.") (alteration in original); *In re Trump Hotel Shareholder Derivative Litig.*, 1997 WL 442135, at *1-2 (PSLRA discovery stay applies to pendent state law claims); *In re Countrywide Financial Corp. Derivative Litig.*, 542 F. Supp. 2d at 1180 (PSLRA discovery stay applies to state law claims over which the Court has asserted 18 U.S.C. § 1367 supplemental jurisdiction).

### C. Plaintiff Has Not Demonstrated That Particularized Discovery Is Necessary To Preserve Evidence or To Prevent Undue Prejudice

Pursuant to the PSLRA, the automatic stay provision may be lifted only where the party is seeking particularized discovery to preserve evidence or to prevent undue prejudice.  Plaintiff has failed to demonstrate either of these exceptional circumstances.  As an initial matter, despite Plaintiff's contention that his discovery requests are "narrowly tailored," Pl.'s Mem. at 13, a simple review of those requests reveals that they are not at all particularized.  Not only do the document requests seek thirty (30) categories of documents (plus additional subparts), but the breadth of the discovery is far-reaching, seeking virtually every piece of paper related to Exelon's acquisition of Constellation, and any other merger transaction contemplated by Constellation.

In addition, Plaintiff cannot claim any undue prejudice as a result of a stay of discovery.

> The sole example proffered by Congress as to what justifies lifting the stay is "the terminal illness of an important witness," which might "necessitate the deposition of the witness prior to ruling on the motion to dismiss."

*Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001) (*quoting* S. Rep. No. 104-98, at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679).

Plaintiff does not, and cannot, allege that he will suffer undue prejudice if discovery is stayed. First and foremost, ***these very issues currently are being litigated in Maryland state court.*** Plaintiffs in the state court action moved for expedited discovery, and such expedited discovery was denied. Motions to dismiss have been fully briefed and are awaiting a hearing on September 9, 2011. Plaintiff remains a member of the purported class of plaintiffs in the state court action, and thus has had his day in court. Because expedited discovery was sought and denied in the state court action, effectively holding that such denial of discovery would not prejudice the rights of plaintiffs, Plaintiff should not be permitted now to go around that ruling and again suggest that he would suffer undue prejudice if discovery is stayed.

Plaintiff has not even attempted to argue that the motion to expedite is seeking to preserve evidence.

## III.  EVEN IF THE PSLRA AUTOMATIC STAY OF DISCOVERY DID NOT APPLY, EXPEDITED DISCOVERY IS NOT WARRANTED HERE BECAUSE PLAINTIFF HAS FAILED TO SHOW GOOD CAUSE

Even if the PSLRA did not mandate a stay, expedited discovery nonetheless is inappropriate here because Plaintiff has not demonstrated either reasonableness or good cause. "Expedited discovery is not the norm." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). This Court has held that a request for expedited discovery should be evaluated under "a standard based upon reasonableness or good

cause, taking into account the totality of the circumstances." *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, No. WMN-09-CV-2499, 2009 WL 3746690, at *2 (D. Md. Nov. 2, 2009); *see also Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) (to obtain expedited discovery, a plaintiff must show good cause under the "totality of the circumstances").  Further, despite Plaintiff's suggestion to the contrary, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).

To establish "good cause" for expedited discovery, Plaintiff must show a colorable claim and a threat of irreparable harm if expedition is not granted.  *See Davis v. Duncan Energy Partners L.P.*, --- F. Supp. 2d ----, 2011 WL 3518263, at *6 (S.D. Tex. Aug. 10, 2011); *see also Lonergan v. EPE Holdings, LLC*, 5 A.3d 1008, 1016 (Del. Ch. 2010) (a court should grant a motion for expedited discovery only if plaintiff has (1) articulated a sufficiently colorable claim, and (2) shown a sufficient possibility of a threatened irreparable injury); *Giammargo v. Snapple Beverage Corp.*, Civ. A. No. 13845, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994) (finding that plaintiff's complaint failed to raise a colorable claim and denying motion to expedite).

A.      **Plaintiff Has Failed To Articulate a Colorable Claim**

Plaintiff's breach of fiduciary duty allegations do not state colorable claims. When faced with challenges to actions of the board of directors, including a decision to approve and recommend a stock-for-stock merger, Maryland applies the business judgment rule, which is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company.  Md. Code Ann., Corps. & Ass'ns § 2-405.1(e); *Wittman v. Crooke*, 120 Md. App. 369, 376 (1998).  Unless the party challenging a proposed transaction pleads particular facts supporting a conclusion that the directors are guilty of "fraud, self-dealing or unconscionable

conduct," the business judgment rule insulates the decisions of directors from judicial review. *See Wittman*, 120 Md. App. at 376.

Against this backdrop, and in light of the considerable body of law evaluating the questions at issue here, Plaintiff wholly fails to carry his burden of showing the Complaint articulates claims sufficiently colorable to justify expedited treatment. Plaintiff claims that (i) the price negotiated by Constellation is inadequate, Pl.'s Mem. at 3; (ii) various "deal protection" measures are improper, *id.* at 3-4; (iii) the Individual Defendants – directors of Constellation – have material conflicts of interest, *id.* at 4; and (iv) that Constellation's Joint Proxy Statement has various material omissions, *id.* at 4-7. None of these allegations (either individually or collectively) support Plaintiff's breach of fiduciary duty claims.

       1.      *The Individual Defendants Exercised Reasonable Business Judgment in Negotiating the Price of the Merger*

To support his allegations of inadequate price, Plaintiff alleges that the Individual Defendants failed to "maximize shareholder value" when negotiating the Merger. *See* Compl. ¶¶ 83-85. This argument is based on an erroneous interpretation of directors' duties in the context of a stock-for-stock merger, and recycles an argument that Plaintiff's counsel recently made and lost in Maryland state court. Accordingly, because directors cannot breach duties they do not possess, Plaintiff fails to state a colorable claim that the Individual Defendants failed to maximize shareholder value.

Plaintiff's argument rests on the case of *Shenker v. Laureate Education, Inc.*, 411 Md. 317 (2009), in which the Maryland Court of Appeals held that, in the "**context of a cash-out merger**," "the common law imposes on . . . directors duties to maximize shareholder value and make full disclosure of all material facts concerning the merger to shareholders," 411 Md. at 338-39 (emphasis added), similar to Delaware's so-called *Revlon* duties. *See Revlon v.*

*MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986).  Plaintiff surely will argue (as his counsel argued in his motion to be appointed lead plaintiff in the state court action) that *Shenker* duties also should apply to **stock-for-stock** transactions like the proposed Merger between Constellation and Exelon, or that the definition of "change of control" (which arguably would trigger *Shenker* duties) should be expanded to include a transaction like the one here.

Plaintiff's counsel made these exact same arguments recently in *In re Nationwide Health Properties, Inc. Shareholder Litigation*, No. 24-C-11-001476 (Balt. City Cir. Ct. May 27, 2011) ("*NHP*"), a case with similar facts to the case at bar.[4]  Judge Stuart R. Berger, writing for the Circuit Court for Baltimore City, flatly rejected this argument, finding it "facially indefensible in light of the clear language of the Court's opinion in *Shenker*."  *NHP* at 15.  The Court noted that Judge Harrell, writing for the Court of Appeals in *Shenker*, "repeatedly placed *Shenker*'s holding in the express context of a cash-out merger no less than *ten times*."  *Id.* (emphasis in original).  The court relied in particular on a footnote from *Shenker* in which the Court of Appeals distinguished between a cash-out merger (like the transaction in *Shenker*) and a stock-for-stock merger (like the transactions in *NHP* and here).  *Id.* (quoting *Shenker*, 411 Md. at 327 n.3).  The court ultimately held that Maryland law imposes no duty on directors to maximize shareholder value when negotiating a stock-for-stock transaction, explaining that plaintiffs' argument to the contrary "would require courts to impose the duty of maximization of value in every merger, which is contrary to venerable case law."  *Id.* at 19.

In addition to relying on the plain language of *Shenker*, the court noted that its decision was consistent with that of Delaware courts, which also have "declined to treat cash-out mergers and stock-for-stock mergers synonymously to trigger heightened *Revlon* duties absent a change-

---

[4] A copy of the *NHP* opinion, dismissing plaintiffs' complaint with prejudice, is attached as Exhibit F.

of-control." *Id.* at 17 (citing *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1290 (Del. 1994); *Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*, C.A. No. 4066-VCN, 2008 WL 4824053, at *5 (Del. Ch. Oct. 28, 2008); *McMullin v. Beran*, 765 A.2d 910, 918 (Del. 2000)).

The court likewise rejected plaintiffs' argument that the NHP/Ventas transaction represented a "change of control" that would trigger a duty to maximize shareholder value. Instead, the court held, "where 'control of both [companies] remains in a large, fluid, changeable and changing market,' then directors are not obligated to obtain the highest available consideration for shareholders." *NHP* at 20-21 (quoting *Arnold*, 650 A.2d at 1289-90). In *NHP*, as in this case, the entity would be owned both before and after the transaction by a fluid aggregation of unaffiliated shareholders, and therefore no change of control would occur.

Because the Individual Defendants possess no duty under Maryland law to maximize shareholder value when negotiating a stock-for-stock transaction like the Merger, and no well-pled allegations exist that rebut the presumption of the business judgment rule, Plaintiff has failed to articulate a colorable claim that the Individual Defendants breached any duty in negotiating the merger price.

2.     *The Individual Defendants Exercised Reasonable Business Judgment in Agreeing to Deal Protection Terms*

Plaintiff challenges the Individual Defendants' business judgment in approving what Plaintiff characterizes as improper "deal protection" measures to discourage other bidders. Specifically, Plaintiff claims that the "no solicitation" provision, the opportunity for Exelon to match a competing bid, and the termination fee "lock up the Proposed Transaction" and "preclude other bidders from making a successful competing offer for the Company."  Pl.'s Mem. at 3.  But Maryland and Delaware courts have refused to second guess directors' business judgment and "repeatedly held that provisions such as these are standard merger terms, are not

*per se* unreasonable, and do not alone constitute breaches of fiduciary duty." *In re 3Com S'holders Litig.*, No. Civ. A. 5067-CC, 2009 WL 5173804, at * 7 (Del. Ch. Dec. 18, 2009); *see also NHP* at 34.

a.      The "No Solicitation" Provision Is Appropriate

No-solicitation provisions are common in merger agreements and do not imply a breach of fiduciary duty. *NHP* at 34-35 (finding no-shop provisions are "standard measures"); *see also McMillan v. Intercargo Corp.*, 768 A.2d 492, 505 (Del. Ch. 2000) (upholding no-shop provision as "rather ordinary"); *In re IXC Commc'ns, Inc. S'holders Litig.,* Nos. Civ. A. 17324 & 17334, 1999 WL 1009174, at *2, *6 (Del. Ch. Oct. 27, 1999) (same).

No-solicitation provisions are particularly uncontroversial where, as here, the agreement contains a "fiduciary out" that permits the Board to consider and ultimately approve potentially superior proposals. *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 502 (Del. Ch. 2010) (approving no-shop provision coupled with fiduciary out, which gave the board the ability to engage with any bidders who proposed superior offers). Fiduciary outs are hardly novel in merger agreements and generally satisfy both Maryland and Delaware courts reviewing supposedly preclusive no-solicitation provisions. *E.g., Jasinover v. Rouse Co.*, No. 13-C-04-59594, 2004 WL 3135516, at *10 (Md. Cir. Ct. Nov. 4, 2004); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 725 (Del. Ch. 1999) (noting no-solicitation clause was connected with "customary" fiduciary out); *In re J.P. Stevens & Co., Inc. S'holders Litig.*, 542 A.2d 770, 776 (Del. Ch. 1988) (same). Courts routinely approve no-solicitation clauses coupled with fiduciary outs like the one seen here. *See, e.g., NHP* at 34 (finding no-solicitation clause coupled with fiduciary outs are "standard measures"); *McMillan*, 768 A.2d at 506 ("the fact that the merger agreement contained a rather standard no-shop provision . . . [that] permitted the Intercargo board to consider an unsolicited proposal that the board determined was likely to be

15

consummated and more favorable to Intercargo's stockholders . . . is hardly indicative of a . . . breach"); *In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 997, 1022 (Del. Ch. 2005) (finding Board did not breach its fiduciary duties through inclusion of "no solicitation" clause because agreement allowed for the possibility of post-agreement alternate transactions); *In re Lukens*, 757 A.2d at 725 (dismissing complaint where merger agreement contained "no solicitation" clause with the "customary 'fiduciary out,' allowing the board to adequately inform itself and take action on any unsolicited 'superior proposal' from a third party"); *In re Vitalink Commc'n Corp. S'holders Litig.*, Civ. A. No. 12085, 1991 WL 238816, at *15 (Del. Ch. Nov. 8, 1991) ("[T]he Lockup option and No-Shop acted as no real impediment to third party offers.").

Significantly, Constellation's recent history impeaches Plaintiff's claim that the no-solicitation provision "lock[s] up the Proposed Transaction."  In a 2008 merger agreement between Constellation and MidAmerican Energy Holding Company involving a similar no-solicitation provision, Électricité de France, SA ("EDF") was able to launch a successful unsolicited alternative proposal.  Constellation exercised its rights under the merger agreement with MidAmerican to evaluate EDF's proposal to purchase a minority interest in Constellation nuclear assets and determine whether it presented a superior offer.  Constellation ultimately exercised a virtually identical fiduciary out to terminate the merger agreement with MidAmerican in December 2008 so that it could complete the alternative transaction with EDF. Ex. C at 48.

### b.     The "Matching Right" Provision Is Appropriate

Similarly, the "matching right" provision in the Merger Agreement is "hardly novel" and neither implies nor establishes a fiduciary breach.  *See In re Lear Corp. S'holder Litig.*, 926 A.2d 94, 120 (Del. Ch. 2007); *NHP* at 34 ("matching right" provisions are "standard measures"). Section 6.4(e) of the Merger Agreement provides that if the Board determines it should

recommend an alternate proposal, Exelon shall be given information concerning the alternate proposal and the competing bidder, and is allowed five days to submit a matching bid.  *See* Ex. C at A-52-53.  Courts recognize that "it is reasonable for a seller to provide a buyer some level of assurance that he will be given adequate opportunity to buy the seller, even if a higher bid later emerges." *Cogent*, 7 A.3d at 502.  Consistent with this understanding, "a board of directors may act decisively to preserve the one definite offer it ha[s] on the table." *NHP* at 34 (internal quotations omitted).  As such, a "matching right" provision does not breach a board's fiduciary duty, even when coupled with a "no solicitation" provision and a termination fee.  *Id.* (concluding that matching and information rights provisions are "considered standard measures"); *In re Toys "R" Us*, 877 A.2d at 1017 (matching rights are "common contractual feature"); *In re Pennaco Energy, Inc.*, 787 A.2d 691, 707 (Del. Ch. 2001) (same).

### c.  The Termination Fee Is Appropriate

Plaintiff's challenge to a termination fee that would be paid by Constellation in the event that the Board recommends an alternate transaction and terminates the Merger Agreement, *see* Ex. C at A-5, 66 (Merger Agreement at §§ 1.1, 8.2), likewise cannot withstand scrutiny. Maryland and Delaware courts recognize that "[t]ermination fees are regularly used deal protection devices and are not presumptively inappropriate."  *In re Terra Indus., Inc. S'holder Litig.*, No. 24-C-10-001302, 2010 WL 5412283, at 20 (Md. Cir. Ct. July 14, 2010); *see also Golden Cycle, LLC v. Allan,* No. Civ. A. 16301, 1998 WL 892631, at *17 (Del. Ch. Dec. 10, 1998) (explaining that "reasonable and proportionate termination fee/expense reimbursement . . . in merger agreements" are appropriate); *In re J.P. Stevens & Co., Inc. S'holders Litig.,* 542 A.2d at 783 ("As to that $17 million termination fee, I can perceive no basis at this time to conclude that, in agreeing to it, the board (or the Special Committee) breached a duty to seek to achieve

the best available deal for the shareholders. Such agreements are reasonably conventional and are, of course, not invalid per se.").

While Plaintiff quarrels with the amount of the termination payment, Plaintiff's "attack on the termination fee's level is make-weight and at odds with precedent upholding the validity of fees at this level." *In re Pennaco*, 787 A.2d at 707.  The termination fee of $200 million for the $7.9 billion transaction—approximately 2.5% of the transaction value—is well within the range courts routinely find to be reasonable.[5]  Both Maryland and Delaware courts characterize approximately 2 to 4 percent of a transaction's value as the "traditional" range for termination fees in transactions like this merger.  *Jasinover*, 2004 WL 3135516, at *10 (upholding 2.5% termination fee as squarely within the 2% to 4% range approved by the courts); *In re Pennaco*, 787 A.2d at 707 (finding 3% termination fee "modest" and "reasonable").

In sum, these standard deal protection measures – whether considered individually or collectively – do not provide any support for Plaintiff's allegations that the inclusion of such measures fall outside the scope of business judgment so as to constitute a breach of the Board's fiduciary duties.  "Beyond merely counting the different provisions and explaining why drafters employ such terms, the Plaintiff has not offered any reason for the Court to conclude that the deal protection devices, on a cumulative basis, are somehow preclusive." *In re Answers Corp. S'holders Litig.*, No. Civ. A. 6170-VCN, 2011 WL 1366780, at *4 (Del. Ch. April 11, 2011).

---

[5] *See, e.g.*, *NHP* at 34-35  (approving $175 million termination fee that represented approximately 2.4% of the transaction value); *In re Terra Indus. S'holder Litig.*, No. 24-C-10-001302, 2010 WL 5412283 (Md. Cir. Ct. July 14, 2010) (finding 3% termination fee was "not unreasonable"); *In re Pennaco*, 787 A.2d at 707 (finding 3% termination fee "modest" and "reasonable"); *Goodwin v. Live Entm't*, Civ. A. No. 15765, 1999 WL 64265, at *20 (Del. Ch. Jan. 25, 1999) (approving termination fee of 3.125% plus $1 million in expenses for a total percentage of 4.16%); *In re 3Com*, 2009 WL 5173804, at *7 (approving a "$99 million termination fee that, along with a $10 million expense reimbursement fee, represents over 4% of the equity value of the Merger"); *McMillan*, 768 A.2d at 505-06 (describing 3.5% lockup as an "insubstantial obstacle").

3.      *Plaintiff's Disclosure Claims Fail*

Plaintiff's claims that the Individual Defendants breached their fiduciary duty of candor and violated Section 14(a) of the Exchange Act by "failing to provide the Company's shareholders with material information in the Registration Statement" are insufficient and do not provide a basis for expedited discovery. *See* Pl.'s Mem. at 4.  Plaintiff contends that the Joint Proxy Statement lacks adequate disclosures concerning (i) the financial advisors' fairness opinions; (ii) Constellation's and Exelon's financial projections; and (iii) Constellation's negotiation process leading to the proposed transaction.  *Id.* at 4-7.  Whether Plaintiff's disclosure claims are analyzed under Section 14(a) of the Exchange Act, or under Maryland's disclosure law, the end result remains the same:[6] none of these alleged "omissions" presents a colorable disclosure claim and, accordingly, the Court should not grant expedited discovery. Notably, these same arguments were presented by plaintiffs in the state court action, and Judge Carrion rejected them in denying plaintiffs' motion for expedited discovery.  *See* Ex. D at 6.

Both Maryland and federal law provide that directors must disclose material information within their control regarding a transaction on which shareholders will vote.  *Hudson v. Prime*

---

[6] To state a Section 14(a) claim, a plaintiff must allege that the proxy statement contained a material misrepresentation or omission.  *Hayes v. Crown Cent. Petroleum Corp.*, 78 Fed. Appx. 857, 861 (4th Cir. 2003) (citing *General Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)).  The standard for evaluating the materiality of a fact omitted from a proxy statement is the same under both Section 14(a) and Maryland law.  *Compare TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (in Section 14(a) claims, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."), *with In re Nationwide Health Props., Inc. S'holder Litig.*, No. 24-C-11-001476 (Balt. City Cir. Ct. May 27, 2011) (quoting TSC Industries and explaining that in a Maryland proxy disclosure claim an omitted fact is only material if "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.").  Maryland courts generally follow Delaware law on business law matters such as corporate acquisitions.  *See Kramer v. Liberty Prop. Trust*, 408 Md. 1, 24-25 (2009) (finding Delaware corporate law "highly persuasive").  Like Maryland, Delaware has adopted the same standard for evaluating materiality as the federal courts.  *See Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) ("[I]t is clear from the Delaware cases that the materiality of *TSC Industries* . . . applies.").

*Retail, Inc.*, 2004 WL 1982383, at *13 (Md. Cir. Ct. Apr. 1, 2004);[7] *Hayes v. Crown Central Petroleum Corp.*, 78 Fed. Appx. 857, 861 (4th Cir. 2003) (Exchange Act requires directors to disclose all material facts necessary to prevent other statements in the proxy statement from becoming false or misleading). An omitted fact or alleged misstatement is material only where there is a substantial likelihood it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *NHP* at 36 (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). Thus, in order to state a claim for inadequate disclosure, Plaintiff must demonstrate that an alleged misstatement or omission is either inconsistent with, or significantly different from, the information disclosed in the Joint Proxy Statement. *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172-74 (Del. 2000). "[S]o long as the proxy statement, viewed in its entirety, sufficiently discloses and explains the matter to be voted on, the omission or inclusion of a particular fact is generally left to management's business judgment." *In re 3Com*, 2009 WL 5173804, at *1.

As Judge Carrion stated when denying plaintiffs' motion for expedited discovery in the state court action, "[b]ecause courts have routinely held that extra details are unnecessary and immaterial as a matter of law for a shareholder to make a fair and informed decision whether to approve a recommended transaction, a plaintiff's burden of demonstrating a need for this sort of information is particularly heavy." Ex. D at 4-5. Plaintiffs did not meet that heavy burden in the state court action, and Plaintiff fails to meet that burden here.

        a.      Plaintiff's Claims Regarding the Financial Advisors' Opinions Fail

Plaintiff's claims that he is entitled to the granular details underlying the financial advisors' opinions are without merit.

---

[7] The *Hudson* court relied on Delaware law to resolve the non-disclosure allegations "because of the paucity of Maryland law on the subject [of the duty to disclose]." *Hudson*, 2004 WL 1982383, at *13.

*First*, Plaintiff theorizes that the Joint Proxy Statement fails to disclose "the underlying methodologies, key inputs and multiples relied up and observed by Morgan Stanley and Goldman, Sachs, & Co.[,]" without which the shareholders purportedly cannot "properly assess the credibility of the various analyses" in deciding how to vote. Pl.'s Mem. at 6. In particular, Plaintiff theorizes that the Joint Proxy Statement fails to include "key projections, criteria and analytical variables" used by Constellation's financial advisors, such as Constellation's discounted cash flow analysis. Pl.'s Mem. at 12. But Plaintiff neglects to inform this Court that these same arguments for the disclosure of financial advisors' projections and cash flow analyses already were made, and rejected, in the state court action. Ex. D at 6 (plaintiffs "have not sufficiently articulated a colorable claim showing that the extra details not contained in the proxy statement are necessary and material for the shareholders to make a fair and informed decision regarding the proposed merger transaction.").

Directors need not disclose all available information merely because shareholders might find it helpful. *See NHP* at 36; *see also Skeen*, 750 A.2d at 1174; *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002) (Section 14(a) does not obligate directors to disclose information merely "because it may be relevant or of interest to a reasonable investor"). A board need not, for example, "disclose consistent and redundant facts or disclose insignificant details and reasonable assumptions," nor must it "disclose so much information as to enable shareholders to 'make an independent determination of fair value.'" *NHP* at 34-35 (quoting *In re Staples S'holders Litig.*, 792 A.2d 934, 954 (Del. Ch. 2001)); *see also Abbey v. E.W. Scripps Co.*, Civ. A. No. 13397, 1995 WL 478957, *3 (Del. Ch. Aug. 9, 1995) (finding that financial advisor's "work product (analyses, assumptions, and results)" was not material). Rather, "shareholders are entitled to a 'fair summary of the substantive work performed by the investment bankers upon whose advice

21

the recommendations of their board as to how to vote on the merger or tender rely.'" *NHP* at 34-35 (quoting *Globis Partners, L.P. v. Plumtree Software, Inc.*, Civ. A. No. 1577-VCP, 2007 WL 4292024, at *11 (Del. Ch. Nov. 30, 2007)); *see also In re CheckFree Corp. S'holders Litig.*, 2007 WL 3262188, at *2 (Del. Ch. Nov. 1, 2007) ("A disclosure that does not include all financial data needed to make an independent determination of fair value is not . . . *per se* misleading or omitting a material fact.  The fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis.")

The Joint Proxy Statement contains more than the "fair summary" the law requires.  In addition to providing the full text of both fairness opinions, *see* Ex. C at Annex E-F, it includes more than fifteen pages describing Morgan Stanley's and Goldman Sachs' work and fees, including, *inter alia*, descriptions of the analyses performed, the materials reviewed, the assumptions made, and the financial projections relied upon.  Ex. C at 110-126.  The minutiae sought by Plaintiff here is immaterial in light of the fair summary provided.

***Second***, Plaintiff's novel theory that the Constellation Board breached its fiduciary duties and violated Section 14(a) by failing to disclose the minutiae underlying *Exelon*'s financial advisors' fairness opinions also fails to present a colorable claim.  Plaintiff seeks the "underlying methodologies, key inputs and multiples" relied upon by Exelon's financial advisors in order to "properly assess the credibility of the various analyses" and determine whether to take equity in Exelon.  Pl.'s Mem. at 6.  Plaintiff ignores the fact that Barclays, Evercore, and J.P. Morgan prepared and included in the Joint Proxy Statement opinions analyzing the fairness of the acquisition to Exelon's shareholders only.  Ex. C at Annex B, D-E.  Maryland has squarely rejected the argument that shareholders of a target company in a stock-for-stock merger are entitled to data underlying the counter-party's fairness opinions absent an explanation why the

target's shareholders would consider material information prepared solely for the acquirer's shareholders.  *See NHP* at 42-43.

Furthermore, Plaintiff has not alleged that the "underlying methodologies, key inputs and multiples relied upon and observed by" Exelon's financial advisors were known to the Constellation Board or within the Board's control, Pl.'s Mem. at 6; as such, Constellation is not obligated to disclose this information.  *See NHP* at 42-43. (no duty where "plaintiffs have not established, by fact or inference, that [the target] had possession or control of the omitted facts concerning the [acquirer's financial advisor's] opinion"); *Hudson,* 2004 WL 1982383, at *14 (disclosure obligations apply only where material information was known to the directors or was within their control); *In re Cogent*, 7 A.3d at 508 (same).  In addition to being outside of the Constellation Board's knowledge and control, these demands for the minutiae of Exelon's advisors' assumptions are even more misplaced than Plaintiff's demands for such information about Constellation's advisors' fairness opinions.

b.      Plaintiff's Claims Relating to Financial Projections Fail

Plaintiff's sweeping claim for more detail "concerning Constellation Energy and Exelon projections, as well as the adjusted Constellation Energy and Exelon projections, used by the five financial advisors" is without merit.  Pl.'s Mem. at 6.  The Joint Proxy Statement already provides a fair summary of Constellation's projections.  Ex. C at 68-72.  In particular, it contains financial forecasts prepared by Constellation's and Exelon's management, as well as Exelon's adjustments to Constellation's projections and Constellation's adjustments to Exelon's projections for things such as annual cash flow (EBITDA) and capital expenditure projections for 2011 to 2015.  Courts have concluded that no further disclosure is required.  *See Jasinover*, 2004 WL 3135516, at *12 (finding the absence of "internal [] projections" was not material to make out a disclosure claim); *In re 3Com*, 2009 WL 5173804, at *3 (holding that plaintiffs

"failed to assert a colorable reason as to why management should be required to provide full versions of the projections underling the already disclosed summaries"); *In re CheckFree*, 2007 WL 3262188, at *2 (rejecting plaintiffs' argument that directors breached their disclosure duties by excluding company projections when the projections were provided to financial advisor for use in rendering fairness opinion); *In re Siliconix S'holders Litig.*, No. Civ. A. 18700, 2001 WL 716787, at *12 (Del. Ch. June 21, 2001) (finding plaintiff not likely to succeed on the merits of a disclosure violation claim for failure to disclose more detailed projections); *Mendell v. Greenberg*, 612 F. Supp. 1543, 1550 (S.D.N.Y. 1985) (holding absence of financial projections in proxy materials did not make out a disclosure claim under Section 14(a)).

          c.        The Joint Proxy Statement Sufficiently Discloses the Negotiation Process

Plaintiff's scattershot of minutiae allegedly omitted from the Joint Proxy Statement also fails to identify any material omissions concerning the negotiation process that led to the Agreement.  Pl.'s Mem. at 4-6.

*First*, Plaintiff essentially asks "why" the Board did not contact other potential bidders, seeking its rationale or bases for its courses of action.  Pl.'s Mem. at 5.  Courts repeatedly have explained that "[s]uch 'why' questions about decisions not to pursue other possible options are not material."  *Jasinover*, 2004 WL 3135516, at *11 ("[T]he emphasis is on what the Board actually did, not what it could have done had it traveled a different road."); *NHP* at 44; *In re 3Com*, 2009 WL 5173804, at *5.  Not every contact with a potential bidder or alternative discussed among the Board is material.  *See In re 3Com*, 2009 WL 5173804, at *6 (finding there was no disclosure violation where defendants failed "to inform stockholders of other strategic initiatives it was considering").

*Second*, Plaintiff fails to assert a colorable claim by arguing that the Joint Proxy Statement fails to disclose the details of the merger negotiations such that the shareholders can determine how the merger terms were reached.  Plaintiff alleges that the Directors' breached their fiduciary duties and violated Section 14(a) by failing to disclose, *inter alia*: "the factors that prompted Defendant Shattuck to commence discussions with Morgan Stanley regarding a potential transaction with Exelon a mere two weeks after he first discussed the possibility with Exelon management"; "w[hat] Defendant Shattuck's discussions with Mr. Rowe on November 30, 2010 pertaining to management's role in a potential combined company entailed"; "what was Constellation Energy's management's assessment of the strategic effects of the possible transactions as well as the potential risks discussed at the Board dinner on February 24, 2011"; and "how the subgroup of Constellation Energy directors . . . was selected by the Board to review details of a possible transaction with Exelon."  Pl.'s Mem. at 5-6.

But the law simply does not require a "play-by-play description of merger negotiations." *Globis Partners*, 2007 WL 4292024, at *14; *Hudson*, 2004 WL 1982383, at *3 (explaining that directors are not required to disclose "so much information as to enable [the stockholders] to replicate the directors' efforts"); *In re Cogent*, 7 A.3d at 511-12 (finding that proxy statement is not required to disclose a "play-by-play description of every consideration or action taken by a Board"); *Kaufman v. Cooper Companies, Inc.*, 719 F. Supp. 174, 183 (S.D.N.Y. 1989) (holding that Section 14(a) does not require "a round by round synopsis of the negotiations"); *Repairman's Serv. Corp. v. Nat'l Intergroup, Inc.*, No. 7811, 1985 WL 11540, at *8 (Del. Ch. Mar. 15, 1985) ("[I]t is not necessary to describe all the bends and turns in the road which led to [the merger]."); *Vornado, Inc. v. Interstate Props.*, 470 F. Supp. 714, 719 (S.D.N.Y. 1979) ("Section 14(a) does not establish minimum standard of specificity for proxy statements.  It

25

simply requires that the statements contained in proxy statements be accurate.").  As such, not every meeting, decision, or strategic consideration by Constellation's Board is material for disclosure purposes.  *See, e.g.*, *In re 3Com*, 2009 WL 5173804, at *6 (no disclosure violation where board failed to disclose all "strategic initiatives it was considering"); *Beaumont v. American Can. Co.*, 797 F.2d 79, 85 (2d Cir. 1986) (finding no Section 14(a) violation where directors do not disclose all details of merger negotiations); *Kennecott Copper Corp. v. Curtiss-Wright Corp.* 584 F.2d 1195, 1199-2000 (2d Cir. 1978) (finding proxy statement did not violate Section 14(a) where it "conveyed a sufficiently accurate picture so as not to mislead").

*Third*, Plaintiff's allegations that the Joint Proxy Statement must disclose why Constellation hired Credit Suisse as a financial advisor and what work Credit Suisse performed are without merit.  Pl.'s Mem. at 6.  "In the context of disclosure claims, plaintiffs bear the burden of demonstrating some material *fact* that must be disclosed.  Defendants are not required to make this type of negative disclosure."  *La. Mun. Police Emps.' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1186-87 (Del. Ch. 2007); *see also In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 204 (Del. Ch. 2007) (explaining "there is no obligation to disclose what the investment banker did not do"); *In re JCC Holding Co.*, 843 A.2d 713, 721 (Del. Ch. 2003) (finding "there is no obligation on the part of a board to disclose information that simply does not exist").  As such, the Board is not obligated to disclose that Credit Suisse *did not* render a fairness opinion.

## B.   Plaintiff Has Not Demonstrated that Irreparable Injury Would Occur Absent Expedited Discovery

Plaintiff claims that he will suffer irreparable harm "if the Proposed Transaction is consummated without his intended motion for a preliminary injunction being heard."  Pl.'s Mem. at 10.  *First*, as stated previously, Plaintiff's counsel's own unreasonable delay in filing suit and

filing this motion for expedited discovery belie Plaintiff's suggestion of impending irreparable harm. *See Silverman*, 634 F. Supp. at 673 (S.D.N.Y. 1986) (treating plaintiff's delay "as a recognition that there is no real danger of irreparable harm"); *see also supra* Section I. If Plaintiff's counsel was concerned about "his intended motion for a preliminary injunction being heard," he should not have waited over a month after the filing of the Joint Proxy Statement to file suit, and over three weeks after filing suit to move for expedited discovery.

*Second*, on these same allegations, the state court held that "Plaintiffs have not sufficiently shown that they will suffer irreparable harm if discovery is conducted in the proper course." Ex. D at 7.

*Third*, even given Plaintiff's unreasonable delays in filing suit and moving for expedited discovery, the shareholder vote still is not scheduled, and is not anticipated to occur until October 2011. Maryland courts have denied expedited discovery in case with much shorter time frames. In *Jasinover v. Rouse Co.*, for instance, the court denied expedited discovery to plaintiffs despite the fact that the shareholder vote was scheduled for two weeks after the date of the court's opinion (and less than a month after the issuance of the proxy statement), and that closing was scheduled to occur the day after the vote. No. 13-C-04-59594, 2004 WL 2747382, at *1 (Md. Cir. Ct. Oct. 25, 2004).

*Fourth*, given Defendants' intention to move to dismiss this case, it is likely that Defendants' motions to dismiss may well be dispositive of the entire action and therefore granting expedited discovery would be inefficient and unnecessary. *See N. River Ins. Co. v. Mayor & City Council of Balt.*, 343 Md. 34, 66-67 (1996) (concluding that it was "inefficient" and an abuse of discretion to proceed with discovery that might have been mooted by a pending motion); *see also McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (the court should

27

"balance the harm produced by a delay in discovery against the possibility that the motion [to dismiss] will be granted and entirely eliminate the need for such discovery").  This is especially true now that additional state court plaintiffs' counsel have filed the *Smith* case in this Court, which, if not stayed, will necessitate consolidation and a lead plaintiff dispute, further rendering any expedited discovery inefficient and unnecessary.

## CONCLUSION

For all the foregoing reasons, the Constellation Defendants respectfully request that the Court enter a Protective Order staying discovery and deny Plaintiff's motion for expedited discovery.

Dated:  September 8, 2011

_____/s/_____
James D. Mathias (Bar No. 06311)
David Clarke, Jr. (Bar No. 02177)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4000
(410) 580-3000 (facsimile)
james.mathias@dlapiper.com
david.clarke@dlapiper.com


_____/s/_____
James P. Gillespie *
Brant W. Bishop (Bar No. 24829)
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
(202) 879-5200 (facsimile)
james.gillespie@kirkland.com
brant.bishop@kirkland.com

*Counsel for Constellation Energy Group, Inc. and the Individual Defendants*

* motion for admission *pro hac vice* pending

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion for Protective Order Staying Discovery, Memorandum of Law in support thereof and in opposition to Plaintiff's Motion for Expedited Discovery, with exhibits, and Proposed Order were filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and electronically sent to those indicated as non-registered participants on this the 8th day of September, 2011:

Donald J. Enright, Esquire
Levi & Korinsky, LLP
1101 30th Street, N.W.
Suite 115
Washington, D.C. 20007
denright@zlk.com

John B. Isbister, Esquire
Daniel S. Katz, Esquire
Tydings & Rosenberg LLP
100 East Pratt Street
26th Floor
Baltimore, Maryland 21202
jisbister@tydingslaw.com
dkatz@tydingslaw.com

Charles J. Piven, Esquire
Yelena Trepetin, Esquire
Brower Piven
1925 Old Valley Road
Stevenson, Maryland 21153
piven@browerpiven.com
trepetin@browerpiven.com

*Counsel for Plaintiff*

Matthew R. Kipp, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, Illinois 60606
matthew.kipp@skadden.com

*Counsel for Defendant Exelon Corporation*

James L. Shea, Esquire
G. Stewart Webb, Esquire
Venable LLP
750 East Pratt Street
Suite 900
Baltimore, Maryland 21202
jshea@venable.com
gswebb@venable.com

*Counsel for Defendants Exelon Corporation and Bolt Acquisition Corp.*

_____/s/_____
James D. Mathias